Stephen M. Doniger, Esq. (SBN 179314)
stephen@donigerlawfirm.com
Scott A. Burroughs, Esq. (SBN 235718)
scott@donigerlawfirm.com
DONIGER / BURROUGHS APC
300 Corporate Pointe, Suite 355
Culver City, California 90230
Telephone: (310) 590-1820
Facsimile:  (310) 417-3538

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.A. PRINTEX INDUSTRIES, INC., Plaintiff, <br><br> vs. <br><br> WILLIAM CARTER CO.; et al. <br><br> Defendants. | Case No.:  CV 09-2449 JFW (FMOx) <br><br> **NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION PURSUANT TO FED. R. CIV. P. 56; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF JAE NAH, MOON CHOI, AND SCOTT A. BURROUGHS ESQ. IN SUPPORT THEREOF** <br><br> [Statement of Uncontroverted Facts and Conclusions of Law; [Proposed] Order Submitted Concurrently Herewith] <br><br> Date: June 21, 2010 <br> Time: 1:30 p.m. <br> Courtroom: 16 |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR RESPECTIVE ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE THAT on June 21, 2010, in Courtroom 16 of the United States District Courthouse, located 312 N. Spring Street, Los Angeles, California 90012, at 2:00p.m. or as soon thereafter as the matter may be heard,

Plaintiff L.A. Printex, Inc. ("Plaintiff") will move pursuant to Federal Rule of Civil Procedure 56 for summary adjudication as to the liability of Defendants for copyright infringement or, in the alternative, summary adjudication of the issue of Plaintiff's ownership of copyrightable artwork at issue in this case.

This motion is made on the grounds that Plaintiff is entitled to such a determination as a matter of law because there is no issue fact regarding the following: (1) Plaintiff's design entitled "C30020" is an original work of authorship owned by Plaintiff, and (2) Defendants copied Plaintiff's original artwork by selling fabric and garments bearing a near-identical copy of the Subject Design without Plaintiff's permission.

This Motion is based on the attached Memorandum of Points and Authorities, the Statement of Uncontroverted Facts, the Declarations of Jae Nah, Moon Choi, Scott A. Burroughs, Esq. filed herewith, the papers and evidence on file in this case, and such evidence and argument as may be received at the hearing.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place beginning on May 13, 2010. On May 20, 2010, during an in-person discussion, Defendants' counsel indicated that any further discussion would not result in their stipulating to the requested relief, necessitating this motion.


Dated: May 24, 2010                      Respectfully submitted,

                                         DONIGER / BURROUGHS


                                   By: /S/ Scott A. Burroughs
                                         Scott A. Burroughs, Esq.
                                         Attorney for Plaintiff

_____
PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION

## **<u>TABLE OF CONTENTS</u>**

I.     INTRODUCTION ..................................................................................1

  A.   <u>Plaintiff's Designer Created C30020</u> ...........................................1

  B.   <u>The Sampling Process and Defendants' Access</u> .............................2

  C.   <u>Defendants' Infringement of C30020</u> ...........................................3

II.    ARGUMENT ......................................................................................3

  A.   <u>The Summary Judgment Standard</u> .................................................3

  B.   <u>The Court Should Summarily Adjudicate that C30020 is Original Artwork Owned by Plaintiff</u> ..................................................4

     1.   Plaintiff's Copyright Registration Grants it a Presumption of Ownership of the Subject Design, and of the Truth and Accuracy of the Facts Set Forth in the Registration. .......................................................4

     3.   Plaintiff has Amended its Registration in Good Faith..............................8

     4.   The Declarations of Jae Nah and Moon Choi Conclusively Establish that C30020 is an Original Work of Authorship owned by Plaintiff. .............9

  C.   <u>Summary Adjudication of Plaintiff's Claim for Copyright Infringement Should Be Granted Because the Evidence Clearly Establishes that Defendants Copied C30020</u> ........................................................10

     1.   Access to the Subject Design Is Beyond Reasonable Dispute ...............10

     2.   Substantial Similarity Is Beyond Reasonable Dispute ...........................11

III.   <u>CONCLUSION</u> ...............................................................................17

_____

# **TABLE OF AUTHORITIES**

**Cases**

*Addisu v. Fred Meyer, Inc.*, 198 F. 3d 1130, 1134 (9th Cir. 2000)..............................4

*Baxter v. MCA, Inc*., 812 F.2d 421, 423 (9th Cir. 1987)............................................11

*Boune Co. v. Walt Disney Co.*, 1992 WL 489766 (S.D.N.Y. 1992) ...........................7

*Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) ........................12

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2505, 91 L. Ed. 2d 265 (1986) .....4

*Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147 (1st Cir. 1994)........7

*Datastorm Technologies, Inc. v. Excalibur Commc'ns, Inc.*, 888 F. Supp. 112 (N.D.
    Cal. 1995)...........................................................................................................6

*Eckes v. Card Price Update*, 736 F.2d 859 (2d Cir. 1984) .........................................7

*Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1076 (9th Cir. 2000)........................9

*Feist Pub., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991)...............9, 10

*Hamil America Inc. v. GFI*, 193 F.3d 92 (2d Cir. 1999)..............................................5

*Harris v. Emus Records Corp.*, 734 F.2d 1329 (9th Cir. 1984) ..................................6

*JBJ Fabrics, Inc. v. Mark Industries, Inc.*, 1987 U.S. Dist. LEXIS 13445 (C.D. Cal.
    1987). ...............................................................................................................13

*Just in Materials Designs, Ltd. v. Arise Textile, Inc.*, 1980 U.S. Dist. LEXIS 10822,
    *4-5 (S.D.N.Y. 1980) ......................................................................................16

