Stephen M. Doniger, Esq. (SBN 179314)
stephen@donigerlawfirm.com
Scott A. Burroughs, Esq. (SBN 235718)
scott@donigerlawfirm.com
DONIGER / BURROUGHS APC
300 Corporate Pointe, Suite 355
Culver City, California 90230
Telephone: (310) 590-1820
Facsimile:  (310) 417-3538

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| L.A. PRINTEX INDUSTRIES, INC., | Case No.:  CV 09-2449 JFW (FMOx) |
|---|---|
| Plaintiff, | *The Honorable John F. Walter Presiding* |
| v. | **OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DECLARATION OF JAE NAH AND SCOTT A. BURROUGHS ESQ. IN SUPPORT THEREOF** |
| WILLIAM CARTER CO.; et al., | |
| Defendants. | Date: June 21, 2010 |
| | Time: 1:30 p.m. |
| | Courtroom: 16 |

- 1 -

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff L.A. Printex Industries, Inc. ("Plaintiff" or L.A. Printex") filed this copyright infringement suit after it discovered one of its proprietary designs reproduced on garments being sold by Defendant Aeropostale, Inc. ("Aeropostale"). Further investigation revealed that these infringing garments were manufactured by Ms. Bubbles, Inc. ("Ms. Bubbles"), a retail manufacturer.  In pursuing its copyright infringement claim, however, Aeropostale and Ms. Bubbles have attempted every possible maneuver to avoid their liability for the infringement of said design, ranging from frivolous arguments that the design (internally designated as "C30020") looks nothing like the design on their infringing garments, to a wide range of allegations of technical errors in L.A. Printex's copyright registration.  All of these arguments fail.

Interestingly, Defendants *at no point* claim to have created the design, to have licensed the design, or to have ever had the legal right to use the design on the garments at issue. This is because they never had such rights, and have infringed Plaintiff's rights in the C30020 design.

A clear comparison of the two garments – which L.A. Printex will provide samples of at the hearing – reveals that the designs are *virtually identical*, down to the color, arrangement, scale, and detail of the intricate flower branches and leaves that comprise the design.  Furthermore, L.A. Printex's registration for the design, V Au 557-306, is a valid registration, to which any good-faith technical errors have since been corrected.  Finally, *even if* any technical errors on the C30020's registration still existed, the Prioritizing Resources and Organization for Intellectual Property Act ("Pro-IP Act") of 2008, passed in an effort by Congress to ensure that copyright infringements were not dismissed due to harmless errors, requires both that Defendants must make a showing of L.A. Printex's fraudulent intent, and that the Court put the matter before the Register of Copyrights to verify the validity of the copyright.  17 U.S.C. § 411(b)(2).  As Defendants fail to allege any fraudulent intent

_____
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

1    on the part of L.A. Printex, this motion for summary judgment must be denied in its

2    entirety.

3

4    **II.    FACTUAL BACKGROUND**

5         L.A. Printex is a Los Angeles-based printing mill which chiefly prints two-

6    dimensional patterns on fabric for use in the apparel industry.  Nah Decl. ¶ 2.  L.A.

7    Printex invests heavily in its in-house design staff and in the creation of new and

8    original designs.  If those designs can then be knocked-off with impunity, then L.A.

9    Printex cannot realize the rewards of its investment and it will quickly go out of

10   business.  *Id.*

11        The case at bar concerns a floral pattern design which one of L.A. Printex's in-

12   house designers created, and which was allocated the design name "C30020"

13   ("C30020" or "the design").  *Id.* at ¶ 3, Ex. 1 attached thereto.  L.A. Printex began

14   offering for sale, and selling, fabric bearing C30020 to its customers in 2002.  *Id.* at ¶

15   4, Ex. 3.  In that same year, it registered C30020 with the Copyright Office as part of

16   Plaintiff's "Small Flower Group A" collection of designs under Registration No.

17   VAu 557-306.  *Id.*

18        Between approximately 2002 to 2008, Plaintiff sampled and sold over 71,000

19   yards of fabric bearing C30020 to customers and potential customers including For

20   You Textile, LLC, Matrix International Textiles, Inc., Neman Brothers, Laguna

21   Fabrics, Fabric Selection Inc., Unitex, and others, and in various color combinations.

22   *Id.* at ¶ 7, Exs. 3-4.  Most of these customers are fabric converters[1] that had fabric

23   printed with C30020 for garment manufacturers, who then manufactured that fabric

24

25   _____

26   [1] A "fabric converter" is a company that acts as a middle-man between the printing mill and the
     garment manufacturer.  It generally takes designs (sometimes that it owns, sometimes that the
27   printing mills owns, and sometimes public domain designs) to show its customers in the hopes of
     securing orders.  While it is obligated to bring printing orders for designs owned by a printing mill
28   back to that mill, converters have certainly been known to send proprietary designs overseas to have

_____

into thousands of garments that would have been sold at a wide variety of retail stores.  *Id.* at ¶¶ 7-8.

In 2006, L.A. Printex discovered garments bearing a near-verbatim knock-off of C30020 ("Infringing Garments") sold at Aeropostale, Inc. ("Aeropostale") retail locations.  Further investigation revealed that Aeropostale had received these garments from Ms. Bubbles, Inc. ("Ms. Bubbles"), who had imported the garments from China.  *Id.* at ¶¶ 9-10.