*Kamar International v. Russ Berrie & Co.*, 657 F.2d 1059, 1062 (9th Cir. 1981) .....10

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.,* 345 F.3d 1140, 1144-45 (9th Cir.
    2003) ..................................................................................................................5

*Lennon v. Seaman*, 84 F. Supp. 2d 525 (S.D.N.Y. 2000) ...........................................7

*Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995)..............................................11

*Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663 (3d Cir. 1990)...........7

*North Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031 (9th Cir. 1992) ................5

_____

*Novelty Textile Mills v. Joan Fabrics Corp.,* 558 F.2d 1090, 1093 n.4 (2d Cir. 1977) ...................................................................................................................15

*Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc.*, 482 F. Supp. 980 (D.C.N.Y. 1980) 7

*See Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir. 1960) ..................................................................................................................16

*Selle v. Gibb*, 741 F.2d 896, 903 (7th Cir. 1984) .........................................11

*Shaw v. Lindheim,* 919 F.2d 1353, 1356 (9th Cir. 1990) ...............................12

*Smith v. Jackson*, 84 F.3d 1213, 1220 (9th Cir.1996) ............................11, 12

*Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc.*, 490 F.2d 1092, 1094 (2d Cir. 1974) ..................................................................................................................16

*Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004)....................................12

*Tarin v. County of Los Angeles*, 123 F. 3d 1259, 1263 (9th Cir. 1997).......................4

*Testa v. Janssen*, 492 F. Supp. 198 (D.C.Pa. 1980) .......................................7

*Thomas Wilson & Co. v. Irving J. Dorfman Co.*, 433 F.2d 409 (2d Cir. 1970)............7

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000) ...............................6

*Twentieth Century-Fox Film Corp. v. MCA, Inc.,* 715 F.2d 1327, 1330 (9th Cir. 1983). ..................................................................................................................16

*Urantia Found. v. Maaherra*, 114 F.3d 955 (9th Cir. 1997)..........................................6

*Urantia Found.v. King*, 194 U.S.P.Q. 171 (C.D. Cal. 1977) .......................................6

*Wales Indus. v. Hasbro Bradley, Inc.*, 612 F. Supp. 510 (S.D.N.Y. 1985)...................8

**Statutes**

17 U.S.C. § 410(c) ...............................................................................................5

**Other Authorities**

1 Paul Goldstein, *Copyright* § 3.12.3 (1989) ...............................................8

**Rules**

Fed. R. Civ. P. 56...............................................................................................4

_____
PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.    INTRODUCTION**

Plaintiff L.A. Printex ("Plaintiff" or "L.A. Printex") is a Los Angeles-based printing mill which chiefly prints two-dimensional patterns on fabric for use in the apparel industry. Nah Decl. ¶ 2. It invests heavily in high quality printing equipment as well as the development and purchase of original artwork meeting the trends in the marketplace. *Id.* Since it cannot compete on price with overseas mills that pay much lower wages, or even domestic mills that use inferior technology and do not invest in original artwork, L.A. Printex's competitive advantage comes from its exclusive rights to market and print its proprietary artworks. *Id.* By the same token, L.A. Printex's profitability is seriously damaged when its exclusive artworks are infringed and wrongfully distributed. *Id.*

This case concerns original artwork created by L.A. Printex's in-house design team. Nah Decl. ¶ 3. This artwork was allocated the design name "C30020." L.A. Printex began offering for sale, and selling, fabric bearing C30020 to its customers in 2002. Nah Decl. ¶ 6; Ex. 2. In that same year it registered C30020 with the Copyright Office, whereby the design was allocated U.S. Copyright No. Vau 557-306. Nah Decl. ¶ 4; Ex. 1.

In 2006, L.A. Printex discovered that Ms. Bubbles, Inc. ("Bubbles") was importing garments bearing a near-verbatim knock-off of C30020 from China. Nah Decl. ¶¶ 9-10. These garments were sold by Bubbles to Aeropostale, Inc. ("Aeropostale"), which in turn sold them to the public. *Id.*; Ex. 3.

Summary adjudication is appropriate in this case because there is no real evidentiary dispute that (1) Plaintiff owns the design at issue in this case, and (2) Defendants' have sold product bearing unauthorized copies of this design. As such, Defendants are liable for copyright infringement and this Motion should be granted.

### **A.    Plaintiff's Designer Created C30020**

Moon Choi, in the course of her employment with L.A. Printex, created

- 1 -

C30020.  Choi Decl. ¶¶ 2; 4.  She created the design by hand, using a computer-aided drafting program.  *Id.*  The design was her original creation, and was copied from no other source.  *Id.*  The design, an alternating series of small flower buds, with stylized vinery, is sufficiently original to qualify for copyright protection.  The Copyright Office recognized this, granting protection to C30020 under Registration No. 557-306.[1]  Choi Decl. ¶ 3; Ex. 1.