L.A. Printex filed this lawsuit in against, *inter alia,* Aeropostale and Ms. Bubbles ("Defendants") 2009, asserting various claims of copyright infringement. Burroughs Decl. ¶ 1.  During the course of this litigation, however, L.A. Printex realized that there was a technical error in its single works registration, in that two of the designs in Small Flower Group A appeared to have been published prior to the date of VAu 557-306's registration.  *Id.* at ¶ 2.  In attempting to comply with the technical requirements under an unpublished group of works on a single registration, as specified under the Code of Federal Registrations, L.A. Printex filed a Form-CA application to correct the error by adding a publication date.  *Id.*  Upon realizing that the specific publication requirements as to a collection of works under 37 C.F.R. § 202.3(b)(4)(i)(B) prohibited the filing of both published and unpublished works on a single registration, L.A. Printex then withdrew the first Form-CA application.  *Id.* at ¶ 3.  Further, L.A. Printex's counsel subsequently contacted the Copyright Office and was informed that the registration was still valid as to *those designs that had not been published*.  *Id.* at ¶ 4.  This was in accord with the Copyright Office's policy of retaining protection for registered works, except in cases where fraud was used to procure the registration.  As such, the original registration would be valid to the

them "knocked off" – sometimes ordering the overseas mill to change them slightly, where they would otherwise lose a sale because of the higher price of printing domestically.

extent it covered those works that were *not yet published* when the registration was *submitted*.

L.A. Printex then filed a second Form-CA application, to remove those two designs that had been previously published – and leaving the remaining three unpublished works protected under that copyright.  *Id.*  Consequently, any previous errors in technical compliance with the copyright registration regulations *have since been corrected.*  To further remove the technicality argument, Plaintiff has re-filed and been granted a registration for the individual C30020 design. Ex. 5[2].

After all of Defendants' baseless arguments and allegations are discarded, the facts of this case therefore become very clear.  L.A. Printex holds a valid copyright in its registration of C30020, which was created and widely distributed beginning in 2002.  In 2006, Defendants began manufacturing garments bearing an unauthorized reproduction of C30020, with absolutely no evidence of independent creation of that design.  Based on the foregoing, L.A. Printex respectfully requests that Defendants' Motion for Summary Judgment be denied.

## III.   ARGUMENT

### A.   The Design on Defendants' Garment is Substantially Similar to Plaintiff's Copyrighted Design C30020

Defendants' first argument is that L.A. Printex's design is in no way similar to the design found on Defendants' garments ("Infringing Design").  A simple

---

[2] Defendants take issue with the fact that the base screen is not visible on the deposit submitted with the individual C30020 registration. That argument fails because the C30020 floral design remains the same and the caselaw states that a party need not register each variation of a particular design. *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 193 F.2d 162 (1st Cir. 1951) , aff'd, 344, U.S. 228 (1952); *First American Artificial Flowers v. Joseph Markovits, Inc.*, 342 F. Supp. 178 (S.D.N.Y. 1972) . The only requirement should there be the registration of a variation is that an additional deposit may be required if that variation contain sufficient additional original matter so as to qualify as a derivative or collective work. H. Rep., p. 151. In this case, should that base screen be enough to so qualify, Plaintiff has made the additional deposit. Ex. 5.

comparison of the two, however, shows that the Infringing Design is not only substantially similar to C30020, it is a strikingly similar, slavish copy of Plaintiff's copyrighted design.  Any reasonable person comparing C30020 and the design on Defendant's garment would find the two practically indistinguishable.[3]

Below, as demonstrated in Plaintiff's Motion for Summary Judgment (*see* Dkt. No. 75) is a side-by-side comparison of excerpts from the two garments.  It is clear that Defendants do not meet their burden of proof that the two designs are not substantially similar *as a matter of law*:

Figure 1



Figure 2



---

[3] In the Ninth Circuit, the two-step analysis employed to determine whether two works are substantially similar asks:  (1) whether there is similarity in the specific expressions under a point-by-point analysis (the extrinsic test), and (2) whether there is similarity in the "total look and feel" when viewed by an ordinary observer (the intrinsic test).  *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). "For the purposes of summary judgment, only the extrinsic test is important because the subjective question whether works are intrinsically similar must be left to the jury." *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004).  Therefore, the Court may settle the extrinsic test. *Jackson,* 84 F.3d at 1218.

   As a process, the extrinsic test involves "breaking the works down into their constituent elements, and comparing those elements for proof of copying. . ." *Id.*  Elements under consideration include "the type of artwork involved, the materials used, the subject matter, and the setting for the subject." *Shaw v. Lindheim,* 919 F.2d 1353, 1356 (9th Cir. 1990); *see also Cavalier*, 297 F.3d at 826 ("Although we do not attempt here to provide an exhaustive list of relevant factors for evaluating art work, the subject matter, shapes, colors, materials, and arrangement of the representations may be considered in determining objective similarity in appearance.").

Merely looking at one constituent element of the design, it is clear that this particular flower excerpt from C30020 (at Arrow "A") is reproduced nearly *verbatim* at the corresponding flower.  Again, the only discernable difference between the two is that the Infringing Garment's flower in Figure 2 is less detailed, either due to a shoddier knockoff job or due to discrepancies that occurred in the printing process.  (Nah Decl. ¶ 10).[4]  The mere fact that Defendants' knock-off cheapens the detail of C30020 does not excuse their liability for copyright infringement.