### B.    The Sampling Process and Defendants' Access

To obtain printing orders, Plaintiff shows its original designs to its customers.  Upon request, Plaintiff will provide either paper CAD or a fabric swatch bearing the requested design to its customers.  Nah Decl. ¶ 5.  If a customer wants more than just a small swatch of the design it can then place an order for either a small amount of sample yardage, or a full production run.  *Id.*

While Plaintiff does not keep a record of every CAD or fabric swatch sample it gives a customer, which would be unpractical given that its business entails showing these designs to each of its customers, it does keep records of all sales of its designs.  Nah Decl. ¶ 6.  Those records show that beginning as early as October 18, 2002, Plaintiff sampled and sold thousands of yards of fabric bearing C30020 to a number of its customers, including many in the Los Angeles area.  Nah Decl. ¶ 6, Ex. 2 thereto.  Most of these customers are fabric converters[2] that shopped the Subject

_____

[1]  C30020 is registered as part of an unpublished group of five designs. Though Plaintiff's records from 2002 – when the company was just being established – are sparse, it later became apparent that two of the five designs may have been published before the registration date. So owing, Plaintiff has filed a FORM CA to remove the two designs that may have been published from the registration.  See Ex. 4. This accords with Copyright Office procedure, but is not necessary, as, in such a situation, the Copyright Office's policy is to grant protection to those designs that were unpublished on the date of the registration. For good measure, Plaintiff has also registered C30020 as an individual design. See Ex. 5.

[2]  A "fabric converter" is a company that acts as a middle-man between the printing mill and the garment manufacturer.  It generally takes designs (sometimes that it owns, sometimes that the printing mills owns, and sometimes public domain designs) to show its customers in the hopes of securing orders.  While it is obligated to bring printing orders for designs owned by a printing mill

Design to garment manufacturers.  These garment manufacturers would then show the designs (or sample garments made bearing the designs) to retail buyers for stores to obtain orders for the garments bearing the designs.

Bubbles is a local apparel company doing business in the Los Angeles market. Bubbles admitted during its deposition that it does not employ textile designers, and that it receives its designs from third parties. Thus, it is clear from the printing and distribution of thousands of yards of fabric bearing C30020 design, and the thousands of garments comprised of this fabric that were sold through retail stores, that Defendants had the opportunity to view the design at issue.

### C.    Defendants' Infringement of C30020

In 2006, Plaintiff's investigation revealed that Bubbles was importing from China garments bearing a poor knock-off of the C30020 design ("Infringing Garments") and selling them to Aeropostale, which was then selling them to the public.  Decl. Nah ¶ 9, Ex. 3 thereto.  Bubbles has conceded that it is responsible for importing the knock-off garments, and selling them to Aeropostale. (Decl. Burroughs ¶¶ 1-3.)  Bubbles has also conceded that it did not create the design, and that it does not have any evidence of independent creation of the design on the Infringing Garments.  (Decl. Burroughs ¶ 2.)

Not only did Bubbles' knock-off hit the market well after Plaintiff's creation, publication, and sale of C30020, but Bubbles has been unable to provide any evidence of independent creation of its offending design and has admitted that it has no knowledge as to whether its vendor in China creates its own designs.  (Decl. Burroughs ¶ 2.)  Given this paucity of evidence, there is no triable issue of fact as to Plaintiff's creation and ownership of the Subject Design, and Defendants'

_____

back to that mill, converters have certainly been known to send proprietary designs overseas to have them "knocked off" – sometimes ordering the overseas mill to change them slightly, where they would otherwise lose a sale because of the higher price of printing domestically.

_____

infringement thereof.  As such, this motion should be granted.

## II.    ARGUMENT

### A.    <u>The Summary Judgment Standard</u>

Under Fed. R. Civ. P. 56(c), summary judgment must be granted if the evidence, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact.  Fed. R. Civ. P. 56(c); *Tarin v. County of Los Angeles*, 123 F. 3d 1259, 1263 (9th Cir. 1997).  The moving party must shift the burden by presenting evidence to establish the absence of any issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Plaintiff meets this burden by showing that there is no probative evidence of a dispute as to any material fact.  *Id*.  Upon this showing, the Defendant must provide specific facts that indicate a dispute as to a material issue.  This showing must be substantive; a "scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of, material fact."  *Addisu v. Fred Meyer, Inc.*, 198 F. 3d 1130, 1134 (9th Cir. 2000).

As discussed *infra*, no genuine issue of material fact exists as to Plaintiff's ownership of the registration of the Subject Design and Defendants' copying of original elements of the Subject Design.  Defendants have advanced no evidence to rebut this showing, or to indicate that a substantive material fact is in dispute.  As such, summary adjudication is appropriate.

### B.    <u>The Court Should Summarily Adjudicate that C30020 is Original Artwork Owned by Plaintiff</u>

In this case, summary adjudication is appropriate to establish the first element – ownership of a copyrightable work.  To succeed on its copyright infringement claim, Plaintiff must "show ownership of the allegedly infringed material and […] demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106. See 17 U.S.C. § 501(a) (infringement occurs

- 4 -

1  when alleged infringer engages in activity listed in § 106); see also *Baxter v. MCA,*

2  *Inc*., 812 F.2d 421, 423 (9th Cir.1987). One of these rights is the right to prepare

3  derivate works, such as clothing, from the copyrighted material 17 U.S.C. §106(2).

4  Here, the first element – ownership of a protectable work - is easily satisfied.

5         1.  **Plaintiff's Copyright Registration Grants it a Presumption of**
           **Ownership of the Subject Design, and of the Truth and**
6
           **Accuracy of the Facts Set Forth in the Registration.**
7

8         Plaintiff holds a duly issued copyright registration in the Subject Design.  *See*

9  Ex. 1.  Under 17 U.S.C. § 410(c), the registration certificate constitutes *prima facie*

10  evidence of the validity of the copyright and the facts stated on the certificate,

11  including Plaintiff's ownership.  *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.,* 345

12  F.3d 1140, 1144 (9th Cir. 2003); *see also* Commentary to 9th Circuit Model Jury

13  Instruction 17.5; *North Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th

14  Cir. 1992) ("Under our copyright law, the registration of the copyright certificate itself

15  establishes a prima facie presumption of the validity of the copyright in a judicial