Secondly, it is undisputed that L.A. Printex had produced and sold yardage bearing C30020 in a variety of color combinations, such as peach/white, lilac/white, blue/brown, and coral/white.  Nah Decl. ¶ 6, Ex. 2 attached thereto.  In fact, L.A. Printex had printed C30020 in the *exact color combination* as shown in the Infringing Garments – red flowers with green stems printed on white, prior to any of Defendants' manufacturing of the Infringing Garments thereof.  *Id.* at ¶¶ 10-11, Exs. 6-7).  A comparison of this particular print makes the substantial similarity between the two designs even more obvious.  For Defendants to allege that there is no similarity between the two designs *as a matter of law* is patently absurd.

Defendants next argue that because the Infringing Design lacks the faint, white background pattern that appears against the yellow background in C30020, the Infringing Design is distinguishable from C30020.  Ignoring the fact that this white background pattern is barely discernable (as demonstrated above in the excerpt), Defendants apparently contend that because they only infringed on *part* of the design, that they should not be liable for the portions of C30020 that they did copy.  In fact,

---

[4] Defendants' attempts at distinguishing these designs are therefore disingenuous.  In their Motion, Defendants contend that the flowers in C30020 are "far more detailed" than the flowers in the infringing design.  Defs.' Mot. at 9.[4]  These discrepancies are easily explained by the fact C30020 is a detailed design created by an artist using a computer system. When a design comprised of tiny elements is copied onto fabric, the fine lines that make up the details of the design get blurred in the printing process. Particularly poor-quality knock-offs or prints on low-quality fabrics result in the very blotchy effect that Defendants holds out as a distinguishable differentiation between C30020 and their infringing garment.

1  courts have found that small, knowing modifications could even serve to indicate that

2  it was willfully copied. *See Concord Fabrics, Inc. v. Marcus Bros. Textile Corp.*,

3  409 F.2d 1315, 1316 (2d Cir. 1969) ("While the trial court placed great emphasis on

4  the minor differences between the two design patterns, we feel that the very nature of

5  these differences only tends to *emphasize the extent to which the defendant has*

6  *deliberately copied* from the plaintiff.") (emphasis added); *Atari, Inc. v. North*

7  *American Philips Consumer Electronics Corp.,* 672 F.2d 607, 619 (7th Cir. 1982)

8  (defendant's "superficial changes . . . may be viewed as an attempt to disguise an

9  intentional appropriation of [Plaintiff's] expression."), *superseded on other grounds*.

10      Indeed, slight modifications made to obfuscate piracy do not allow an infringer

11  to escape liability for the infringement, but actually serve as *evidence* of the piracy.

12  *Runge v. Lee*, 441 F.2d 579, 582 (9th Cir. 1971).[5]  The Court should therefore not

13  permit Defendants to escape liability for merely taking portions of the registered

14  design.[6]

15      Finally, Defendants also attempt to insinuate that the Infringing Design is not

16  substantially similar to C30020, because of the color combination in their design

17  differs from the color scheme of C30020 submitted by LA Printex to the Copyright

18  Office.  This argument also entirely lacks merit, as the underlying design of each of

19  the floral elements is still protected, regardless of their color palette.  *See* Nimmer,

20  NIMMER ON COPYRIGHT, § 7.17; *F. W. Woolworth Co. v. Contemporary Arts, Inc.*,

21

22  _____

23  [5] *See also Universal Pictures Co., Inc. v. Harold Lloyd Corp.*, 162 F.2d 354, 360 (9th Cir. 1947)
   ("[An] infringement is not confined to literal and exact repetition or reproduction; it includes also
24  the various modes in which the matter of any work may be adopted, imitated, transferred, or
   reproduced, with  more or less colorable alterations to disguise the piracy.").
25  [6] Defendants also apparently dispute the originality of L.A. Printex's design.  In their Motion at
26  page 10, Defendants imply, without any evidence or analysis, that L.A. Printex "simply lifted"
   C30020 from the "The Album of China Textile Patterns."  However, this insinuation is entirely
27  inappropriate.  In its Motion for Summary Adjudication, L.A. Printex has provided the Declaration
   of the artist, Moon Choi, stating that she had created the design, and that it was wholly original.
28  Defendants fail to provide any independent source of creation for their own work, and instead

193 F.2d 162, 164 (1st Cir. Mass. 1951)(*affirmed by F. W. Woolworth Co. v. Contemporary Arts, Inc.*, 193 F.2d 162 (1st Cir. Mass. 1951) (copyright owner had no further obligation to deposit each new version of the same design that merely differed "in size, color or inconsequential detail.").[7]  Consequently, once attaining registration for the C30020 design, L.A. Printex is under no duty to re-register different color variations of the same design, as it is already protected. Also, it should be noted that L.A. Printex has sold fabric in the exact color scheme now copied by Defendants.

For all of these reasons, it is therefore clear that Defendants cannot state as a matter of law that there is no substantial similarity between these two designs.  At best, Defendants may argue that there is a question of fact as to whether substantial similarity exists; in no way could they legitimately claim that no reasonable juror would find that these two designs were not similar.  For this reason alone, Defendants' Motion for Summary Judgment should be denied.