16  proceeding. . . .").  Thus, Defendants bear the burden of rebutting the presumption of

17  validity.  *Hamil America Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999). To rebut the

18  presumption, competent evidence must be introduced, such as when "the alleged

19  infringer demonstrates that the plaintiff's work `is not original but copied from

20  another's work.'" *Entm't Research Group, Inc. v. Genesis Creative Group, Inc*., 122

21  F.3d 1211, 1218 (9th Cir.1997) (quoting *N. Coast Indus*., 972 F.2d at 1033).  Nothing

22  of this nature has been done in this case.  In fact, Bubbles has conceded that it has no

23  evidence that any party other than L.A. Printex created the design on the Bubbles

24  garments. In addition to this registration, Plaintiff has presented sworn testimony from

25  the artist who created the Subject Design, as discussed below. Given the registration,

26  and this testimony, it is clear that Plaintiff owns the Subject Design.

27         2.  **Technical Errors Will Not Invalidate a Registration**

28         A common tactic employed by copyright infringers to avoid liability for their

- 5 -

infringement has been to attempt to invalidate the registration for the design at issue based on a good faith technical error. It is expected that Defendants will make this same attempt, despite the fact that the overwhelming weight of the law in this Circuit counsels against this position. Moreover, the fact that the registration in this case was completed by a non-native English-speaking assistant who worked part-time for L.A. Printex militates in favor of applying the law of this Circuit, and denying this argument should it be made.

It is settled law that "inadvertent mistakes on registration certificates do not invalidate a copyright and thus do not bar infringement actions, unless . . . the claimant intended to defraud the Copyright Office by making the misstatement." *Urantia Found. v. Maaherra*, 114 F.3d 955, 963 (9th Cir. 1997); *accord Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486–87 (9th Cir. 2000); *see also Nimmer*, § 7.20 (absent fraud, "a misstatement or clerical error in the registration application . . . should neither invalidate the copyright nor render the registration certificate incapable of supporting the infringement action").[3]  "A party seeking to establish a fraud on the Copyright Office, and thereby rebut the presumption of copyright validity, bears a heavy burden." *Lennon v. Seaman*, 84 F. Supp. 2d 522, 525 (S.D.N.Y. 2000) (citing *Nimmer*, § 7.20[B]).

Courts have traditionally treated innocent errors contained in an application for a registration certificate with leniency.  *Nimmer*, § 7.20[B], n.18.  No Ninth Circuit ruling has ever indicated, or even suggested, that an inadvertent error, even if

---

[3] In fact, "[t]he case law is overwhelming that inadvertent mistakes on registration certificates do not . . . bar infringement actions, unless the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office by making the misstatement." *Urantia Found.*, 114 F.3d at 963 ("[A] misstatement or clerical error in the registration application if unaccompanied by fraud will not invalidate the copyright or render the registration certificate incapable of supporting an infringement action." (citing *Nimmer*, § 7.20 at 7-201 and n.6)); *S.O.S., Inc. v. Payday*, 886 F.2d 1081 (9th Cir. 1989); *Harris v. Emus Records Corp.*, 734 F.2d 1329 (9th Cir. 1984); *Urantia Found.v. King*, 194 U.S.P.Q. 171, 174–75 (C.D. Cal. 1977); *Datastorm Technologies, Inc. v. Excalibur Commc'ns, Inc.*, 888 F. Supp. 112 (N.D. Cal. 1995).

- 6 -

material, would preclude a copyright infringement action where the work would have been accepted for registration if the application contained a correct statement of facts. *Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 668 n.5 (3d Cir. 1990) ("that an inadvertent omission from a registration application will render a plaintiff's copyright incapable of supporting an infringement action has not gained acceptance with the courts"); *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1161–62 (1st Cir. 1994) ("It is well established that immaterial, inadvertent, errors in an application for copyright registration do not jeopardize the validity of the registration"); *Eckes v. Card Price Update*, 736 F.2d 859, 861–62 (2d Cir. 1984) ("Only the 'knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitutes reason for holding the registration invalid'") (quoting *Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc.*, 482 F. Supp. 980, 988 (D.C.N.Y. 1980)); *Nimmer*, § 7.20[B], n.19 (a misstatement in the registration application does not "render the registration certificate incapable of supporting an infringement action").[4]

This doctrine of leniency in connection with registration formalities is so established that most well-known treatises in the field adopt it unequivocally. *Nimmer*, § 7.20[B] ("The courts generally have been most lenient . . . with respect to any innocent error contained in an application for a registration certificate"); 1 Paul Goldstein, *Copyright* § 3.12.3, at 345 (1989) ("Courts have excused innocent errors

_____

[4] The presumption against invalidating a registration is so strong that, even where the *name* of the copyright claimant was incorrect, the infringing action was permitted to go forward. *Bourne Co. v. Walt Disney Co.*, 1992 WL 489766 (S.D.N.Y. 1992), *aff'd* on other grounds, 68 F.3d 621 (2d Cir. 1995), *cert. denied*, 517 U.S. 1240 (1996). *See also Nimmer*, § 9.05[D][1] (favorably citing *Bourne* for refusing to cause a forfeiture of copyright based on "useless technicalities"). In numerous other cases, the copyright claims have been allowed to proceed despite material mistakes in the registration. *See, e.g.*, *Thomas Wilson & Co. v. Irving J. Dorfman Co.*, 433 F.2d 409 (2d Cir. 1970) (listing president of corporation as author of the work instead of the corporation itself); *Testa v. Janssen*, 492 F. Supp. 198 (D.C.Pa. 1980) (erroneously listing author's assignee as author); *Wales Indus. v. Hasbro Bradley, Inc.*, 612 F. Supp. 510 (S.D.N.Y. 1985), *overruled* on other grounds,

- 7 -

or omissions affecting virtually every material aspect of a copyright registration application.").  In this case, summary adjudication in favor of Plaintiff should be granted because, at best, Defendants can show only a good faith error in the copyright registration.