### B.   Access to the Subject Design is Beyond Reasonable Dispute

#### 1.   L.A. Printex Has Produced Evidence of Access through its Massive Proliferation of C30020 in the Marketplace

Next, Defendants argue that L.A. Printex's copyright infringement claim must fail as a matter of law because there is absolutely no showing of access.  Defendants, however, conveniently ignore L.A. Printex's extensive sales records of C30020 prior to Defendants' production of the Infringing Garments, as well as the striking similarity between the two designs.

To establish access, Plaintiff need only establish that one of the Defendants

---

merely imply that it is not original.  This is not sufficient to support as a matter of law that C30020 is unoriginal, if that is what Defendants' Motion is attempting to establish.

_____

had an "opportunity to view or copy" the Subject Design.  *Three Boys Music Corp.*, 212 F.3d at 483.  Because an infringed party infrequently catches the infringer in the act, "[p]roof of access requires only an opportunity to view or to copy plaintiff's work."  *Kamar International v. Russ Berrie & Co.*, 657 F.2d 1059, 1062 (9th Cir. 1981).  An opportunity to view or copy may be established by evidence that "the plaintiff's work has been widely disseminated."  *Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. Cal. 2000).

Here, L.A. Printex and Ms. Bubbles operate in the same tightly-knit community of textile manufacturers.  Defendants do not even contest Plaintiff's evidence of its massive distribution of lawfully printed fabric throughout the marketplace—which therefore constitutes access through wide dissemination.  Throughout the course of nearly a decade, L.A. Printex sold over 71,000 yards of C30020 fabric to legitimate customers in this textile market, which, in turn, was widely disseminated by L.A. Printex's customers to clothing manufactures, retail stores, and the public – enabling the creation of tens of thousands of garments.  Nah Decl. ¶ 4, Ex. 3 attached thereto.  The widespread dissemination of C30020 therefore shows at the least that there is a question of fact as to whether Defendants had the "opportunity to view" the C30020 design occurred, and did so prior to the infringement at issue.[8]

## 2.  Access May Be Implied from Striking Similarity

---

[7] The deposit therefore acts as an "identifier" and not an exhaustive example of every variation protectable under the copyright registration.  *F. W. Woolworth Co. v. Contemporary Arts, Inc.,* 193 F.2d 162, 164 (1st Cir. Mass. 1951).

[8]  Both the Second and Seventh Circuits review leading cases on dissemination by considering the following: (1) number of copies distributed; (2) commercial success or notoriety; and (3) national performances or distribution. *Hoch v. Mastercard Int'l Inc.,* 284 F.Supp.2d 1217, 1220 (2003). For example, wide dissemination and access was found where 2,000 sheets of music and 200,000 records sold and several nationwide broadcasts. *Cholvin v. B. & F. Music Co.,* 253 F.2d 102, 103 (7th Cir. 1958). Between 2002 and 2008 LA Printex clearly met this standard for prolific distribution and commercial success selling over 71,000 yards of C30020 to its customers.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

Alternatively, even assuming *arguendo* that Defendants were correct in that L.A. Printex has "absolutely no proof of Defendants' access to C30020," access may still be implied where striking similarity exists.  If two designs are "so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access." *Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995); *Three Boys Music*, 212 F.3d at 485 (in the absence of any proof of access, "a copyright plaintiff can still make out a case of infringement by showing that the songs were 'strikingly similar'"), *citing Smith v. Jackson*, 84 F.3d 1213, 1220 (9th Cir.1996) and *Baxter v. MCA, Inc*., 812 F.2d 421, 423 (9th Cir. 1987) (access may be inferred from "striking similarity"), *cert. denied*, 484 U.S. 954 (1987); *Selle v. Gibb*, 741 F.2d 896, 903 (7th Cir. 1984) (a striking similarity is one sufficiently unique or complex as to make it unlikely that it was independently created).

Once again, the similarities between the two designs are so extensive that it is also clear that ***striking similarity exists.***[9]  "Striking similarity" exists when two designs "are so much alike that the only reasonable explanation for such a great degree of similarity is that the later [work] was copied from the first."  *Stewart v. Wachowski,* 574 F. Supp. 2d 1074, 1103 (C.D. Cal. 2005) (citations omitted); *see also Blue Fish Clothing, Inc. v. Kat Prints*, 1991 U.S. Dist. LEXIS 5720 * 7 (E.D. Pa. Apr. 29, 1991) ("[S]triking similarity simply means that in human experience it is ***virtually impossible that the two works could have been independently created***" (internal quotations omitted)). A simple comparison of Plaintiff's design and the Infringing Design is enough to merit a finding of striking similarity.  Defendants' motion for summary judgment therefore should be denied on this ground because access may still be found by the Court.

---

[9] Defendants nonsensically argue that "striking similarity" is only proof of access, and is not at all evidence of copying. While Plaintiff agrees that proving "striking similarity" is a means to show "access," striking similarity also obviously shows copying.  Defendants' own cited case states as much:  "'Striking similarity' exists when two designs 'are so much alike that the only reasonable explanation for such a great degree of similarity is that the later [work] was ***copied*** from the first.'"  *Stewart v. Wachowski*, 574 F. Supp. 2d 1074, 1103 (C.D. Cal. 2005).