### 3.  Plaintiff has Amended its Registration in Good Faith

In an attempt to bypass this clear red herring, and focus on the merits of this action, Plaintiff has filed a Form-CA application to correct the perceived deficiency in its registration.  In essence, Plaintiff's first registration was for a group of five designs. This group was registered on an unpublished basis because it was unclear whether certain of the designs had been published. When reviewing its sales records, however, it became apparent that two of the designs in the group covered by this registration may have been published prior to registration.

In conversations with the Copyright Office, Plaintiff's counsel was told that the registration was still valid as to those designs that had not been published.  Decl. Burroughs ¶4. This was in accord with the Copyright Office's policy of retaining protection for registered works except in cases where fraud was used to procure the registration.  As such, the original registration would be valid to the extent it covered those works that were *not yet published* when the registration was *submitted*. It is clear from Plaintiff's sales records that this is the case for the Subject Design – it was not published until October of 2002, well after the registration was submitted. As such, the Subject Design is still entitled to protection under the original registration.

Despite the above, to clarify the registration, Plaintiff submitted a Form-CA to remove from the registration the two designs that had been sold prior to the registration being issued. Ex. 4.  As such, and given that no fraud has been shown given that the putative mistake provided no real benefit to Plaintiff, and was made by

---

*Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189 (2d Cir. 1985) (listing copyright claimant the exclusive licensee instead of the owner).

a non-native English speaker, the issue of the technical deficiencies is a non-starter, and has been cured.  And, should the Court find that the original registration is not valid, and that the Form-CA has not cured the deficiencies, Plaintiff has also submitted a registration for C30020 as an individual design, and that registration has been approved by the Copyright Office. Ex. 5.

In any event, Defendants have offered no evidence that the mistake on the registration was in bad faith, or a result of fraud.  Therefore, no triable issue exists in opposition to a finding that Plaintiff is the copyright owner of C30020.

> 4. **The Declarations of Jae Nah and Moon Choi Conclusively Establish that C30020 is an Original Work of Authorship owned by Plaintiff.**

Summary adjudication as to the originality and Plaintiff's ownership of C30020 is further warranted because there is no evidence to refute the testimony of Jae Nah and Moon Choi that the design is an original work of art that it owned in exclusivity by Plaintiff.  These declarations attest to the Plaintiff's ownership of the work, and the creation and originality of the work, i.e., "that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1076 (9th Cir. 2000) (*quoting Feist Pub., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991)).

The originality of the Subject Design is also self-evident from the unique nature of the artwork in question.  A review of the Subject Design reveals a repeat pattern of stylized budding flowers, stems, and leaves. *See* Ex. 1 at 3.  As only a "modicum of creativity" is required, the Subject Design demonstrates sufficient originality for copyright protection. *Feist*, 499 U.S at 345; Ex. 1.

Finding that Plaintiff owns its C30020 design and that said design is comprised of original, copyrightable elements is warranted because there is no probative

contrary evidence.  Indeed, Bubbles has conceded that it has no information whatsoever as to the creation of the design on its garments.

Given the above, there is no triable issue as to whether Plaintiff created and owns the Subject Design.  As such, this Motion should be granted, and the Court should find that Plaintiff owns the Subject Design.

## C. Summary Adjudication of Plaintiff's Claim for Copyright Infringement Should Be Granted Because the Evidence Clearly Establishes that Defendants Copied C30020

Plaintiff submits that summary adjudication of the copying issue is also appropriate.

Copying is generally demonstrated through a showing that (1) the Defendants had access to the copyrighted material, and (2) the Defendants' work and the Plaintiff's work are substantially similar.  *Three Boys Music Corp.*, 212 F.3d at 486. As set forth below, both elements are easily met in this case.

### 1. Access to the Subject Design Is Beyond Reasonable Dispute

To establish access, Plaintiff need only establish that one of the Defendants had an "opportunity to view or copy" the Subject Design.  *Three Boys Music Corp.*, 212 F.3d at 483.  Because an infringed party infrequently catches the infringer in the act, "[p]roof of access requires only an opportunity to view or to copy plaintiff's work."  *Kamar International v. Russ Berrie & Co.*, 657 F.2d 1059, 1062 (9th Cir. 1981).  An opportunity to view or copy may be established by evidence that "the plaintiff's work has been widely disseminated."  *Three Boys Music Corp.*, 212 F.3d at 482.

In this case, there can be no real question of access. L.A. Printex and Bubbles operate in the same marketplace. L.A. Printex sold thousands of yards of C30020 fabric to its legitimate customers in this market. C30020 also would have been sampled to a wide number of manufacturers like Bubbles.  It is clear that the C30020 fabric had been widely disseminated to clothing manufactures, retail stores, and the

- 10 -

_____

public.  This would establish that the "opportunity to view" the C30020 design occurred, and did so prior to the infringement at issue.

Based on the foregoing, there can be no real question of access and therefore summary adjudication of liability is appropriate.  However, assuming *arguendo* that the Court is not convinced by this evidence of access, it is clear that summary adjudication is still appropriate, because evidence of access is unnecessary where – as here – striking similarity exists.