1

2

### C.   Plaintiff's Copyright Registration is a Valid Registration of an Unpublished Collection of Works

3   Defendants' final argument is that L.A. Printex's copyright registration is

4   invalid, due to technical failures in C30020's registration's compliance.  The

5   overwhelming weight of the law in this Circuit goes against this position, as there is

6   absolutely no evidence that any technical errors in C30020's registration was made in

7   anything but good faith.  As Defendants' own motion shows, L.A. Printex has also

8   made every effort to correct these errors, so that at this point, the registration has been

9   fully corrected.

10   Moreover, mere days ago on May 25, 2010, the Ninth Circuit held in *Cosmetic

11   Ideas, Inc. v. IAC/InteractiveCorp.,* No. 08-56079, D.C. No. CV 08-2074 (R)(RZx)

12   (9th Cir. May 25, 2010), that a copyright registration application, *once submitted,*

13   fulfills the registration requirements under 17 U.S.C. § 411(a) – therefore not

14   requiring the Copyright Office to affirmatively grant registration. In addition,

15   *Cometic Ideas, Inc.*, citing *Reed Elsevier, Inc. v. Muchnick*, ___ U.S. ___, 130 S. Ct.

16   1237 (2010), found  that, although "[s]ection 411(a)'s registration requirement is a

17   precondition to filing a claim," it "does not restrict a federal court's subject-matter

18   jurisdiction." 130 S. Ct. at 1241.  So owing, there can be no question that the Court

19   has jurisdiction to hear Plaintiff's claims for infringement of its C30020 design.

20   In sum, all authorities therefore demonstrate that L.A. Printex's registration

21   and subsequent amendments in C30020 *must be accepted as valid,* Defendants'

22   arguments regarding the technical requirements should therefore be ignored, and

23   Defendants' Motion should be denied in its entirety.

### 1.  Plaintiff Holds a Valid Copyright in VAu557-306 as a Collection of Unpublished Works

26   Plaintiff holds a duly issued copyright registration in the design.  *See* Ex. 1.

27   Under 17 U.S.C. § 410(c), the registration certificate constitutes *prima facie* evidence

28   of the validity of the copyright and the facts stated on the certificate, including

- 11 -

Plaintiff's ownership. *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.,* 345 F.3d 1140, 1144 (9th Cir. 2003); *see also* Commentary to 9th Circuit Model Jury Instruction 17.5; *North Coast Indus. v. Jason Maxwell, Inc.,* 972 F.2d 1031, 1033 (9th Cir. 1992) ("Under our copyright law, the registration of the copyright certificate itself establishes a prima facie presumption of the validity of the copyright in a judicial proceeding. . . ."). Thus, Defendants bear the burden of rebutting the presumption of validity. *Hamil America Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999). To rebut the presumption, competent evidence must be introduced, such as when "the alleged infringer demonstrates that the plaintiff's work `is not original but copied from another's work.'" *Entm't Research Group, Inc. v. Genesis Creative Group, Inc*., 122 F.3d 1211, 1218 (9th Cir.1997) (quoting *N. Coast Indus*., 972 F.2d at 1033). Nothing of this nature has been done in this case. In fact, Ms. Bubbles has conceded that it has no evidence that any party other than L.A. Printex created the design on the Bubbles garments. In addition to this registration, L.A. Printex has presented sworn testimony from the artist who created the design (as shown in its Motion for Summary Judgment).

It is also settled law that "inadvertent mistakes on registration certificates do not invalidate a copyright and thus do not bar infringement actions, unless . . . the claimant intended to defraud the Copyright Office by making the misstatement." *Urantia Found. v. Maaherra*, 114 F.3d 955, 963 (9th Cir. 1997); *accord Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486–87 (9th Cir. 2000); *see also Nimmer*, § 7.20 (absent fraud, "a misstatement or clerical error in the registration application . . . should neither invalidate the copyright nor render the registration certificate incapable of supporting the infringement action").[10] "A party seeking to establish a

_____

[10] Courts have traditionally treated innocent errors contained in an application for a registration certificate with leniency. *Nimmer*, § 7.20[B], n.18. No Ninth Circuit ruling has ever indicated, or even suggested, that an inadvertent error, even if material, would preclude a copyright infringement action where the work would have been accepted for registration if the application contained a

_____

fraud on the Copyright Office, and thereby rebut the presumption of copyright validity, bears a heavy burden." *Lennon v. Seaman*, 84 F. Supp. 2d 522, 525 (S.D.N.Y. 2000) (citing *Nimmer*, § 7.20[B]).[11] Given that no fraud has been shown, Plaintiff's copyright registration should stand.

Finally, Defendants argue incorrectly that the registration should also be invalidated because the works were not sold as a collection. Initially, this is erroneous, as publishing is accomplished by either selling, or offering to sell, a group of designs. *Estate of Martin Luther King v. CBS, Inc.,* 13 F. Supp 2d 1347 (N.D. Ga.