It is axiomatic that if two designs are "so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access." *Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995); *Three Boys Music*, 212 F.3d at 485 (in the absence of any proof of access, "a copyright plaintiff can still make out a case of infringement by showing that the songs were 'strikingly similar'"), *citing Smith v. Jackson*, 84 F.3d 1213, 1220 (9th Cir.1996) and *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987) (access may be inferred from "striking similarity"), *cert. denied*, 484 U.S. 954 (1987); *Selle v. Gibb*, 741 F.2d 896, 903 (7th Cir. 1984) (a striking similarity is one sufficiently unique or complex as to make it unlikely that it was independently created).  In this case, an examination of C30020 and the designs on the garments at issue demonstrates a striking similarity (discussed further below in subsection (b)).

Given that the design was copied in so literal a fashion, it is simply not plausible that the design on the Infringing Garments was independently created.  Indeed, Bubbles has conceded that it has no evidence that anyone other than L.A. Printex created the design on the Infringing Garments.  As such, it can be inferred that Defendants had access to the design, and proof of access is not necessary for the granting of this motion.

2. **Substantial Similarity Is Beyond Reasonable Dispute**

In order to prove copying, Plaintiff must also show substantial similarity

- 11 -

between the copyrighted work and the alleged infringing material. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. Cal. 2000) ("Proof of the substantial similarity is satisfied by a two-part test of extrinsic similarity and intrinsic similarity."). Here, there can be no genuine dispute that Plaintiff's and Defendants' designs are substantially similar – indeed, they are virtually identical, with the only dissimilarities being the result of the inferior printing process used by Defendants.

In the Ninth Circuit, the two-step analysis employed to determine whether two works are substantially similar asks:  (1) whether there is similarity in the specific expressions under a point-by-point analysis (the extrinsic test), and (2) whether there is similarity in the "total look and feel" when viewed by an ordinary observer (the intrinsic test). *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). "For the purposes of summary judgment, only the extrinsic test is important because the subjective question whether works are intrinsically similar must be left to the jury." *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004).  Therefore, the Court may settle the extrinsic test. *Jackson,* 84 F.3d at 1218.

As a process, the extrinsic test involves "breaking the works down into their constituent elements, and comparing those elements for proof of copying. . ." *Id.* Elements under consideration include "the type of artwork involved, the materials used, the subject matter, and the setting for the subject." *Shaw v. Lindheim,* 919 F.2d 1353, 1356 (9th Cir. 1990); *see also Cavalier*, 297 F.3d at 826 ("Although we do not attempt here to provide an exhaustive list of relevant factors for evaluating art work, the subject matter, shapes, colors, materials, and arrangement of the representations may be considered in determining objective similarity in appearance.").

Plaintiff easily satisfies the extrinsic test with respect to the Subject Design. Comparison of C30020 to the Infringing Designs reveals there is no doubt that the designs on the Bubbles garments exploits C30020 in a material way.  The layout, scale and scope of the floral elements, and the arrangement of the design on the fabric, are all nearly identical. A few excerpts are addressed below. At time of

- 12 -

hearing, or as requested by the Court, Plaintiff will provide samples of its fabric printed with C30020, and exemplars of the infringing garments.

A point-by-point analysis easily reveals objective and irrefutable similarities in the constituent elements.  Figure 1-1 (below left) is an excerpt of C30020, depicting an arrangement of two types of small bunches of flowers and buds, with small three-leaf branches interspersed between these bunches.  These bunches are fancifully arranged, facing different directions and also interspersed with the three-leaf branches.  Figure 1-2 (below right) is an excerpt of the design on the Infringing Garments.  The differences between the two are that the Infringing Garments' design's flowers, leaves, and stems are reproduced with thicker, cruder lines. This slight disparity can be explained by the fact that Plaintiff's design is a digital print, and the images of the Infringing Garments depict ink on fabric. As indicated above, Plaintiff can provide samples of C30020 as printed on fabric for this Court's review.

Despite the differences in the mediums depicted, it is clear that each element within the design on the Infringing Garments is substantially similar to a corresponding element in Plaintiff's C30020, and that the images are in the same proportions and scale to one another.  As this Court has previously noted, "it is worth noting that even when the materials are side by side one must do a double take to distinguish between them." *JBJ Fabrics, Inc. v. Mark Industries, Inc.*, 1987 U.S. Dist. LEXIS 13445 (C.D. Cal. 1987).

///

Figure 1-1[5]                    Figure 1-2[6]



To identify just a few of the similarities: Arrow "A" in C30020 points to a delicate branch with one open-faced pansy-like flower, with three flower buds emerging from different angles.  This branch is also adorned with three sprays of slim leaves.  This is reproduced nearly *verbatim* in the Infringing Garment, down to the angle of the buds, except that the Infringing Garment uses more crudely-rendered lines to outline the internal patterns.   Furthermore, at Arrow "B," a different version of the pansy, this one with a profile-view of the flower and three buds on the stem below that flower, is also mirrored exactly in the Infringing Garment.  This is likewise reproduced in the Infringing Garment at right (albeit angled a different way).

Below is an even more enlarged excerpt of C30020 (below left) and the Infringing Design (below right).  Arrow "C" in Figure 2-1 points towards a side-view

_____

[5] For purposes of comparison, this excerpt of C30020 has been enlarged.
[6] This excerpt of an Infringing Garment was purchased from Aeropostale and purchased from Bubbles.

_____

of a flower, emerging out of the pansy with the rounded star-shaped inset below right, and to the left of the "concentric pattern" pansy, at Arrow "D".