---

correct statement of facts. *Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 668 n.5 (3d Cir. 1990) ("that an inadvertent omission from a registration application will render a plaintiff's copyright incapable of supporting an infringement action has not gained acceptance with the courts"); *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1161–62 (1st Cir. 1994) ("It is well established that immaterial, inadvertent, errors in an application for copyright registration do not jeopardize the validity of the registration"); *Eckes v. Card Price Update*, 736 F.2d 859, 861–62 (2d Cir. 1984) ("Only the 'knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitutes reason for holding the registration invalid'") (quoting *Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc.*, 482 F. Supp. 980, 988 (D.C.N.Y. 1980)); *Nimmer*, § 7.20[B], n.19 (a misstatement in the registration application does not "render the registration certificate incapable of supporting an infringement action"). In fact, "[t]he case law is overwhelming that inadvertent mistakes on registration certificates do not . . . bar infringement actions, unless the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office by making the misstatement." *Urantia Found.*, 114 F.3d at 963 ("[A] misstatement or clerical error in the registration application if unaccompanied by fraud will not invalidate the copyright or render the registration certificate incapable of supporting an infringement action." (citing *Nimmer*, § 7.20 at 7-201 and n.6)); *S.O.S., Inc. v. Payday*, 886 F.2d 1081 (9th Cir. 1989); *Harris v. Emus Records Corp.*, 734 F.2d 1329 (9th Cir. 1984); *Urantia Found. v. King*, 194 U.S.P.Q. 171, 174–75 (C.D. Cal. 1977); *Datastorm Technologies, Inc. v. Excalibur Commc'ns, Inc.*, 888 F. Supp. 112 (N.D. Cal. 1995).

[11] The presumption against invalidating a registration is so strong that, even where the *name* of the copyright claimant was incorrect, the infringing action was permitted to go forward. *Bourne Co. v. Walt Disney Co.*, 1992 WL 489766 (S.D.N.Y. 1992), *aff'd* on other grounds, 68 F.3d 621 (2d Cir. 1995), *cert. denied*, 517 U.S. 1240 (1996). *See also Nimmer*, § 9.05[D][1] (favorably citing *Bourne* for refusing to cause a forfeiture of copyright based on "useless technicalities"). In numerous other cases, the copyright claims have been allowed to proceed despite material mistakes in the registration. *See, e.g., Thomas Wilson & Co. v. Irving J. Dorfman Co.*, 433 F.2d 409 (2d Cir. 1970) (listing president of corporation as author of the work instead of the corporation itself); *Testa v. Janssen*, 492 F. Supp. 198 (D.C.Pa. 1980) (erroneously listing author's assignee as author); *Wales Indus. v. Hasbro Bradley, Inc.*, 612 F. Supp. 510 (S.D.N.Y. 1985), *overruled* on other grounds, *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189 (2d Cir. 1985) (listing copyright claimant the exclusive licensee instead of the owner).

_____
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

1998), *rev'd on other grounds*, 194 F.3d 1211 (11th Cir. 1999) (offering a work for sale constitutes "publication" even if the offering does not result in a sale).

Second, there is no requirement that a group of works registered on an unpublished basis be published together. The Code of Federal Regulations provides that a collection of works may be registered as a "single work" under the Copyright Office's "single work registration" category where all works have the same copyright claimant, and either (1) were first published together, or (2) *are all unpublished as of the date of registration*.   37 C.F.R. § 202.3(b)(4)(i)(A) (emphasis added).   The registration for the Subject Design clearly indicates that the works were "unpublished as of the date of registration." Following the submission of the Form CA, all works on that registration were "unpublished as of the date of the registration. As such, Defendants' argument fails.


## 2. Plaintiff's Amendment To Its Registration Should be Deemed Valid By the U.S. Copyright Office, Thereby Curing Any Discrepancies Present In The Initial Copyright Registration

In an attempt to bypass Defendants' arguments that the technical errors initially present in Plaintiff's copyright invalidate its registration, and to focus on the merits of this action, Plaintiff has filed a Form-CA application to correct the perceived deficiency in its registration.  In essence, Plaintiff's first registration was for a group of five designs. This group was registered on an unpublished basis because it was unclear whether certain of the designs had been published.  When reviewing its sales records, however, it became apparent that two of the designs in the group covered by this registration may have been published prior to registration. Burroughs Decl. ¶¶ 2-3.

In conversations with the Copyright Office, Plaintiff's counsel was told that the registration was still valid as to those designs that had not been published. Burroughs Decl. ¶ 4. This was in accord with the Copyright Office's policy of retaining protection for registered works except in cases where fraud was used to procure the registration. As such, the original registration would be valid to the extent it covered those works that were *not yet published* when the registration was *submitted*. It is clear from Plaintiff's sales records that this is the case for the Subject Design – it was not published until October of 2002, well after the registration was submitted. As such, C30020 is still entitled to protection under the original registration.

Despite the above, to clarify the registration, L.A. Printex submitted a Form-CA to remove from the registration the two designs that had been sold prior to the registration being issued. *Id.,* Ex. 4. As such, and given that no fraud has been shown given that the putative mistake provided no real benefit to Plaintiff, and was made by a non-native English speaker, the issue of the technical deficiencies is a non-starter, and has been cured.

In any event, Defendants have offered no evidence that the mistake on the registration was in bad faith, or a result of fraud. Therefore, no triable issue exists in opposition to a finding that Plaintiff is the copyright owner of C30020.

### 3. Defendants Fail to Show Fraudulent Intent Required by the Pro-IP Act to Invalidate a Copyright

Furthermore, Defendants fail to acknowledge the strict requirements that were instated by the Prioritizing Resources and Organization for Intellectual Property Act ("PRO-IP Act"), enacted in 2007. As discussed above, the law has long held that errors in copyright applications are to be scrutinized with leniency, given the complicated nature of the document, the fact that they are often completed by individuals with no legal training, and because the incentives afforded by a registration would be degraded if minor mistakes could nullify the registration. For these reasons, courts have decided that

unless fraud can be shown in the application, no registration should be voided for mistake.