Figure 2-1



Figure 2-2



Again, the side-view flower (at Arrow "C") is imitated almost identically in the Infringing Garment.  While cruder, the corresponding side-view flower in the Infringing Garment has the three smaller buds below the largest flower, as well as branches emerging out of the larger three flower buds at the *exact same angles*. Arrow "D" points to one of the three-leaf branches, which are similarly intermingled with the two pansy flowers throughout the design.

An examination of these excerpts, and of any other portion of the Infringing Garment, reveals that *every individual element* within the Infringing Design exists in C30020.  *See* Exs. 1 and 3.  Besides minor variations in the reproduction thereof,[7] and a slightly modified arrangement of the Subject Design's flower-leaf-stem groupings,

_____

[7] In fact, the small, knowing modifications could even serve to indicate that it was willfully copied. *See Concord Fabrics, Inc. v. Marcus Bros. Textile Corp.*, 409 F.2d 1315, 1316 (2d Cir. 1969) ("While the trial court placed great emphasis on the minor differences between the two design patterns, we feel that the very nature of these differences only tends to *emphasize the extent to which the defendant has deliberately copied* from the plaintiff.") (emphasis added); *Atari, Inc. v. North American Philips Consumer Electronics Corp.*, 672 F.2d 607, 619 (7th Cir. 1982) (defendant's "superficial changes . . . may be viewed as an attempt to disguise an intentional appropriation of [Plaintiff's] expression."), *superseded on other grounds*.

- 15 -

_____

each of the Defendant retailers' Infringing Designs exhibit "slavish copying," precluding independent creation.  *Id.*; *see also Novelty Textile Mills v. Joan Fabrics Corp.,* 558 F.2d 1090, 1093 n.4 (2d Cir. 1977) (Substantial similarity is a non-issue given the "slavish copying" of plaintiffs' product.).[8]  Moreover, when garments are concerned, courts have additionally ruled that small differences should be disregarded given the equalizing effect of human wear. *See Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc.*, 490 F.2d 1092, 1094 (2d Cir. 1974) (finding that "although small differences between the designs might be found to exist under courtroom scrutiny, those differences fade away within a few feet or absent sharp scrutiny"); *Just in Materials Designs, Ltd. v. Arise Textile, Inc.*, 1980 U.S. Dist. LEXIS 10822, *4-5 (S.D.N.Y. 1980) (finding that differences identified by defendant between prints used on women's dresses were not likely to attract attention from the average person when examined from four feet away and seen on a female body).

In fact, Plaintiff submits that there is not only no real question of *substantial* similarity, but there is also no real question that *striking* similarity exists.  *See Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir. 1960) (No greater similarity is possible than defendants' "photographic reproduction of the design.").  Therefore, there is little doubt that the designs at issue are far too complex, with similarities far too material, for such similarity to be coincidental.[9]

A grant of summary judgment is proper where works are so overwhelmingly identical that the possibility of independent creation is precluded.  *Twentieth Century-Fox Film Corp. v. MCA, Inc.,* 715 F.2d 1327, 1330 (9th Cir. 1983) (While the

_____

[8] Previous courts have looked to the Second Circuit in analyzing copyright infringement, in the context of fabric designs.  As the Northern District of California observed in *Spectravest, Inc. v. Mervyn's, Inc.,* "Since the fabric industry is primarily based in New York, much of copyright litigation concerning fabric design has been centered in the Second Circuit.  An examination of decisions from the Second Circuit is helpful to the determination in this matter."  673 F.Supp. 1486, 1493 (N.D. Cal. 1987).

[9] Plaintiff can make available, at time of hearing, one or more of each of the Infringing Garments, and Plaintiff's fabric bearing the Subject Designs, for inspection.

_____

intrinsic test is somewhat subjective, the Court must still grant summary judgment if the moving party has met its burden in showing that "the works are so overwhelmingly identical that the possibility of independent creation is precluded.").

Such a situation is before the Court today. In fact, each and every element depicted on the fabric used by Bubbles to create its garments in China is lifted directly from Plaintiff's C30020. Attached as Exhibit 7 is a 21-point analysis comparing the design on the Bubbles garment with a swatch of white L.A. Printex fabric printed with the Subject Design. This analysis clearly indicates that the designs are one and the same. As such, this Motion must be granted.

### III.   <u>CONCLUSION</u>

Summary adjudication should be granted in this case because there is no triable question of fact concerning Defendants' liability for infringement, and granting this motion will streamline this case so the parties can focus on the material issues that are reasonably in dispute – such as willfulness and damages. Thus, L.A. Printex respectfully requests that this Court grant its request for summary adjudication as to liability for copyright infringement as to all Defendants, and/or make the following findings:

1. The design at issue, C30020, is original artwork not copied, in whole or in part, from any other source;

2. C30020 is owned by Plaintiff;

3. Bubbles has infringed Plaintiff's copyright in C30020;

4. Aeropostale has infringed Plaintiff's copyright in C30020.

Respectfully submitted,

DATED: May 24, 2010                DONIGER / BURROUGHS

By:   <u>/S/ Scott A. Burroughs</u>

- 17 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Scott A. Burroughs, Esq.
Attorney for Plaintiff

PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION

## DECLARATION OF SCOTT A. BURROUGHS, ESQ.

I, Scott A. Burroughs, Esq., am a shareholder in DONIGER / BURROUGHS APC, and am competent to testify as set forth below:

1. During the deposition of its Fed.R.Civ.P 30(b)(6) designee, Ms. Bubbles, Inc. ("Bubbles") admitted that it created the garments at issue in this case.

2. Bubbles admitted during deposition that it did not create the design on the garments at issue in this case. I have attached a true and correct copy of this testimony as Exhibit 6.