To accord even more strength to this long-held principle, Congress in 2008 passed the Prioritizing Resources and Organization for Intellectual Property Act ("PRO-IP Act"). The PRO-IP Act was passed in an effort to ensure that copyright infringement actions were not dismissed because of harmless technical issues with copyright registrations.  17 U.S.C. §411.  This Act, in part, revised 17 U.S.C. § 411 to severely limit the instances in which infringement actions should be dismissed based on errors in the registration.  Specifically, it provides in relevant part that:

> (1) A certificate of registration satisfies the requirements of this section and section 412, *regardless of whether the certificate contains any inaccurate information*, unless—
> (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and
> (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.
> (2) In any case in which inaccurate information described under paragraph (1) is alleged, the court *shall request* the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.

17 U.S.C. § 411(b) (emphasis added).   This statute makes clear that a certificate of registration should not be disturbed "regardless of whether [it] contains any inaccurate information" unless (a) the registrant knew that the information submitted was inaccurate, *and* (b) the inaccuracy of the information would have caused the Register of Copyrights to refuse registration.

In essence, a showing of fraud as to a material element of the registration is necessary in order to invalidate the registration. Defendants fail to make this showing of fraud. To make this showing, a defendant must prove (1) that the registration

1   contains inaccurate information, (2) that Plaintiff knew about the inaccuracy at the

2   time of the registration, (3) that Plaintiff made the inaccurate statement with

3   fraudulent intent, and (4) that the Copyright Office would not have registered the

4   design at issue had it known of the true facts. Given the presumption of validity

5   inherent in a registration, a defendant bears the burden of proof on all of these

6   elements.

7       Defendants incorrectly argue that the mistakes in the copyright registration

8   invalidate the copyright.  Defendants have not met their burden of proof that the

9   mistake in the registration was made with fraudulent intent.  C30020 was registered

10  by a non-native English speaker who was a part-time employee for LA Printex.  Nah

11  Decl. ¶ 4.  Registration for C30020 took place at the company's infancy, and at this

12  time, L.A. Printex was admittedly a novice at the technicalities of the copyright

13  registration process.  *Id.*  However, since it is undisputable that LA Printex made the

14  inaccurate statements due to inexperience and without any trace of fraudulent intent,

15  considering the registration invalid would directly contradict the guidelines of the

16  PRO-IP Act.

17       Moreover, assuming Defendants make a credible case in support of each

18  and every one of these elements, the Court must then still put the matter to the

19  Register of Copyrights to verify the validity of a copyright.  17 U.S.C. § 411(b)(2).

20  Upon immediate discovery of the inaccuracy in C30020's registration, LA Printex

21  diligently corrected the copyright registration.  LA Printex's amended copyright

22  registration is therefore necessarily presumed valid until confirmed as such by the

23  Copyright Office. *See Cosmetic Ideas, Inc. v. IAC/InteractiveCorp.,* No. 08-56079,

24  D.C. No. CV 08-2074 (R)(RZx) (9th Cir. May 25, 2010)(finding that submission of

25  the copyright registration, and not the Copyright Office's approval of registration, is

26  sufficient for the registration requirements in filing a copyright infringement action).

27       Finally, it bears noting that policy considerations strongly favor protecting and

28  preserving the rights of artists and those, like LA Printex, who invest heavily in

- 17 -

original artwork. As such, those considerations require that the Court reject Defendants' efforts to escape liability for their infringement, and to deny outright Defendants' Motion for Summary Judgment.

### IV.   <u>CONCLUSION</u>

Because none of the Defendants' arguments are persuasive, and that the evidence supports a finding that L.A. Printex owns its C30020 design, said design was properly registered with the Copyright Office, and Ms. Bubbles and Aeropostale profited from the sales of shirts bearing unauthorized copies of that design, Defendants' Motion for Summary Judgment should be denied in its entirety.

Respectfully submitted,

DONIGER / BURROUGHS

DATED: May 28, 2010          By:     /S/ Scott A. Burroughs
                                     Scott A. Burroughs, Esq.
                                     Attorneys for Plaintiff

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

## <u>DECLARATION OF SCOTT A. BURROUGHS, ESQ.</u>

I, Scott A. Burroughs, Esq., am a shareholder in DONIGER / BURROUGHS APC, and am competent to testify as set forth below:

1.      I am counsel for L.A. Printex Industries, Inc. ("L.A. Printex") in this case. In 2009, our firm filed this lawsuit on behalf of L.A. Printex against, *inter alia,* Aeropostale and Ms. Bubbles ("Defendants") 2009, asserting various claims of copyright infringement.

2.      During the course of this litigation, however, L.A. Printex realized that there may be a technical error in its single works registration in that two of the designs in Small Flower Group A appeared to have been published prior to the date of VAu 557-306's registration.  In attempting to comply with the technical requirements under an unpublished group of works on a single registration, as specified under the Code of Federal Registrations, our firm filed a Form-CA application to address that issue.

3.      Upon realizing that the specific publication requirements as to a collection of works under 37 C.F.R. § 202.3(b)(4)(i)(B) prohibited the filing of both published and unpublished works on a single registration, I caused to be withdrawn the first Form-CA application from the Copyright Office.