3. Bubbles admitted during deposition that it had no evidence that any party other than L.A. Printex Industries, Inc. had created the design at issue.

4. I contacted the Copyright Office to inquire about copyright registrations made on an unpublished basis that contain both published and unpublished designs. I was told that the designs that were not published will continue to enjoy protection while those that were published will not. The design at issue in this case – C30020 – was not published at the time of the registration, so would continue to enjoy coverage.

5. Despite the above, our office has filed a Form-CA to remove the two designs from the registration that may have been published before its filing. I have attached a copy of this Form-CA as Exhibit 4.

6. Our office has also filed an individual registration for C30020. I have attached a true and correct copy of that registration as Exhibit 5.

7. I have attached as Exhibit 7 a true and correct comparison of the Bubbles garment and a swatch of white L.A. Printex fabric printed with C30020

8. I met and conferred with Defendants over the substance of this motion from May 13-20, 2010.  No agreement could be reached, necessitating this filing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 24, 2010, in Culver City, California.                     By:     /S/ Scott A. Burroughs

## DECLARATION OF JAE NAH

I, Jae Nah, declare that I have personal knowledge of the following, except where stated on information and belief, and confirm that if called as a witness I could and would competently testify as follows:

1. I am the president of L.A. Printex Industries, Inc. ("L.A. Printex"), Plaintiff in this action.

2. L.A. Printex is a Los Angeles-based textile company, dealing primarily in printed fabrics.  The printed fabric bears L.A. Printex's unique and proprietary textile designs.  L.A. Printex's sales are driven by its heavy investment in trendy, unique and aesthetically-pleasant graphic textile designs which are either purchased or created by our internal design team.  Much of L.A. Printex's business is generated from marketing our original designs and then securing printing orders for those designs.  As such, being the exclusive source of our designs is critical to our business (since it requires interested parties to print their fabric bearing L.A. Printex's designs through our facility).

3. In 2002, a member of L.A. Printex's design team, Moon Choi, created an original work of art styled "C30020" ("Subject Design").  I have attached hereto a true and correct copy of the Subject Design as the third page of Exhibit 1.

4. In 2002, L.A. Printex registered a collection of designs that included C30020 with the Copyright Office, and on July 17, 2002 was issued Registration No. VAu 557-306 for that work.  Attached hereto as Exhibit 1 is a true and correct copy of that registration certificate (copies of the other floral designs submitted along with C30020 have been omitted).

5. L.A. Printex owns all rights in the Subject Design, and published said design by sampling and making sales of fabric bearing said design prior to

- 20 -
_____

the acts alleged herein.  This sampling is done by showing our designs to our customers and often giving either a paper CAD or a fabric swatch with designs our customers are interested in to them.  If our customers are interested in a larger amount of fabric bearing a design, they can then place an order for sample yardage or a full production run of that fabric.

6.  While our company does not keep records of every customer it gives CAD and fabric swatches to – it is simply not practical to do so –we have very accurate records of all sales of sample yardage and production runs. Attached hereto as Exhibit 2 is a true and correct copy of that sales history, which shows (1) that our first sales of the design were in October of 2002, and (2) that my company produced and sold thousands of yards of fabric bearing the Subject Designs to numerous customers from 2002 - 2008.

7.  Most of our clients, and all of those listed in the previous paragraph, act as "fabric converters", meaning that they are companies that work with garment manufactures to provide the printed fabric that those manufacturers need to make garments.  Fabric converters will show manufacturers different textile designs and, once they obtain an order for a design, will come to a printing mill like LA Printex to fill that order.  Once we print the fabric, the converter sends the fabric to the manufacturer which then manufactures garments and sells them to retail stores for sale to the public.

8.  L.A. Printex has not granted any other party a license to print or otherwise reproduce the Subject Design.  Plaintiff makes clear to its customers that its designs are copyrighted and proprietary.

9.  Beginning in 2008, L.A. Printex found that garments bearing the "Aeropostale" trademark, and unauthorized reproductions of C30020 were being sold by Aeropostale, Inc. and Ms. Bubbles. I have attached as Exhibit 3 a true and correct copy of an "Aeropostale" garment bearing a pattern that

- 21 -

_____
PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION

infringes C30020. The only differences between our C30020 design, and the design on the "Aeropostale" garment is that the design on the "Aeropostale" garment is printed using cruder, lower-quality techniques and machinery.

10. I have reviewed the pattern on the garments purchased from defendants and our production records and verified that LA Printex did not print these garments.  Furthermore, we did not authorize any other party to print these garments through any other mill.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on May 24, 2010, at Vernon, California.


By: _____
JAE NAH
Declarant

_____

## **DECLARATION OF MOON CHOI**

I, MOON CHOI, declare that I have personal knowledge of the following, and state that if called as a witness I could and would competently testify as follows:

1. I am an employee of L.A. Printex Industries, Inc. employed as part of its design team, and was so employed at the time the Subject Design was created.

2. In 2002, while employed by L.A. Printex Industries, Inc., I created design C30020.  I created this design as an original by hand using a computer, and did not copy it from any source. I have attached a true and correct copy of C30020 as the third page of Exhibit 1.

3. C30020 was then registered with the United States Copyright Office on July 17, 2002, whereby it was assigned U.S. Copyright No. VAu 557-306. I have attached a true and correct copy of the registration as Exhibit 1.

4. At the time I created C30020 I was an employee of LA Printex and was acting in the scope of my job as a designer for LA Printex.  As such, it is my understanding and belief that L.A. Printex owns all rights in and to the C30020 Design.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on May 24, 2010, at Vernon, California.


By: _____
      MOON CHOI
      Declarant