4.      I have contacted the Copyright Office to inquire about copyright registrations made on an unpublished basis that contain both published and unpublished designs. I was told that the designs that were not published will continue to enjoy protection, while those that were published will not.  The design at issue in this case – C30020 – was not published at the time of the registration, so would continue to enjoy coverage.

5.      Our firm then filed a second Form-CA application on behalf of L.A. Printex, to remove those two designs that had been previously published – and leaving the remaining three unpublished works protected under that copyright.  I have attached hereto as Exhibit 4 a true and correct copy of

- 19 -

second Form-CA.  Consequently, any previous errors in technical compliance with the copyright registration regulations *have since been corrected.*

6. Our office has also filed an individual registration for C30020, and deposited a copy of C30020 without the base screen. I have attached a true and correct copy of that registration and deposit as Exhibit 5.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 28, 2010, in Culver City, California.

By:   <u>/S/ Scott A. Burroughs</u>
Scott A. Burroughs, Esq.

## DECLARATION OF JAE NAH

I, Jae Nah, declare that I have personal knowledge of the following, except where stated on information and belief, and confirm that if called as a witness I could and would competently testify as follows:

1. I am the president of L.A. Printex Industries, Inc. ("L.A. Printex"), Plaintiff in this action.

2. L.A. Printex is a Los Angeles-based textile company, dealing primarily in printed fabrics. The printed fabric bears L.A. Printex's unique and proprietary textile designs. L.A. Printex's sales are driven by its heavy investment in trendy, unique and aesthetically-pleasant graphic textile designs which are either purchased or created by our internal design team. Much of L.A. Printex's business is generated from marketing our original designs and then securing printing orders for those designs. As such, being the exclusive source of our designs is critical to our business (since it requires interested parties to print their fabric bearing L.A. Printex's designs through our facility).

3. In 2002, a member of L.A. Printex's design team, Moon Choi, created an original work of art styled "C30020." Attached hereto as Exhibit 1 is a true and correct copy of that design.

4. In 2002, L.A. Printex registered a collection of designs that included C30020 with the Copyright Office, and on July 17, 2002 was issued Registration No. VAu 557-306 for that work. Also attached hereto as Exhibit 1 is a true and correct copy of that registration certificate (copies of the other floral designs submitted along with C30020 have been omitted). In 2002, L.A. Printex was in its infancy, and C30020 was registered by a part-time employer for L.A. Printex and a non-native English speaker. Consequently, at this time, L.A. Printex was a novice at the technicalities of the copyright registration process.

5. L.A. Printex owns all rights in the design, and published said design by sampling and making sales of fabric bearing said design prior to the acts alleged herein.  This sampling is done by showing our designs to our customers and often giving either a paper CAD or a fabric swatch with designs our customers are interested in to them.  If our customers are interested in a larger amount of fabric bearing a design, they can then place an order for sample yardage or a full production run of that fabric.

6. L.A. Printex also produces many of its proprietary designs in various color combinations, for the purpose of providing its customers a variety of choices of the same pattern.  For C30020, L.A. Printex printed the design in at least five different combinations.  Attached hereto as Exhibit 2 is a true and correct copy of a fabric swatch containing different color versions of C30020, which was provided to one of L.A. Printex's customers, Laguna Fabrics.

7. While our company does not keep records of every customer it gives CAD and fabric swatches to – it is simply not practical to do so –we have very accurate records of all sales of sample yardage and production runs. Attached hereto as Exhibit 3 is a true and correct copy of that sales history, which shows (1) that our first sales of the design were in October of 2002, and (2) that my company produced and sold thousands of yards of fabric bearing the Subject Designs to numerous customers from 2002 - 2008.

8. Most of our clients, and all of those listed in the previous paragraph, act as "fabric converters," meaning that they are companies that work with garment manufactures to provide the printed fabric that those manufacturers need to make garments.  Fabric converters will show manufacturers different textile designs and, once they obtain an order for a design, will come to a printing mill like LA Printex to fill that order.  Once we print the

fabric, the converter sends the fabric to the manufacturer which then manufactures garments and sells them to retail stores for sale to the public.

9.  L.A. Printex has not granted any other party a license to print or otherwise reproduce the Subject Design.  Plaintiff makes clear to its customers that its designs are copyrighted and proprietary.

10. Beginning in 2008, L.A. Printex found that garments bearing the "Aeropostale" trademark, and unauthorized reproductions of C30020 were being sold by Aeropostale, Inc. and Ms. Bubbles. I have attached as Exhibit 6 a true and correct copy of an "Aeropostale" garment bearing a pattern that infringes C30020. The only differences between our C30020 design, and the design on the "Aeropostale" garment is that the design on the "Aeropostale" garment is printed using cruder, lower-quality techniques and machinery.

11. I have attached as Exhibit 7 a side-by-side comparison of a true and correct copy of a sample fabric swatch of C30020 in the white/berry color, with a true and correct copy of an excerpt of the Aeropostale garment.  On these garments, I have noted the arrangement of the individual flowers contained in C30020, which also appear in the same arrangement on the Aeropostale garment.

12. I have reviewed the pattern on the garments purchased from defendants and our production records and verified that LA Printex did not print these

///

- 23 -

garments.  Furthermore, we did not authorize any other party to print these garments through any other mill.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on May 28, 2010, at Vernon, California.


By:  _____
     JAE NAH
     Declarant