CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

1

1               **UNITED STATES DISTRICT COURT**

2               **CENTRAL DISTRICT OF CALIFORNIA**

3       **HONORABLE ALEX KOZINSKI, JUDGE PRESIDING**

4            **CERTIFIED TRANSCRIPT**

5              - - - - - - -

6  L.A. PRINTEX INDUSTRIES, INC.,  )
                           )

7         PLAINTIFF(S),     )
                           )

8     VS.                ) NO. CV 09-2449-AK (FMOX)
                           )    ITEM NO. 1

9  WILLIAM CARTER CO., ET AL,    )
                           )

10        DEFENDANT(S).     )
   _____)

11

12

13

14        REPORTER'S TRANSCRIPT OF PROCEEDINGS

15            HEARING ON MOTIONS

16           PASADENA, CALIFORNIA

17         FRIDAY, JANUARY 18, 2013

18

19

*MARIA BEESLEY-DELLANEVE, RPR, CSR 9132*
20  *OFFICIAL FEDERAL REPORTER*
*RONALD REAGAN FEDERAL BUILDING, ROOM 1-053*
21  *411 WEST 4TH STREET*
*SANTA ANA, CALIFORNIA 92701*
22  *(714) 564-9259*

23

24

25

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

1   **APPEARANCES OF COUNSEL:**

2   FOR THE PLAINTIFF(S): DONIGER BURROUGHS
                         BY:  STEPHEN DONIGER, ESQ.
3                        AND  SCOTT A. BURROUGHS, ESQ.
                         300 CORPORATE POINTE
4                        SUITE 355
                         CULVER CITY, CALIFORNIA 90230
5                        (310)590-1820

6
    FOR THE DEFT. MS. BUBBLES: LEWIS BRISBOIS BISGAARD
7                        BY:  DEBORAH F. SIRIAS, AAL
                         AND  ROBERT COLLINS, ESQ.
8                        221 NO. FIGUEROA STREET
                         SUITE 1200
9                        LOS ANGELES, CALIFORNIA 90012
                         9213)250-1800
10

11  FOR THE DEFT. AEROPOSTALE: KATTEN MUCHIN ROSENBAUM
                         BY:  CORY BASKIN, ESQ.
12                       AND  KRISTIN HOLLAND, AAL
                         2029 CENTURY PARK EAST
13                       SUITE 2600
                         LOS ANGELES, CALIFORNIA 90067-3012
14                       (310)788-4647

15

16

17

18

19

20

21

22

23

24

25

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

1    **PASADENA, CALIFORNIA, FRIDAY, JANUARY 18, 2013**

2    **ITEM NO. 1**

3    (2:57)

02:57  4    THE CLERK:  MATTER OF CALENDAR ITEM NUMBER ONE, CASE

02:57  5  NUMBER CV 09-2449-AK.  L.A. PRINTEX INDUSTRIES INC. VERSUS WILLIAM

02:57  6  CARTER CO, ET AL.

02:57  7    COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE RECORD.

02:57  8    MR. DONIGER:  GOOD MORNING, YOUR HONOR.  STEPHEN DONIGER

02:57  9  AND SCOTT BURROUGHS FOR THE PLAINTIFF.

02:57 10    MS. SIRIAS:  GOOD AFTERNOON, YOUR HONOR.  DEBORAH SIRIAS

02:57 11  FOR MS. BUBBLES.

02:57 12    MR. COLLINS:  GOOD AFTERNOON, YOUR HONOR.  ROBERT

02:57 13  COLLINS FOR MS. BUBBLES.

02:57 14    MR. BASKIN:  GOOD AFTERNOON, YOUR HONOR.  CORY BASKIN

02:57 15  FOR AEROPOSTALE.

02:57 16    MS. HOLLAND:  GOOD AFTERNOON, YOUR HONOR.  KRISTIN

02:57 17  HOLLAND FOR AEROPOSTALE.

02:58 18    THE COURT:  OKAY.  HERE WE ARE ON THE EVE TRIAL.  I

02:58 19  UNDERSTAND THERE IS A NEW MOTION.

02:58 20    MR. DONIGER:  THAT'S CORRECT, YOUR HONOR.  YESTERDAY WE

02:58 21  GOT A SUPPLEMENTAL EXPERT REPORT THAT, IN OUR VIEW, FUNDAMENTALLY

02:58 22  CHANGES THE EXPERT'S OPINION.  WE WERE LEFT WITH NO OPTION.  WE

02:58 23  BELIEVE THAT TO FILE AN EX PARTE APPLICATION TODAY TO STRIKE THAT

02:58 24  REPORT IS UNTIMELY, ET CETERA.  WE CAN CERTAINLY ADDRESS THAT

02:58 25  FURTHER IF YOU WISH, BUT THAT'S THE NATURE OF THAT NEW FILING.

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

02:58 1          THE COURT:  SO THIS IS A SUPPLEMENTAL EXPERT REPORT THAT

02:58 2    THE OTHER SIDE HAS PROVIDED YOU AND YOU ARE MOVING TO STRIKE?

02:58 3          MR. DONIGER:  CORRECT.

02:58 4          THE COURT:  OKAY.  WHICH EXPERT?

02:58 5          MR. DONIGER:  IT'S THEIR FINANCIAL EXPERT, DAVID NOLTE

02:58 6    OF THE COMPANY FULCRUM INQUIRY.  HIS ORIGINAL REPORT STATED THAT

02:59 7    AEROPOSTALE'S PROFITS WERE APPROXIMATELY $426,000.  ALL OF A

02:59 8    SUDDEN, ON THE EVE OF TRIAL, HE REVISED THAT TO SAY THAT THEIR

02:59 9    PROFITS WERE $190,000, ADDING AN ENTIRELY NEW CATEGORY AND

02:59 10   APPARENTLY CHANGING HIS METHODOLOGY.

02:59 11         THE ISSUE IS THAT WE HAD MADE THE DETERMINATION WHEN WE

02:59 12   GOT HIS INITIAL REPORT THAT THERE WAS NO NEED TO GET A REBUTTAL

02:59 13   EXPERT BECAUSE WE DIDN'T HAVE ISSUE WITH HIS REPORT.  THIS NEW

02:59 14   REPORT IS EXTRAORDINARILY TROUBLING AND WE DON'T HAVE A REBUTTAL

02:59 15   EXPERT.  IT'S TOO LATE FOR US.  AS THE COURT KNOWS QUITE WELL,

02:59 16   IT'S FAR TOO LATE TO BE CHANGING EXPERT OPINIONS IN THAT REGARD.

02:59 17   IT NEEDS TO BE LIMITED TO THE ORIGINAL REPORT.

02:59 18         THE COURT:  WHY DON'T WE TAKE THAT UP LAST.  THERE IS

02:59 19   ALSO A COUPLE OTHER THINGS.  THERE'S THE TWO WITNESS SUBPOENAS.

02:59 20         MR. DONIGER:  YES, YOUR HONOR.  THE EX PARTE WE FILED

02:59 21   HAS TWO PARTS.  PART NUMBER ONE REGARDS THE TWO WITNESS SUBPOENAS.

02:59 22   AND I SUPPOSE MORE GENERALLY HAD THAT BEEN MADE KNOWN TO US IN

03:00 23   TIME TO FILE AN IN LIMINE MOTION, WE CERTAINLY WOULD HAVE FILED AN

03:00 24   IN LIMINE TO PRECLUDE THAT ENTIRE LINE OF QUESTIONING.

03:00 25         THAT'S PART ONE.  PART TWO IS, AS THE COURT KNOWS, WE

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:00  1   HAVE NOW HAD THE OPPORTUNITY TO DEPOSE MS. SWORD.  AND BEGINNING

03:00  2   FROM PAGE 10 OF OUR EX PARTE TO THE END, IT ADDRESSES WHY

03:00  3   MS. SWORD'S TESTIMONY IS EXTRAORDINARILY PROBLEMATIC EVEN IN LIGHT

03:00  4   OF THIS COURT'S FINDINGS THAT SHE CAN STEP IN FOR MS. KLIMKIEWICZ.

03:00  5   AS YOU KNOW, THERE ARE STILL LIMITS TO THE TESTIMONY THAT A

03:00  6   WITNESS CAN GIVE BASED ON THEIR PERCIPIENT KNOWLEDGE AND THEIR

03:00  7   QUALIFICATIONS TO GIVE EXPERT TESTIMONY.

03:00  8         WE, AGAIN, DIDN'T HAVE THE OPPORTUNITY TO BRIEF THAT IN

03:00  9   LIMINE MOTION BECAUSE IT WAS LATE THAT MS. SWORD WAS DISCLOSED TO

03:00 10   US AND THE FACT THAT WE JUST WERE ABLE TO TAKE HER DEPOSITION.

03:00 11         THE COURT:  ANYTHING ELSE?

03:00 12         MR. DONIGER:  YOUR HONOR, ONE OTHER THING THAT'S NOT

03:01 13   MENTIONED IN THE BRIEFING -- AND I APOLOGIZE THIS WAS OMITTED --

03:01 14   BUT JUDGE WALTER'S SCHEDULING ORDER FROM THIS CASE DATED JULY 27,

03:01 15   2009.  AND FOR THE COURT'S RECORD, DOCKET NUMBER 33 ON PAGE 4

03:01 16   UNDER "EXPERT DISCOVERY" IT SPECIFICALLY STATES THAT ANY

03:01 17   NON-RETAINED EXPERT DESIGNATED BY A PARTY AS AN AFFIRMATIVE OR

03:01 18   REBUTTAL EXPERT SHALL ALSO PREPARE AND PROVIDE AN EXPERT REPORT IN

03:01 19   THE FORM DESCRIBED BY FRCP 26(A)(2)(B).  THE FACT THAT WE NEVER

03:01 20   GOT AN EXPERT REPORT FROM MS. KLIMKIEWICZ LET ALONE MS. SWORD

03:01 21   SHOULD BE ENOUGH TO EXCLUDE ANY EXPERT OPINION BY THEM.

03:01 22         AND WE CAN TAKE THIS UP AT THE END WHEN WE DISCUSS THE

03:01 23   OTHER MATTER, BUT THE VERY NEXT SENTENCE SAYS, "EXPERT WITNESSES

03:01 24   WILL BE BOUND BY THE OPINIONS EXPRESSED IN THEIR REPORTS PREPARED

03:02 25   IN CONFORMANCE WITH FRCP 26(A)(2)(B) AND WILL NOT BE PERMITTED TO

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:02 1   OFFER NEW MATTERS AT TRIAL."

03:02 2          I THINK THAT GIVING US NEW TESTIMONY LITERALLY TWO COURT

03:02 3   DAYS BEFORE TRIAL WOULD QUALIFY FOR EXCLUSION EVEN BEYOND THE

03:02 4   MATTERS RAISED IN THE EX PARTE THAT WAS FILED EARLIER TODAY.  AND

03:02 5   IT ALSO INDICATES THAT THE CUTOFF DATE IS EIGHT WEEKS BEFORE TRIAL

03:02 6   FOR ANY SUPPLEMENTAL OR DISCOVERY CUTOFF.

03:02 7          MR. BURROUGHS:  JUST TO CLARIFY THAT, YOUR HONOR, THE

03:02 8   SCHEDULING ORDER ACTUALLY SAYS THAT THE EXPERT REPORTS MUST BE

03:02 9   PROVIDED EIGHT WEEKS BEFORE THE CLOSE OF DISCOVERY, WHICH WOULD

03:02 10  HAVE BEEN YEARS AGO.  THAT WAS THE SCHEDULING ORDER THAT WAS IN

03:02 11  PLACE WHEN DISCOVERY CLOSED AND AT ALL TIMES UP UNTIL WE WERE

03:02 12  TRANSFERRED TO YOUR HONOR.

03:02 13         THE COURT:  AT THAT TIME IT WAS MS. KLIMKIEWICZ WHO WAS

03:02 14  THE WITNESS; RIGHT?

03:03 15         MR. DONIGER:  THE INITIAL REPORTS THAT WERE FILED

03:03 16  INDICATED THAT MS. KLIMKIEWICZ WOULD BE PROVIDING TESTIMONY AS A

03:03 17  PERCIPIENT BECAUSE SHE WAS THE BUYER.  THERE WAS ALSO SOME

03:03 18  NOTATION, AND I DON'T KNOW IF IT WAS ON THE ORIGINAL DISCLOSURES

03:03 19  OR SOME LATER ONE THAT SHE WOULD ALSO OFFER EXPERT TESTIMONY

03:03 20  REGARDING AEROPOSTALE'S MARKETING, BRANDING, CUSTOMER BASE.  THERE

03:03 21  WERE A FEW OTHER THINGS.  THERE WAS NOTHING IN THERE THAT

03:03 22  POSITIONED APPORTIONMENT.

03:03 23         DEFENDANTS NOW TRY TO PIGEONHOLE THAT INTO HER BEING AN

03:03 24  APPORTIONMENT EXPERT WHEN WE WERE NEVER DULY ON NOTICE OF THAT.

03:03 25  PLUS, OF COURSE, AS I INDICATED BEFORE, THE FACT THAT THERE WAS

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:03  1    NEVER A WRITTEN REPORT PROVIDED PURSUANT TO RULE 26(A)(2) AS

03:03  2    REQUIRED IN ANY KIND OF A TIMELY MANNER.

03:03  3          THE FIRST TIME WE GOT ANYTHING FROM MS. KLIMKIEWICZ

03:03  4    EXPRESSING ANY OPINION THAT COULD ARGUABLY BE REGARDING

03:03  5    APPORTIONMENT WAS WHEN SHE SUBMITTED A DECLARATION IN CONNECTION

03:03  6    WITH THE SUMMARY JUDGMENT MOTIONS THAT WERE FILED.  ACTUALLY, I

03:04  7    BELIEVE IT WAS THE REPLY OR THE OPPOSITION.  IT WAS LITERALLY

03:04  8    MONTHS AFTER THE DISCOVERY CUTOFF AND EVEN LONGER AFTER THE

03:04  9    DEADLINE FOR PROPERLY DESIGNATING EXPERTS.

03:04 10          THAT'S THE PROBLEM.  MS. KLIMKIEWICZ WAS NOT TIMELY OR

03:04 11    PROPERLY DESIGNATED, BUT MS. SWORD, NOW WE HAVE TAKEN HER

03:04 12    DEPOSITION, NOT ONLY HAVE WE NEVER GOTTEN A REPORT WHICH WAS NOT A

03:04 13    TIMELY DESIGNATION, ET CETERA, SHE COULDN'T POSSIBLY PASS THE

03:04 14    DAUBERT STANDARD FOR PROVIDING EXPERT TESTIMONY BECAUSE SHE WAS IN

03:04 15    COLLEGE --

03:04 16          THE COURT:  I ASKED A SIMPLE QUESTION.  YOU HAVE

03:04 17    ANSWERED IT 10 MINUTES AGO.  I DON'T WANT TO CUT YOU OFF, BUT JUST

03:04 18    LISTEN TO THE QUESTION AND ANSWER THE QUESTION.

03:04 19          MR. DONIGER:  UNDERSTOOD.

03:04 20          THE COURT:  OKAY.  ARE THERE ANY OTHER MATTERS WE NEED

03:04 21    TO DEAL WITH THAT ANYBODY HAS GOT?

03:04 22          MR. BURROUGHS:  ONE THING THAT'S NOT IN THE EX PARTE

03:04 23    BECAUSE WE DIDN'T HAVE NOTICE OF IT, IS DEFENSE HAVE SERVED AN

03:05 24    ADDITIONAL SUBPOENA ON MS. REGINA YEH WHO WAS A PREVIOUS ASSOCIATE

03:05 25    OF OUR FIRM.  WE DIDN'T RECEIVE NOTICE OF THAT SUBPOENA UNTIL IT

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:05  1   WAS SENT BY E-MAIL TWO DAYS AGO.  WE STILL HAVEN'T RECEIVED A

03:05  2   PROPER SERVICE COPY OF IT.

03:05  3         SO TO THE EXTENT THAT THE ISSUE OF THIS NEW INVALIDITY

03:05  4   DEFENSE IS DISCUSSED TODAY, WE WOULD ALSO ASK TO INCLUDE THE

03:05  5   SUBPOENA THAT'S BEEN APPARENTLY SERVED ON MS. YEH, BUT WHICH WE

03:05  6   HAVEN'T RECEIVED A SERVICE COPY, ONLY AN E-MAIL COPY.

03:05  7         THE COURT:  OKAY.  ALL THE MATTERS THAT ARE BEING RAISED

03:05  8   ARE BEING RAISED BY PRINTEX.

03:05  9         SO I NEED TO GET A RESPONSE FROM THE OTHER SIDE.  WHO

03:05 10   WOULD LIKE TO RESPOND?

03:05 11         MR. COLLINS:  IS THERE IN ANY ISSUE YOU WOULD LIKE TO

03:05 12   HEAR ABOUT FIRST, YOUR HONOR?

03:05 13         THE COURT:  NO, TAKE ONE.

03:06 14         MR. COLLINS:  YOUR HONOR, I'M GOING TO SPEAK TO THE

03:06 15   TRIAL SUBPOENAS THAT WERE ISSUED TO MR. BURROUGHS AS WELL AS TO

03:06 16   BRUCE ISAACS OF WYMAN ISAACS LLP.

03:06 17         THE COURT:  AND TO THE ASSOCIATE?

03:06 18         MR. COLLINS:  ALSO TO MS. YEH.  I ACTUALLY CAN START

03:06 19   WITH MS. YEH.  MS. YEH'S SUBPOENA IS FOR HER TO APPEAR AND PROVIDE

03:06 20   TESTIMONY AT TRIAL.  WE DIDN'T REQUEST THAT SHE PRODUCE DOCUMENTS.

03:06 21   PER 45(B)(1), ADVANCED NOTICE OF SUBPOENAS IS REQUIRED WHEN

03:06 22   DOCUMENTS ARE BEING PRODUCED, BUT NOT WHEN TESTIMONY IS ONLY TO BE

03:06 23   HAD.

03:06 24         WE DID PROVIDE THE SUBPOENA TO COUNSEL FOR L.A. PRINTEX

03:06 25   WHEN IT WAS REQUESTED.  ALSO, ON OR ABOUT THE DAY THAT IT WAS

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:06 1  SERVED, WE PROVIDED THEM WITH AN AMENDED WITNESS LIST FOR MS. YEH

03:06 2  TO APPEAR.  FURTHER TO THAT, WHEN MS. YEH WAS SERVED ON FRIDAY

03:06 3  JANUARY 11, I SPOKE WITH HER AND GAVE AN IDEA WHY WE WANTED HER TO

03:07 4  TESTIFY AT TRIAL.  SHE INDICATED TO ME AT THAT TIME THAT SHE

03:07 5  INTENDED TO REACH OUT TO L.A. PRINTEX'S COUNSEL REGARDING THE

03:07 6  SUBPOENA.

03:07 7          AND PRIOR TO TODAY'S HEARING, I SPOKE AGAIN WITH MS. YEH

03:07 8  AND LEARNED THAT SHE DID, IN FACT, SPEAK WITH COUNSEL FOR L.A.

03:07 9  PRINTEX THE DAY SHE RECEIVED THE SUBPOENA.  SO THE REPRESENTATION

03:07 10  THAT THEY DID NOT RECEIVE NOTICE PRIOR TO TWO DAYS AGO I THINK IS

03:07 11  INACCURATE.  I THINK THEY GOT IT THE DAY THAT MS. YEH GOT THE

03:07 12  SUBPOENA.

03:07 13          THE COURT:  WHAT DIFFERENCE DOES THAT MAKE?

03:07 14          MR. COLLINS:  I THINK THE POINT THEY RAISED EARLIER IS

03:07 15  THEY DIDN'T HAVE NOTICE OF HER SUBPOENA, BUT THEY WERE AWARE THAT

03:07 16  SHE WAS BEING CALLED TO TESTIFY AT TRIAL.

03:07 17          THE COURT:  AND SHE WAS ON YOUR ORIGINAL WITNESS?

03:07 18          MR. COLLINS:  NO, SHE WAS NOT, YOUR HONOR.  WE PRESENTED

03:07 19  AN AMENDED WITNESS LIST TO COUNSEL.  I CAN'T RECALL THE PRECISE

03:07 20  DATE, BUT IT WAS TOWARDS THE END OF LAST WEEK.

03:07 21          THE COURT:  ISN'T THAT A LITTLE LATE?  ISN'T THAT OUT OF

03:08 22  TIME?

03:08 23          MR. COLLINS:  IT'S LATE, YOUR HONOR, BUT I THINK THAT

03:08 24  THEY'RE QUITE AWARE OF THE INFORMATION THAT MS. YEH WILL PROVIDE

03:08 25  TESTIMONY ABOUT.  AND FRANKLY --

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:08  1        THE COURT:  LET ME JUST ASK YOU A SIMPLE QUESTION.  YOU

03:08  2   HAD TIME TO PROVIDE A WITNESS LIST; RIGHT?  THAT TIME HAS EXPIRED.

03:08  3   YOU HAVE NOT FILED A MOTION SEEKING LEAVE TO AMEND.  SO YOU DON'T

03:08  4   YOU HAVE MY PERMISSION TO FILE AN AMENDED WITNESS LIST.

03:08  5        WHERE DO YOU GET OFF FILING AN AMENDED WITNESS LIST?

03:08  6   WHERE DO YOU GET THE AUTHORITY TO DO THAT?

03:08  7        MR. COLLINS:  WELL, WE UNDERTOOK WITH COUNSEL TO TRY TO

03:08  8   REACH AN AGREEMENT AS TO THE WITNESS LIST.  THEY WOULDN'T AGREE.

03:08  9   WE THEN INDICATED THEY COULD OBJECT TO THE WITNESS LIST.  BUT YOU

03:08 10   ARE CORRECT, YOUR HONOR, WE DID NOT SEEK LEAVE TO FILE IT BEFORE

03:08 11   WE DID SO.

03:08 12        BUT I THINK YOUR HONOR, THE --

03:08 13        THE COURT:  IS THERE ANY REASON THAT THIS OUGHT NOT BE

03:08 14   STRICKEN AS AN UNAUTHORIZED FILING?

03:08 15        MR. COLLINS:  I THINK, YOUR HONOR, THAT EXCLUSION OF A

03:08 16   WITNESS AT TRIAL IS BASED ON HARM TO THE PARTY.  AND FRANKLY,

03:09 17   MS. YEH WAS NOTICED IN AN ABUNDANCE OF CAUTION IN THE EVENT THAT

03:09 18   MR. BURROUGHS --

03:09 19        THE COURT:  YOU CAN MAKE THAT KIND OF CASE IF YOU WISH

03:09 20   TO FILE AN AMENDED PLEADING AND GIVE THE OTHER SIDE A CHANCE TO

03:09 21   RESPOND AND THEN I CAN RULE ON IT.  BUT I HAVE SEEN NOTHING FROM

03:09 22   YOU ASKING FOR AUTHORIZATION TO FILE AN AMENDED WITNESS LIST.  I'M

03:09 23   JUST TAKEN ABACK THAT YOU WOULD DO THAT WITHOUT GETTING AUTHORITY

03:09 24   FROM THE COURT TO DO THAT.

03:09 25        MR. COLLINS:  UNDERSTOOD, YOUR HONOR.  WE CERTAINLY

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:09  1    ANTICIPATED AN OBJECTION FROM THEM THAT THEY WOULD HAVE A FULL

03:09  2    RIGHT TO OBJECT TO ANY NEW WITNESSES, AND WE DID TRY TO MEET AND

03:09  3    CONFER WITH THEM TO RESOLVE IT AND WE WERE NOT ABLE TO RESOLVE IT.

03:09  4    NONETHELESS, WE WANTED THE COURT TO BE APPRISED OF WHO WE INTENDED

03:09  5    TO CALL AT TRIAL.

03:09  6         IF THE COURT WOULD LIKE, WE CAN CERTAINLY FILE A MOTION

03:09  7    FOR LEAVE AND SET FORTH THE GROUNDS UNDER WHICH OUR NEWLY

03:10  8    IDENTIFIED WITNESSES OUGHT TO BE PERMITTED TO TESTIFY.

03:10  9         THE COURT:  I DON'T WANT ANYTHING.  I HAVE NO DESIRES IN

03:10 10    THIS MATTER.  I JUST DON'T THINK YOU CAN FILE SOMETHING OUT OF

03:10 11    TIME WITHOUT LEAVE OF THE COURT.  YOU HAVE NOT SOUGHT LEAVE, SO

03:10 12    THAT IS STRICKEN.  IF YOU WANT TO FILE SOMETHING ELSE, YOU CAN

03:10 13    FILE SOMETHING ELSE, BUT TIME IS EXCEEDINGLY SHORT.

03:10 14         SO WHAT ELSE HAVE YOU GOT?

03:10 15         MR. COLLINS:  WELL, I THINK I'M HERE TO SPEAK ABOUT THE

03:10 16    PROPRIETY OF THE TRIAL SUBPOENAS.

03:10 17         THE COURT:  YOU DON'T HAVE THE TRIAL SUBPOENAS.  THESE

03:10 18    WITNESSES WERE NOT ON THE ORIGINAL WITNESS LIST.  YOU DON'T HAVE

03:10 19    AN AMENDED WITNESS LIST.  YOU CAN'T SUBPOENA WITNESSES FOR TRIAL

03:10 20    WHEN THEY'RE NOT ON THE WITNESS LIST.  WHAT IS THE POINT OF

03:10 21    BRINGING THEM HERE IF THEY'RE NOT GOING TO BE ALLOWED TO TESTIFY?

03:10 22    YOU HAVE NO BASIS FOR ISSUING SUBPOENAS.

03:11 23         MS. HOLLAND:  THEN WE WILL SEEK LEAVE TO FILE AN AMENDED

03:11 24    WITNESS LIST.

03:11 25         THE COURT:  YOU CAN TRY.  MR. BURROUGHS IS GOING TO BE

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:11  1   HERE ANYWAY; RIGHT?

03:11  2          MS. HOLLAND:  THAT'S CORRECT.

03:11  3          THE COURT:  SO THE SUBPOENA TO HIM IS ESSENTIALLY

03:11  4   IRRELEVANT.  THE OTHER TWO WITNESSES, THOUGH, I'M STRIKING THE

03:11  5   SUBPOENAS AS TO THEM.  THERE IS NO SUBPOENA.  UNTIL YOU GET AN

03:11  6   AMENDED WITNESS LIST AND YOU GET MY AUTHORIZATION TO HAVE THEM

03:11  7   TESTIFY, YOU CAN'T ISSUE A SUBPOENA.

03:11  8          MR. DONIGER:  AND, YOUR HONOR, MR. BURROUGHS WAS NOT ON

03:11  9   THE ORIGINAL WITNESS LIST EITHER.

03:11 10          THE COURT:  I UNDERSTAND THAT, BUT IT DOESN'T MATTER.

03:11 11   HE IS GOING TO BE IN COURT ANYWAY.  THE OTHER WITNESSES HAVE TO

03:11 12   DISCUSS THEIR SCHEDULES TO BE HERE.  I DON'T SEE ANY POINT IN

03:11 13   QUASHING THE SUBPOENA OF MR. BURROUGHS AS IT'S ESSENTIALLY

03:11 14   IRRELEVANT.  BUT HE'S NOT A WITNESS.  WE CAN TAKE UP THE QUESTION

03:12 15   OF WHETHER HE TESTIFIES.

03:12 16          MR. BURROUGHS, YOU ARE PLANNING TO BE IN COURT

03:12 17   REGARDLESS?

03:12 18          MR. BURROUGHS:  YES, YOUR HONOR.  I WILL BE THERE.  AND

03:12 19   THERE IS ONE OTHER NUANCE WITH THE THREE SUBPOENAS.  ONE OF THE

03:12 20   THREE SUBPOENAS ON MR. ISAACS CALLED FOR DOCUMENTS.  AGAIN, NONE

03:12 21   OF THOSE DOCUMENTS ARE ON THE EXHIBIT LIST.  THEY WERE NEVER

03:12 22   DISCLOSED IN DISCOVERY.

03:12 23          THE COURT:  THE SUBPOENAS ARE STRICKEN.

03:12 24          MR. BURROUGHS:  THANK YOU, YOUR HONOR.

03:12 25          THE COURT:  OKAY.  WHAT ELSE WE GOT?

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:12 1        MR. COLLINS:  I DON'T THINK I HAVE ANYTHING MORE WITH

03:12 2  RESPECT WITH THE TWO TRIAL SUBPOENAS, YOUR HONOR.

03:12 3        THE COURT:  ANY OTHER MATTERS?

03:12 4        MR. DONIGER:  YES, YOUR HONOR.  THE SECOND PART OF THE

03:12 5  EX PARTE CONCERNED THE TESTIMONY --

03:12 6        THE COURT:  OF MS. SWORD, YES.

03:12 7        MR. BASKIN:  THE FIRST POINT I'D LIKE TO MAKE IS WE WERE

03:12 8  UNDER THE UNDERSTANDING THAT THIS ISSUE HAD BEEN DECIDED; HAD BEEN

03:12 9  DECIDED, UNFORTUNATELY, FOR YOUR HONOR MULTIPLE TIMES BY YOUR

03:12 10  HONOR.

03:12 11        THE COURT:  WHICH ISSUE?

03:12 12        MR. BASKIN:  THE ISSUE OF MS. SWORD'S TESTIMONY.

03:13 13        THE COURT:  I SAID SHE CAN TESTIFY.

03:13 14        MR. BASKIN:  CORRECT.

03:13 15        THE COURT:  I DON'T THINK THERE IS ANY DISPUTE ON THAT.

03:13 16        MR. BASKIN:  THE QUESTION IS, IN THE SCOPE OF SAYING

03:13 17  THAT SHE CAN TESTIFY, THE ISSUES THAT WERE BRIEFED IN YOUR COURT

03:13 18  WHEN YOUR HONOR MADE THAT RULING WAS THE SCOPE OF HER TESTIMONY

03:13 19  AND THAT THE CATEGORIES THAT SHE WAS DESIGNATED TO TESTIFY FOR.

03:13 20        AND THE CATEGORIES THAT WERE ON THE WITNESS LIST AT THE

03:13 21  TIME THAT YOUR HONOR RULED UPON WERE THE EXACT SAME CATEGORIES

03:13 22  THAT THEY JUST DEPOSED HER ON, ON JANUARY 14, THAT YOUR HONOR GAVE

03:13 23  THEM PERMISSION TO DEPOSE HER, AT HER GREAT INCONVENIENCE, AND

03:13 24  THEY DIDN'T SEE FIT TO FLY OUT THERE TO DO IT, IT WAS SO IMPORTANT

03:13 25  FOR THAT.

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:13 1        BUT NOTHING IN HER TESTIMONY -- AND WE QUOTED AT LENGTH

03:13 2  IN THE OPPOSITION TO THE EX PARTE -- NOTHING IN HER TESTIMONY IN

03:13 3  ANY WAY CALLED INTO QUESTION HER EXPERT QUALIFICATIONS ON THE

03:13 4  TOPICS THAT WERE IDENTIFIED ON THE WITNESS LIST.  AND SO --

03:13 5        THE COURT:  SO WHAT?

03:13 6        MR. BASKIN:  SO IT'S OUR OPINION THAT SHE IS QUALIFIED

03:14 7  TO TESTIFY.

03:14 8        THE COURT:  SHE MAY WELL BE QUALIFIED TO TESTIFY.  BUT

03:14 9  YOU HAVE A PROBLEM.

03:14 10        MR. BASKIN:  WHAT WOULD THAT BE, YOUR HONOR?

03:14 11        THE COURT:  SHE HASN'T FILED AN EXPERT REPORT AS JUDGE

03:14 12  WALTER REQUIRED.  SHE CAN BE THE WORLD'S EXPERT, SHE CAN BE

03:14 13  PERFECTLY QUALIFIED, SHE CAN BE AUTHORIZED TO COME IN AND SPEAK,

03:14 14  BUT IF SHE HASN'T GOT AN EXPERT REPORT, SHE CAN'T BE AN EXPERT

03:14 15  UNLESS YOU GET LEAVE.  THAT'S HOW WE DO THINGS IN THE CENTRAL

03:14 16  DISTRICT.

03:14 17        MR. BASKIN:  I UNDERSTAND, YOUR HONOR.

03:14 18        WITH RESPECT TO THE JUDGE WALTER QUESTION, QUITE

03:14 19  FRANKLY, THAT ISSUE WASN'T -- WE'RE LOOKING AT IT NOW.  I DON'T

03:14 20  HAVE A COPY OF THE ORDER IN FRONT OF ME.  IT WASN'T BRIEFED BY THE

03:14 21  OTHER SIDE.  I'LL TAKE THEM AT THEIR WORD THAT IT'S IN THERE.

03:14 22  IT'S CURIOUS THAT THAT WASN'T BRIEFED TO YOUR HONOR BEFORE WE --

03:14 23  WE CERTAINLY WEREN'T HIDING THE BALL ON THAT WITH RESPECT TO HER

03:14 24  DISCLOSURE, AND IT CERTAINLY WASN'T RAISED AT THE TIME OF HER

03:14 25  DISCLOSURE BACK WHEN THE CASE WAS BEFORE JUDGE WALTER EITHER IN

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:14 1    2010 OR BEGINNING OF 2012 WHEN IT ORIGINALLY CAME BACK.

03:15 2            THE COURT:  LET ME CUT TO THE CHASE.  YOUR WITNESSES ARE

03:15 3    YOUR PROBLEM, YOUR RESPONSIBILITY.  IF YOU WANT SOMEBODY HERE AS A

03:15 4    PERCIPIENT WITNESS AND SHE WAS NOT ON THE WITNESS LIST, IT WAS IN

03:15 5    THE MOTION, I SAID SHE CAN BE SUBSTITUTED IN FOR MS. KLIMKIEWICZ,

03:15 6    I DON'T HAVE ANY PROBLEM WITH THAT.  I DON'T RECALL TAKING UP ANY

03:15 7    ISSUE AS TO HER BEING AN EXPERT.

03:15 8            THERE IS A WHOLE SET OF RULES THAT APPLY IN TRIALS, EVEN

03:15 9    IN TEXTBOOKS.  AND JUDGE WALTER HAD AN ORDER ON THIS THAT APPLY TO

03:15 10   ALL EXPERTS.  IF YOU WANT SOMEBODY TO TESTIFY AS AN EXPERT AS

03:15 11   OPPOSED TO A PERCIPIENT WITNESS, YOU HAVE TO FILE A REPORT WITHIN

03:15 12   THOSE DEADLINES.  THAT WASN'T DONE.

03:15 13           NOW, YOU COULD HAVE, WHEN YOU ASKED TO SUBSTITUTE

03:15 14   MS. SWORD FOR MS. KLIMKIEWICZ, YOU COULD HAVE SAID OH, BY THE WAY,

03:15 15   WE ALSO WANT LEAVE TO FILE AN EXPERT REPORT LATE.  YOU WOULD HAVE

03:16 16   HAD A DIFFICULTY BECAUSE KLIMKIEWICZ DIDN'T FILE AN EXPERT REPORT

03:16 17   EVEN THOUGH SHE WAS A WITNESS AT THE TIME, BUT I MIGHT HAVE

03:16 18   CONSIDERED IT WEEKS AND WEEKS AGO.  I THINK IT'S A LITTLE BIT LATE

03:16 19   NOW.

03:16 20           DOES MS. SWORD HAVE AN EXPERT REPORT THAT SHE CAN

03:16 21   PROVIDE?

03:16 22           MR. BASKIN:  YOUR HONOR, SHE DOES NOT, BUT WHAT I WOULD

03:16 23   LIKE, IF I CAN JUST SPEAK TO THAT ISSUE BRIEFLY AGAIN, GOING BACK

03:16 24   TO THE JUDGE WALTER REPORT AND JUDGE WALTER ORDER AND WITH RESPECT

03:16 25   TO THE LAW WHEN IT COMES TO -- CERTAINLY I'M NOT GOING TO QUESTION

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:16 1    YOUR HONOR'S KNOWLEDGE OF IT, BUT THERE ARE CASES --

03:16 2              THE COURT:  YOU ARE FREE TO QUESTION.

03:16 3              MR. BASKIN:  I DON'T WANT TO.

03:16 4              THE COURT:  IF I'M WRONG -- I HAVE BEEN WRONG BEFORE.

03:16 5              MR. BASKIN:  THERE ARE CASES IN OUR OPPOSITION TO THE EX

03:16 6    PARTE WHERE WE DISCUSSED THE NINTH CIRCUIT'S RULE WITH RESPECT,

03:16 7    AND IT SEEMS TO ME THAT THE RULE ALSO APPLIES IF THERE IS AN

03:17 8    ACTUAL ORDER, PART OF THE SCHEDULING ORDER THAT TRUMPS THE GENERAL

03:17 9    FEDERAL RULES IN THE CASE BECAUSE RULE 26(A)(2)(C) DOES NOT

03:17 10   REQUIRE THE EXPERT REPORT.

03:17 11             THE COURT:  NO DOUBT.

03:17 12             MR. BASKIN:  SO WHEN IT COMES TO DECIDING WHETHER OR NOT

03:17 13   AN EXPERT SHOULD BE PERMITTED IN THE ABSENCE OF EXPERT REPORTS,

03:17 14   THERE IS DISCRETION GRANTED TO THE TRIAL COURT TO EVALUATE THE

03:17 15   FACTORS, SUCH AS LACK OF PREJUDICE.

03:17 16             THE COURT:  DID YOU OBJECT TO JUDGE WALTER'S ORDER?

03:17 17             MR. BASKIN:  NO, WE DID NOT.  BUT THE --

03:17 18             THE COURT:  SO LOOK, WE HAVE THE RULES.  JUDGES THEN

03:17 19   HAVE ORDERS THAT THEY ENTER ON TOP OF THE RULES THAT SOMEWHAT

03:17 20   CHANGE THE RULES FOR THE INDIVIDUAL CASE.  PARTIES CAN OBJECT.  IF

03:17 21   THEY'RE UNHAPPY, THEY CAN FILE AN OBJECTION AND SOMETIMES JUDGES

03:17 22   DO THINGS PARTIES DON'T LIKE.

03:17 23             BUT IF THEY ARE OBJECTED TO AND NOT REVERSED SOMEHOW,

03:18 24   THOSE ORDERS SUPERSEDE THE RULES.  AND THE IMPORTANT THING IS THAT

03:18 25   APPLIES TO BOTH SIDES.  SO LETTING ONE SIDE OUT OF ONE OF THESE

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:18  1    RULES AND SAYING YOU ARE NOT BOUND WHEN -- OR THE OTHER SIDE IS

03:18  2    BOUND IS SORT OF UNFAIR.

03:18  3          MR. BASKIN:  I AGREE, YOUR HONOR.  AND I HAVE, IN A

03:18  4    SENSE -- IF I COULD SPEAK TO THAT.  THE ISSUES THAT -- THE EXPERT

03:18  5    ISSUES, AND I'LL PUT THAT IN QUOTATION MARKS NOW, THAT MS. SWORD

03:18  6    WAS DESIGNATED TO SPEAK ON AND THAT MS. KLIMKIEWICZ WAS DESIGNATED

03:18  7    TO SPEAK ON, ALBEIT WITHOUT A REPORT, WERE ISSUES OF -- AND I CAN

03:18  8    QUOTE, IT'S DESIGN BRANDING.  BASICALLY ISSUES THAT THEY CAN SPEAK

03:18  9    ON WITHOUT ANY NEED TO PREPARE AN OPINION.  THE QUESTION IS

03:18 10    WHETHER OR NOT THEY SHOULD BE ALLOWED TO TESTIFY AS TO THEIR

03:18 11    ULTIMATE OPINION AS TO TYING THESE ISSUES, WHICH THEY CLEARLY HAVE

03:18 12    PERCIPIENT KNOWLEDGE ON, TO AN ULTIMATE OPINION ABOUT WHETHER OR

03:18 13    NOT --

03:18 14          THE COURT:  YOU KNOW, YOU SAY THEY'RE ONLY AN OPINION, A

03:18 15    REPORT, BUT THE REPORT ISN'T THERE FOR THEIR BENEFIT.  THE REPORT

03:19 16    IS THERE FOR THE BENEFIT OF THE JURY, AND IT'S THERE FOR THE

03:19 17    BENEFIT OF THE OTHER SIDE SO THEY CAN PREPARE TO MEET IT.  IF THE

03:19 18    EXPERT DOESN'T PROVIDE A REPORT, THEY DON'T KNOW THEY'RE SUPPOSED

03:19 19    TO GO OUT AND FIND A -- OR CROSS-EXAMINE OR FIND THEIR OWN EXPERT

03:19 20    TO MEET IT.

03:19 21          MS. HOLLAND:  YOUR HONOR, KRISTIN HOLLAND FOR

03:19 22    AEROPOSTALE.  IF YOU WOULD PERMIT ME TO SUPPLEMENT MY COLLEAGUE'S

03:19 23    ARGUMENT ON THIS POINT.

03:19 24          THE COURT:  SURE.

03:19 25          MS. HOLLAND:  REGARDING THE ISSUE OF A REPORT,

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:19  1    DEFENDANT'S WITNESS LIST IDENTIFIED MS. LINDSAY FRIEDMAN SWORD AND

03:19  2    SAID THAT SHE WOULD PROVIDE AN EXPERT OPINION.  WE ALSO PROVIDED,

03:19  3    IN OCTOBER BEFORE YOU ISSUED YOUR ORDER ALLOWING HER TO TESTIFY, A

03:19  4    DECLARATION, A FOUR-PAGE DECLARATION THAT SHE SIGNED UNDER PENALTY

03:19  5    OF PERJURY, WHICH WE SUBMIT SATISFIES THE REQUIREMENTS OF RULE 26

03:20  6    FOR AN EXPERT REPORT.  THOSE REQUIREMENTS SIMPLY STATE THAT AN

03:20  7    EXPERT NEEDS TO HAVE A COMPLETE STATEMENT OF ALL OPINIONS THAT THE

03:20  8    WITNESS WILL EXPRESS AND THE BASIS AND REASONS FOR THEM, THE FACTS

03:20  9    AND DATA CONSIDERED BY THE WITNESS IN FORMING THEM, ANY EXHIBITS

03:20 10    THAT WILL BE USED TO SUMMARIZE OR SUPPORT THEM, THE WITNESS'S

03:20 11    QUALIFICATIONS, THE LIST OF OTHER CASES IN WHICH SHE HAS TESTIFIED

03:20 12    IN THE LAST FOUR YEARS, AND A STATEMENT OF THE COMPENSATION.

03:20 13            SHE IS AN EMPLOYEE WITNESS.  SHE TESTIFIED THAT HER

03:20 14    COMPENSATION IS AS AN EMPLOYEE.

03:20 15            THE COURT:  THIS IS IN HER REPORT?

03:20 16            MS. HOLLAND:  YES.  ALL THAT INFORMATION WAS IN THE

03:20 17    DECLARATION THAT WAS BEFORE THE COURT IN DECIDING WHETHER SHE

03:20 18    COULD TESTIFY, INCLUDING THE FACT THAT SHE WAS GOING TO OPINE ON

03:20 19    ULTIMATE ISSUES OUTSIDE OF HER PERCIPIENT KNOWLEDGE AS AN EMPLOYEE

03:20 20    OF THE COMPANY.

03:20 21            AND I DEFENDED THE DEPOSITION WHICH OCCURRED ON MONDAY.

03:20 22    THOSE ISSUES WERE FULLY EXAMINED BY PLAINTIFF'S COUNSEL AT THE

03:20 23    DEPOSITION, AT LEAST TO THE EXTENT THAT THEY CHOSE TO PURSUE THEM.

03:20 24    THEY HAVE ISSUES WITH HER CREDIBILITY.  THEY HAVE ALREADY

03:21 25    FORESHADOWED THAT THEY'RE GOING TO SAY THAT SHE WAS STILL IN

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:21 1    COLLEGE WHEN THE ALLEGED INFRINGEMENT OCCURRED.

03:21 2              THE COURT:  STUDYING HISTORY.

03:21 3              MS. HOLLAND:  SHE WAS STUDYING HISTORY.  THEY'RE

03:21 4    ENTITLED TO ATTACK HER CREDIBILITY IN ANY WAY THEY CHOOSE, BUT SHE

03:21 5    PROVIDED HER OPINIONS AND THEY HAD A CHANCE TO EXAMINE HER.  AND

03:21 6    THEY CAN MAKE FUN OF HER QUALIFICATIONS OR WHATEVER THEY CHOOSE TO

03:21 7    DO WITHIN THE SCOPE OF PERMISSIBLE QUESTIONING.

03:21 8              THE COURT:  YOUR POSITION IS THAT THAT AFFIDAVIT OR THE

03:21 9    DECLARATION IS HER EXPERT REPORT?

03:21 10             MS. HOLLAND:  YES.  IT CERTAINLY SUBSTANTIALLY

03:21 11   COMPLIES --

03:21 12             THE COURT:  I UNDERSTAND THE POINT.

03:21 13             MR. BURROUGHS:  ONE, YOUR HONOR, EVEN IF THAT WAS AN

03:21 14   EXPERT REPORT, WHICH IT CLEARLY IT WASN'T, IT'S STILL UNTIMELY

03:21 15   UNDER JUDGE WALTER'S ORDER.  IT WASN'T PRODUCED WITHIN THE

03:21 16   DISCOVERY PERIOD.  WE DIDN'T HAVE TIME TO ANALYZE IT DURING

03:21 17   DISCOVERY OR DESIGNATE A REBUTTAL, WHICH IS WHY WE HAVE THE

03:21 18   DEADLINES THAT JUDGE WALTER SET FORTH FOR EXPERT DISCOVERY.

03:21 19             AND TWO, IT CLEARLY DOESN'T MEET THE FRCP 26 RULES.  IT

03:21 20   WAS A DECLARATION SUBMITTED TO INDICATE WHY SHE SHOULD BE ALLOWED

03:21 21   TO TESTIFY IN THE PLACE OF MS. KLIMKIEWICZ.  IT DOESN'T MEET THE

03:22 22   STANDARDS THAT ARE SET FORTH IN THE EXPERT REPORT.  IT WASN'T

03:22 23   TITLED AN EXPERT REPORT.  IT WASN'T PRODUCED IN ANY WAY TO

03:22 24   INDICATE THAT IT WAS AN EXPERT REPORT.  IT'S SIMPLY A POST FACTO

03:22 25   ATTEMPT BY MS. HOLLAND TO MISREPRESENT A DECLARATION AS A REPORT

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:22  1  TO CIRCUMVENT THE RULES AND GUIDELINES IN JUDGE WALTER'S ORDERS.

03:22  2          THE COURT:  I DON'T HAVE IT HANDY.  WHICH DOCUMENT IS IT

03:22  3  ATTACHED TO?

03:22  4          MS. HOLLAND:  YOUR HONOR, IT IS FILED ON -- THE TAG LINE

03:22  5  ON THE TOP HAS MULTIPLE FILINGS.

03:22  6          MR. BASKIN:  196-2.  PTF 196-2.

03:22  7          MS. HOLLAND:  IF I COULD JUST FINISH.  THERE IS NO

03:22  8  REQUIREMENT IN FEDERAL RULE 26 THAT IT BE CALLED "EXPERT REPORT"

03:22  9  OR HAVE THAT AS ITS TITLE.  I BELIEVE HER TRANSCRIPT IS BEFORE THE

03:22 10  COURT, AT LEAST RELEVANT PORTIONS.  THERE WAS TWO HOURS OF

03:23 11  QUESTIONS ON HER QUALIFICATIONS.

03:23 12          THE COURT:  HER TRANSCRIPT OF THE DEPOSITION?

03:23 13          MS. HOLLAND:  THE DEPOSITION MONDAY.  THEY HAD A FULL

03:23 14  OPPORTUNITY TO EXAMINE HER ON HER OPINIONS.  AND THEY MAY DISAGREE

03:23 15  WITH THEM AND THE LEVEL OF CREDIBILITY.

03:23 16          THE COURT:  WHAT IS SHE OPINING ON?

03:23 17          MS. HOLLAND:  SHE IS OPINING ON ISSUES ASSOCIATED WITH

03:23 18  WHY PEOPLE BUY PRODUCTS IN AEROPOSTALE'S STORES, AND THAT IT'S NOT

03:23 19  NECESSARILY FOR A DITSY FLORAL PRINT ON A HENLEY.  THAT'S NOT THE

03:23 20  REASON THEY COME IN.  THEY COME IN FOR BRANDING.  THEY COME

03:23 21  BECAUSE THEY WANT -- THEY'RE 14 TO 17-YEAR-OLD GIRLS AND THEY LIKE

03:23 22  THE AEROPOSTALE NAME AND STORE EXPERIENCE, ET CETERA.  AND SHE'S

03:23 23  ALSO LOOKED AT THE PRINT AT ISSUE, AND SHE NOTED VARIOUS

03:23 24  DIFFERENCES IN THEM.  SHE TESTIFIED ABOUT THAT AT HER DEPOSITION.

03:23 25          THAT'S THE SAME TESTIMONY THAT MS. KLIMKIEWICZ PROVIDED.

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:23  1   MS. SWORD ALSO REVIEWED MS. KLIMKIEWICZ'S DEPOSITION TESTIMONY.

03:23  2   SHE WAS ASKED IF SHE AGREED WITH IT, IF THERE WERE ANY ISSUES WITH

03:23  3   IT.  SHE SAID SHE DID NOT.  SHE DID AGREE WITH IT.  SHE HAD NO

03:24  4   ISSUES WITH IT.

03:24  5        I'M NOT SURE WHAT WE COULD DO.  AS YOU POINTED OUT, WE

03:24  6   COULDN'T COMPLY WITH THAT ORDER FROM JUDGE WALTER BECAUSE

03:24  7   MS. KLIMKIEWICZ -- MS. SWORD WAS NOT EVEN IN OUR MIND AS SOMEONE

03:24  8   WHO WOULD TESTIFY ON THIS.  IN FACT, SHE WAS WORKING IN A

03:24  9   DIFFERENT DEPARTMENT AT THAT TIME.

03:24 10        SO IF WE HAD KNOWN -- I DON'T EVEN THINK THIS ISSUE HAS

03:24 11   BEEN BRIEFED.  WE WERE PROCEEDING WITH AUTHORITY FROM THE COURT

03:24 12   THAT SHE COULD TESTIFY ON THE ISSUES DISCLOSED.  WE HAD A

03:24 13   FOUR-PAGE DECLARATION THAT INCLUDED HER EXPERT OPINION.  THERE WAS

03:24 14   NO OBJECTION THAT SHE DIDN'T HAVE AN EXPERT REPORT.  THEY NEVER

03:24 15   RAISED A FAILURE TO COMPLY WITH JUDGE WALTER'S ORDER.  WE THOUGHT

03:24 16   WE WERE IN COMPLIANCE WITH THAT.  FURTHER, WE THOUGHT WE WERE IN

03:24 17   COMPLIANCE WITH YOUR ORDER AND NOW YOU ARE SITTING BY DESIGNATION

03:24 18   ON THIS CASE.

03:24 19        SO, FRANKLY, WE DID NOT LIST HER BACK TO JUDGE WALTER'S

03:24 20   2009 TRIAL ORDER SINCE YOU HAD TAKEN OVER THE TRIAL CONDUCT IN

03:24 21   THIS CASE.  IF THERE WAS ANY FAILURE TO DO THAT, I WOULD REQUEST

03:24 22   THAT YOU RULE ON THIS ISSUE TODAY.  SHE IS FLYING OUT FROM NEW

03:24 23   YORK ON TUESDAY OR WEDNESDAY NIGHT TO TESTIFY.  WE WOULD LIKE TO

03:25 24   MAKE A VERBAL MOTION TO HAVE HER ALLOWED TO TESTIFY AS AN EXPERT

03:25 25   AND WE CAN BRIEF THAT ALSO, BUT BECAUSE TIME IS OF THE ESSENCE, I

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:25 1    THINK EVERYTHING HAS BEEN ARGUED AND IT'S BEFORE THE COURT.

03:25 2              THE COURT:  OKAY.

03:25 3              MR. BURROUGHS:  TWO THINGS, YOUR HONOR, THAT ARE

03:25 4    IMPORTANT.  THE FIRST IS IT WASN'T FULLY BRIEFED BECAUSE SHE

03:25 5    WASN'T DISCLOSED AS AN EXPERT UNTIL AFTER THE MOTIONS IN LIMINE

03:25 6    WERE DUE.

03:25 7              AND SECOND, AND MORE IMPORTANTLY, MS. KLIMKIEWICZ ALSO

03:25 8    DID NOT PROVIDE AN EXPERT REPORT WITHIN THE DEADLINE.  SO TO THE

03:25 9    EXTENT THAT MS. SWORD COULDN'T PRODUCE ONE BECAUSE SHE WAS

03:25 10   DISCLOSED SO MUCH LATER, IF SHE IS STEPPING INTO MS. KLIMKIEWICZ'S

03:25 11   SHOES, SHE WOULD HAVE BEEN BOUND BY MS. KLIMKIEWICZ'S EXPERT

03:25 12   REPORT.

03:25 13             AS A MATTER OF FACT, IN JUDGE WALTER'S ORDER, AND I'LL

03:25 14   READ FROM IT, HE CLEARLY STATES -- AND THIS ORDER WAS IN PLACE

03:25 15   WHEN DISCOVERY CLOSED.  PLAINTIFF RELIED ON THIS ORDER AND RELIED

03:25 16   ON THE TERMS HEREIN.  "EXPERT WITNESSES WILL BE BOUND BY THE

03:25 17   OPINIONS EXPRESSED IN THEIR REPORTS PREPARED IN ACCORDANCE WITH

03:26 18   FED. R. CIV. P. 26(A)(2)(B)."

03:26 19             THERE IS NO EXPERT REPORT.  IF THERE WAS,

03:26 20   MS. KLIMKIEWICZ WOULD HAVE PROVIDED AN EXPERT REPORT.  MS. SWORD,

03:26 21   STEPPING INTO HER SHOES, WOULD HAVE BEEN BOUND BY THAT.  THERE IS

03:26 22   NO EXPERT REPORT.  MS. KLIMKIEWICZ COULDN'T TESTIFY AS AN EXPERT,

03:26 23   MS. SWORD SHOULD NOT BE ALLOWED TO TESTIFY AS AN EXPERT.

03:26 24             MR. DONIGER:  IF I MAY, YOUR HONOR, JUST TO SUPPLEMENT

03:26 25   BRIEFLY WHAT MY PARTNER SAID.  I REALLY DO WANT TO STRESS HOW

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:26 1  EXTRAORDINARILY PREJUDICIAL IT WOULD BE TO PLAINTIFF TO, AT THIS

03:26 2  LATE STAGE, ALLOW DEFENDANTS TO EFFECTIVELY GET OUT FROM THEIR OWN

03:26 3  FAILURE.

03:26 4       IN MANY CASES THAT WE HAVE HANDLED, WE HAVE RETAINED AN

03:26 5  EXPERT ON THE QUESTION OF APPORTIONMENT TO COUNTER THESE ARGUMENTS

03:26 6  THAT THE DESIGN IS NOT IMPORTANT.  WE HAVE SUBMITTED MANY EXPERT

03:26 7  REPORTS FROM EXPERTS THAT SAY NO.  IN FACT, IT'S THE FIRST THING

03:26 8  SOMEONE LOOKS AT.  SOMEONE DOESN'T LIKE THE DESIGN, THEY'RE NOT

03:26 9  GOING TO BUY THE GARMENT.

03:27 10      IT'S AN INTERESTING QUESTION FOR EXPERT TESTIMONY AND

03:27 11  ONE THAT WE CERTAINLY, CERTAINLY WOULD HAVE COUNTER-DESIGNATED IF

03:27 12  THERE WAS A TIMELY DESIGNATION.  AND TO NOW, AFTER WHAT I THINK IS

03:27 13  A CLEAR FAILURE TO FOLLOW JUDGE WALTER'S ORDER AND TIMELY

03:27 14  DESIGNATE AND DISCLOSE -- BECAUSE AGAIN, IF YOU LOOK AT THE

03:27 15  DISCLOSURE, IT DOESN'T MENTION ABOUT APPORTIONMENT, AND THAT'S

03:27 16  WHAT THEY'RE NOW TRYING TO PIGEONHOLE HER INTO.  TO ALLOW THEM TO

03:27 17  DO THAT WITHOUT US HAVING AN ABILITY TO COUNTER-DESIGNATE, AND

03:27 18  WITH TRIAL ON TUESDAY, QUITE FRANKLY, WE SHOULDN'T HAVE TO.  IT'S

03:27 19  NOT REASONABLE.  IT WOULD BE EXTRAORDINARILY PREJUDICIAL.

03:27 20      THE COURT:  I HAVE LOOKED AT THIS DECLARATION THAT

03:27 21  OPPOSING COUNSEL REFERRED TO.  DOES IT REFER TO APPORTIONMENT?

03:27 22      MR. DONIGER:  I DON'T REMEMBER THE EXACT WORDING OF IT.

03:27 23  IT'S VAGUE ENOUGH THAT THEY'LL --

03:27 24      MR. BASKIN:  MAY I APPROACH THE COURT?

03:27 25      MR. DONIGER:  MAY I TAKE A LOOK?

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:28  1          THE COURT:  GO AHEAD, SHOW IT TO COUNSEL.

03:28  2          MR. DONIGER:  YES, YOUR HONOR.  IT SAYS, "THE SPECIFIC

03:28  3   PATTERN THAT APPEARS ON THE PRODUCT, INCLUDING MS. BUBBLES'

03:28  4   SHIRTS, IS NOT A SIGNIFICANT CONSIDERATION FOR THE SELECTION OF

03:28  5   AEROPOSTALE PRODUCTS, BOTH BY AEROPOSTALE MERCHANDISE BUYERS AND

03:28  6   BY ITS CUSTOMERS."

03:28  7          AND I'LL GIVE THIS TO YOU RIGHT NOW.  I WOULD SUBMIT

03:28  8   THAT BASED ON WHAT THEY WERE DESIGNATED ON, SHE MIGHT KNOW THE

03:28  9   BRAND NAME, SHE MIGHT KNOW THE MARKETING.  MAY I APPROACH?

03:28 10          THE COURT:  YES.

03:28 11          MR. DONIGER:  ALL OF THOSE ARE FUNDAMENTALLY DIFFERENT

03:28 12   QUESTIONS FROM WHY A CONSUMER BUYS A PRODUCT.  SHE MIGHT KNOW WHAT

03:28 13   THEY DO TO MARKET.  SHE IS NOT QUALIFIED TO SAY WHY A THIRD PARTY

03:29 14   BUYS A GARMENT.

03:30 15          THE COURT:  SO THE QUESTION IS WHETHER SHE IS GOING TO

03:30 16   BE ABLE TO TESTIFY TO THESE THINGS AS AN EXPERT OR TESTIFY TO THEM

03:30 17   AT ALL?

03:30 18          MR. DONIGER:  THE FIRST QUESTION IS WHETHER SHE IS ABLE

03:30 19   TO TESTIFY AS AN EXPERT.  AND WE SUBMIT, AND I THOUGHT THE COURT

03:30 20   WAS LEANING, CERTAINLY AGREEING THAT WITHOUT HAVING PROVIDED AN

03:30 21   EXPERT REPORT, EITHER HER OR HER PREDECESSOR, WITHOUT TIMELY

03:30 22   PROVIDING AN EXPERT REPORT THAT WE COULD COUNTER-DESIGNATE, AGAIN,

03:30 23   THERE CAN BE NO EXPERT TESTIMONY.

03:30 24          IF THAT'S THE FINDING, THEN WE DON'T NEED TO GET TO THE

03:30 25   SECOND ISSUE, WHICH IS WHAT WE'VE BEEN DISCUSSING, WHICH IS EVEN

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:30 1    IF THERE IS -- EVEN IF THEY'RE ALLOWED TO OFFER TESTIMONY, THAT

03:31 2    TESTIMONY CANNOT GO TO WHY CUSTOMERS BUY GARMENTS BECAUSE, A, THAT

03:31 3    ISSUE OF THE -- THAT WAS NEVER IDENTIFIED EVEN IN THEIR ORIGINAL

03:31 4    DISCLOSURES.  AND SHE IS WHOLLY LACKING IN ANY QUALIFICATIONS TO

03:31 5    RENDER SUCH AN OPINION.  BUT AGAIN, WE --

03:31 6            THE COURT:  WHY CAN'T SHE OFFER THIS LAY OPINION?

03:31 7            MR. DONIGER:  BECAUSE IT'S SPECULATION.

03:31 8            THE COURT:  OH, I DON'T KNOW.  SHE IS IN THE BUSINESS.

03:31 9            MR. DONIGER:  SO THEN OUR CLIENT WOULD BE ABLE TO OFFER

03:31 10   LAY OPINION ABOUT THE IMPORTANCE OF DESIGNS?  WHY A CONSUMER BUYS

03:31 11   A PRODUCT, THE PORTION OF SALES ATTRIBUTABLE, PORTION IS CERTAINLY

03:31 12   A QUESTION FOR EXPERT.  I HAVE SEEN MARKET STUDIES, I'VE SEEN

03:31 13   PEOPLE WITH ACTUAL --

03:31 14           THE COURT:  I'M NOT SAYING IT COULDN'T BE, BUT I DON'T

03:32 15   SEE WHY IT COULDN'T BE SOMETHING OF A LAY OPINION AS WELL.  I'M

03:32 16   GOING TO LET HER TESTIFY AS A LAY OPINION WITNESS AS TO ANYTHING

03:32 17   THAT'S IN THIS DECLARATION.

03:32 18           MR. DONIGER:  YOUR HONOR, I DO --

03:32 19           THE COURT:  YOU CAN MAKE FUN OF HER.

03:32 20           MR. DONIGER:  I DON'T WANT TO MAKE FUN OF HER.  THE ONLY

03:32 21   QUESTION -- I WOULD ASK FOR JUST A BIT OF CLARIFICATION BEFORE WE

03:32 22   LEAVE BECAUSE I DON'T WANT TO HAVE THIS ARGUMENT LATER ON AS TO

03:32 23   WHERE THE LINE IS BETWEEN LAY TESTIMONY AND EXPERT TESTIMONY.  AND

03:32 24   CERTAINLY A DEFENDANT CAN'T HAVE CARTE BLANCHE TO ALLOW HER TO

03:32 25   OPINE ON EXPERT QUESTIONS AND SAY IT'S LAY TESTIMONY.

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:32 1          THE COURT:  IT'S LAY OPINION TESTIMONY.  SHE WOULDN'T BE

03:32 2  DESIGNATED AS AN EXPERT.  SHE CAN TESTIFY.  SHE IS IN THE

03:32 3  BUSINESS, SHE DEALS WITH CLOTHES, SHE HAS TRAINING SUCH AS IT IS.

03:32 4  AND YOU CAN --

03:32 5          MR. DONIGER:  BUT SHE WAS NOT IN 2006.

03:33 6          THE COURT:  YOU CAN POINT THAT OUT TO THE JURY.

03:33 7          MR. DONIGER:  I REMAIN UNCLEAR ON HOW SOMEONE OF NO

03:33 8  PERCIPIENT KNOWLEDGE CAN OFFER LAY TESTIMONY ON THAT.  I SUPPOSE

03:33 9  WE CAN DEAL WITH IT LATER ON.

03:33 10          THE COURT:  VERY GOOD.  SO WE NOW HAVE TO DEAL WITH

03:33 11  SUPPLEMENTAL EXPERT REPORT BY -- WHO WAS THE WITNESS?

03:33 12          MR. BURROUGHS:  DAVID NOLTE, YOUR HONOR.

03:33 13          THE COURT:  DO YOU HAVE ANYTHING TO SAY ON THAT SUBJECT?

03:33 14          MR. BASKIN:  COUPLE POINTS REGARDING THE SUPPLEMENTAL

03:33 15  REPORT, YOUR HONOR.  IT WAS WELL-KNOWN IN THIS CASE AT THE TIME

03:33 16  MR. NOLTE ISSUED THE REPORT THE FIRST TIME AROUND BASED UPON

03:33 17  INTERROGATORY RESPONSES PROVIDED BY AEROPOSTALE THAT THERE WAS A

03:33 18  QUESTION, THERE WAS AN ISSUE REGARDING -- AND THIS IS AN ISSUE

03:34 19  YOUR HONOR RULED UPON IN THE PRETRIAL CONFERENCE -- ABOUT 47,000

03:34 20  UNITS OF GARMENTS THAT AEROPOSTALE COULDN'T ACCOUNT FOR THAT THE

03:34 21  DOCUMENTATION SHOWED THAT MS. BUBBLES HAD, ACCORDING TO THEIR

03:34 22  RECORDS, SHIPPED.  AEROPOSTALE ONLY HAD SALES RECORDS BEFORE THIS

03:34 23  CASE WAS DECIDED ON SUMMARY JUDGMENT ON LIABILITY ISSUES WITH

03:34 24  RESPECT TO 47,000 UNITS INSTEAD OF WHAT HAPPENED TO THE OTHER

03:34 25  47,000 UNITS.

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:34  1        THE DISCOVERY RESPONSES INDICATED THAT AT THIS TIME, AND

03:34  2   MR. NOLTE'S REPORT INDICATED THAT, WITH A LITTLE ASTERISK, THAT

03:34  3   THERE WAS AN ISSUE REGARDING THOSE 47,000 UNITS.  AND IT SAID,

03:34  4   EXPECTED, ASSUMING ALL 94,000 UNITS SOLD.

03:34  5        AFTER REMAND OF THIS ACTION WHEN DAMAGES BECAME AN ISSUE

03:34  6   AND AFTER THE SETTLEMENT CONFERENCE WITH JUDGE BAIRD THAT WAS

03:34  7   ORDERED BY JUDGE WALTER, IT BECAME APPARENT THAT THE 47,000 UNIT

03:35  8   ISSUE WAS A SIGNIFICANT ISSUE AND THERE WOULD NEED TO BE -- AND

03:35  9   THIS WAS ALL FULLY BRIEFED BEFORE YOUR HONOR IN THE PRETRIAL

03:35 10   CONFERENCE AND THAT EVIDENCE REGARDING THOSE MISSING UNITS WAS

03:35 11   ALLOWED TO COME IN.

03:35 12        AND IT TURNS OUT THERE WERE 92,000 UNITS SHIPPED BY MS.

03:35 13   BUBBLES, 92,000 UNITS SOLD.  THE EXPERT REPORTS THAT WERE

03:35 14   SUPPLEMENTED ACCOUNTS FOR THE ACCURATE SALES DATA.  IN FACT,

03:35 15   PLAINTIFF SHOULD BE HAPPIER ABOUT IT BECAUSE MORE UNITS SOLD.

03:35 16   THERE WERE ONLY 47,000 UNITS SOLD BEFORE.  THE EXPERT'S REPORT

03:35 17   BEFORE ASSUMED FULL SALES WHEN REALLY THE SALES RECORDS OF

03:35 18   AEROPOSTALE ONLY DOCUMENTED 47,000 UNITS SOLD.

03:35 19        WHAT PLAINTIFF'S COUNSEL SEEMS TO HAVE AN ISSUE WITH IS

03:35 20   THE EXPERT SUPPLEMENTATION OF, OR ADDITION OF WITH INDICATION THAT

03:35 21   HE IS NOT EVEN SURE IN THE EXPERT REPORT IF -- I CAN PROVIDE IT TO

03:35 22   YOUR HONOR -- THAT IT'S THE LAW OF THE LAND, BUT WHETHER OR NOT

03:36 23   INCOME TAX IS A PROPER DEDUCTION FOR NON-WILLFUL INFRINGERS.

03:36 24        THE *THREE BOYS MUSIC* CASE STATES CLEARLY FROM 2000 FROM

03:36 25   THE NINTH CIRCUIT NON-WILLFUL INFRINGERS MAY DEDUCT INCOME TAXES

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:36  1  FROM THE COPY INFRINGEMENT ANALYSIS, DISGORGEMENT ANALYSIS WITH

03:36  2  RESPECT TO INCREMENTAL OR LOST PROFITS.  THE EXPERT HADN'T

03:36  3  INCLUDED THAT BEFORE.

03:36  4          WHAT HE INDICATED IN HIS NEW REPORT IS, A, HE UPDATED

03:36  5  WITH RESPECT TO THE FULL SALES UNITS.  B, HE APPLIED INCOME TAXES

03:36  6  WITH THE ASTERISK, IN A SENSE, THAT IF THE COURT DETERMINED OR IF

03:36  7  THIS IS NOT CORRECT, DON'T CONSIDER IT.

03:36  8          IT'S OUR OPINION THAT INCOME TAXES, WHETHER OR NOT IT

03:36  9  SHOULD APPLY, THAT CAN BE RULED UPON BY YOUR HONOR IN BETWEEN --

03:36 10  EITHER NOW OR IN BETWEEN THE LIABILITY AND DAMAGES PHASE.  AND THE

03:36 11  JURY DOESN'T HAVE TO HEAR ABOUT INCOME TAXES IF YOUR HONOR DECIDES

03:37 12  AFTER REVIEW OF THAT PARTICULAR ISSUE, THAT INCOME TAXES ARE A

03:37 13  PROPER DEDUCTION.

03:37 14          ALTERNATIVELY TO THAT, WE PROPOSED TO MR. DONIGER WHEN

03:37 15  HE BROUGHT UP THE ISSUE WITH THE SUPPLEMENTAL REPORT, THAT AS IT

03:37 16  PERTAINS TO AEROPOSTALE, BECAUSE THE SUPPLEMENT ONLY PERTAINS TO

03:37 17  AEROPOSTALE, WE'RE WILLING TO WITHDRAW THE EXPERT.  THE EXPERT

03:37 18  NEED NOT TESTIFY AS TO ANY MATTERS PERTINENT TO AEROPOSTALE

03:37 19  BECAUSE AEROPOSTALE'S FINANCIAL VICE PRESIDENT OF OPERATIONS WAS

03:37 20  DEPOSED IN THIS CASE, IS PREPARED TO TESTIFY AT TRIAL, IS ON THE

03:37 21  WITNESS LIST, ON THE DEDUCTIBLE EXPENSES ISSUE.  AND ALL OF THE

03:37 22  TESTIMONY THAT WOULD BE TESTIFIED TO BY THE EXPERT HERE IS THE

03:37 23  EXACT SAME TESTIMONY THAT AEROPOSTALE'S FINANCIAL OFFICER IS

03:37 24  WILLING TO GET INTO.

03:37 25          SO WE BELIEVE EITHER THE EXPERT IS ALLOWED TO CLARIFY

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

```
03:37  1   WHY THE REPORT IS NOT ACCURATE, WHICH EVEN INDICATED IN THAT
03:38  2   REPORT ASSUMING FULL SALES, WHICH IT DID NOT, AND THE ISSUE OF
03:38  3   WHETHER OR NOT INCOME TAXES, THAT'S A LEGAL ISSUE, IF THAT CAN BE
03:38  4   APPLIED, IT SHOULD BE INCLUDED.  IF IT CAN'T BE APPLIED, TAKE IT
03:38  5   OUT.  AND THE JURY DOESN'T HAVE TO HEAR IT.  THAT'S FOR YOUR HONOR
03:38  6   TO DECIDE.  BUT AS TO THE QUANTUM OF DEDUCTIBLE EXPENSES, AND THE
03:38  7   CATEGORY OF DEDUCTIBLE EXPENSES, ROBERT HERNON, AEROPOSTALE'S
03:38  8   WITNESS, IS GOING TO TESTIFY TO THOSE ISSUES.
03:38  9            SO IN ORDER TO BASICALLY AVOID THE NEED FOR ANOTHER EX
03:38 10   PARTE, WHICH WAS FILED AS WE WERE DRIVING HERE TODAY, WE SAID
03:38 11   JUST -- WE WON'T USE THEM, YOU DON'T USE THEM WITH RESPECT TO
03:38 12   AEROPOSTALE.  WE THOUGHT THAT WAS A REASONABLE COMPROMISE.
03:38 13            THE COURT:  I'M SORRY, WHAT DOES THAT MEAN, "WE WON'T
03:38 14   USE THEM, YOU DON'T USE THEM"?
03:38 15            MR. BASKIN:  THE EXPERT, WE'LL WITHDRAW HIM AS A WITNESS
03:38 16   AS IT PERTAINS TO --
03:38 17            THE COURT:  HE IS YOUR WITNESS?
03:38 18            MR. BASKIN:  YES.
03:38 19            THE COURT:  IF YOU DECIDE NOT TO OFFER THE WITNESS, WHAT
03:38 20   CAN THEY DO ABOUT THAT?
03:39 21            MR. BURROUGHS:  WE HAVE ALSO DESIGNATED HIM, YOUR HONOR.
03:39 22            THE COURT:  YOU HAVE DESIGNATED HIM AS A WITNESS AS
03:39 23   WELL?
03:39 24            MR. BASKIN:  OUR ONLY POINT IS IF THEY DESIGNATE HIM OR
03:39 25   IF WE DESIGNATE HIM, THAT WE'LL BE ALLOWED TO EXAMINE HIM ON THE
```

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:39 1 ACCURACY OF THOSE OPINIONS THAT WERE PUT FORTH IN THE FIRST REPORT

03:39 2 AND HE SHOULD BE ABLE TO TESTIFY THIS WAS BASED ON INCOMPLETE

03:39 3 SALES DATA.  THIS DID NOT INCLUDE INCOME TAXES, WHICH MAY BE A

03:39 4 DEDUCTIBLE EXPENSE.

03:39 5   THE COURT:  IF YOU DON'T PLAN TO PUT HIM ON, THEY PUT

03:39 6 HIM ON USING THE WHAT YOU CALL OUT-OF-DATE REPORT, WHY CAN'T YOU

03:39 7 BRING ALL THAT OUT IN CROSS-EXAMINATION?

03:39 8   MR. BASKIN:  WE CAN.  THEY HAVE MOVED TO EXCLUDE THAT

03:39 9 FOR ALL PURPOSES.

03:39 10   THE COURT:  I THOUGHT THEY WERE -- I HAVEN'T ACTUALLY

03:39 11 SEEN THE MOTION, BUT I THOUGHT THEY WERE JUST TRYING TO EXCLUDE

03:39 12 THE AMENDED REPORT.  I DON'T KNOW HOW THEY CAN EXCLUDE YOU FROM

03:39 13 CROSS-EXAMINING A WITNESS.

03:39 14   MR. BASKIN:  WELL, AGAIN, WE DIDN'T SEE THE MOVING

03:40 15 PAPERS EITHER.  WE WOULD LIKE --

03:40 16   THE COURT:  THE TITLE IS "PLAINTIFF'S EX PARTE NOTICE OF

03:40 17 MOTION AND MOTION TO EXCLUDE SUPPLEMENTAL EXPERT REPORT."

03:40 18   MR. BASKIN:  THERE IS HIGHLIGHTED LANGUAGE IN THERE.

03:40 19 AND I CAN GRAB IT, I BELIEVE, IF WE HAVE IT.  MAYBE I HAVE IT.  I

03:40 20 DO APOLOGIZE BECAUSE WE DID NOT HAVE AN OPPORTUNITY TO READ THIS

03:40 21 BEFORE.

03:40 22   THE COURT:  THAT'S ALL RIGHT.

03:40 23   LET ME JUST MAKE SURE I UNDERSTAND YOUR POSITION.  BY

03:40 24 THE WAY, I DON'T WANT TO PUT WORDS IN YOUR MOUTH.  YOUR POSITION

03:40 25 IS YOU DON'T PLAN TO PRESENT THE EXPERT.  YOU ARE GOING TO PRESENT

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:40 1    HIS FACTUAL TESTIMONY THROUGH ANOTHER WITNESS.

03:40 2            MR. BASKIN:  WHAT WE WOULD DO --

03:40 3            THE COURT:  IS AS MUCH AS I HAVE SAID TRUE?

03:41 4            MR. BASKIN:  NOT EXACTLY.  WE WOULD PRESENT THE EXPERT

03:41 5    IF THE SUPPLEMENT -- IF HE IS ALLOWED TO SPEAK TO THE SUPPLEMENT

03:41 6    AS WELL.  IF HE IS NOT ALLOWED TO SPEAK TO THAT, THEN WE WOULD

03:41 7    JUST AS SOON NOT PRESENT HIM.  HE CAN BE PRESENTED BY THEM AND WE

03:41 8    CAN CROSS HIM ON AEROPOSTALE ISSUES.

03:41 9            UNDER ANY CIRCUMSTANCE, WHETHER HE IS PRESENTED OR NOT,

03:41 10   THE ISSUES WILL BE TESTIFIED TO BY ROBERT HERNON FROM AEROPOSTALE.

03:41 11           THE COURT:  LET'S SEE WHAT THE OTHER SIDE HAS TO SAY

03:41 12   ABOUT THAT.

03:41 13           MR. BURROUGHS:  THE MOTION THAT WAS FILED ACTUALLY SEEKS

03:41 14   TO DO TWO THINGS:  IT SEEKS TO EXCLUDE THAT NEW REPORT AND SEEKS

03:41 15   TO BIND THEIR EXPERT TO THE TESTIMONY AND OPINIONS THAT HE

03:41 16   DISCLOSED DURING THE DISCOVERY PERIOD.  AND THAT'S ONLY PURSUANT

03:41 17   TO JUDGE WALTER'S ORDER WHICH READS ON PAGE 4, "EXPERT WITNESSES

03:41 18   WILL BE BOUND BY THE OPINIONS EXPRESSED IN THE REPORT PREPARED IN

03:41 19   ACCORDANCE WITH FRCP 26(A)(2)(B) AND WILL NOT BE PERMITTED TO

03:42 20   OFFER NEW MATTERS AT TRIAL."

03:42 21           WHAT THEY'RE PROPOSING IN THIS NEW REPORT THAT THEY

03:42 22   PROVIDED YESTERDAY IS THAT HE TESTIFY ON NEW MATTERS AT TRIAL.

03:42 23   WHEN WE RECEIVED MR. NOLTE'S INITIAL REPORT, WE AGREED WITH MOST

03:42 24   OF IT.  WE AGREED WITH IT TO SUCH A DEGREE THAT WE DIDN'T

03:42 25   DESIGNATE OUR OWN EXPERT.  WE WERE GOING TO CALL HIM TO TESTIFY AS

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:42  1  TO THE NUMBERS AS TO HIS METHODOLOGY AS TO THAT PROFIT MARGIN AT

03:42  2  TRIAL.

03:42  3       WE HAVE NOW PREPARED OUR DAMAGES ANALYSIS BASED ON THE

03:42  4  NUMBERS THAT HE PROVIDED IN DISCOVERY AND THAT, PURSUANT TO JUDGE

03:42  5  WALTER'S ORDER, HE IS BOUND BY.  FOR HIM TO NOW BE ABLE TO GET UP

03:42  6  AND SAY THOSE NUMBERS ARE DIFFERENT, OR I HAVE THIS NEW IDEA ABOUT

03:42  7  TAXES, OR I HAVE THIS NEW IDEA ABOUT OVERHEAD, IT WOULD VIOLATE

03:42  8  JUDGE WALTER'S ORDER BECAUSE THAT'S A NEW MATTER AND BECAUSE HE IS

03:42  9  BOUND BY THE REPORT THAT HE DISCLOSED NO LATER THAN EIGHT WEEKS

03:42 10  BEFORE THE DISCOVERY CUTOFF DATE.

03:42 11       THE COURT:  THEY'RE SAYING THEY'RE NOT GOING TO CALL HIM

03:42 12  AS AN EXPERT.  SO IT'S UP TO YOU WHETHER YOU WANT TO CALL HIM OR

03:42 13  NOT.

03:42 14       MR. BURROUGHS:  UNDERSTOOD, YOUR HONOR, BUT THEY SHOULD

03:42 15  ALSO NOT BE ALLOWED TO CROSS-EXAMINE HIM ABOUT NEW MATTERS.  IF

03:43 16  HIS EXPERT REPORT SAID THE GROSS MARGIN IS $500,000 AND HE IS

03:43 17  BOUND BY THAT, THEY SHOULD NOT THEN BE ABLE TO CROSS-EXAMINE HIM

03:43 18  AND SAY HAS THAT OPINION NOW CHANGED?  DO YOU THINK IT'S NOW

03:43 19  $200,000?  THAT WOULD BE ABSOLUTELY IMPROPER AND WOULD VIOLATE

03:43 20  JUDGE WALTER'S ORDER AND IT WOULD PREJUDICE THE PLAINTIFFS.

03:43 21       THE COURT:  HOW WOULD IT VIOLATE THE ORDER WHEN THEY'RE

03:43 22  NOT PROFFERING THE WITNESS?  THEY'RE CROSS-EXAMINING HIM.

03:43 23       MR. BURROUGHS:  JUDGE WALTER'S ORDER SAYS THAT THE

03:43 24  EXPERT WITNESS WILL BE BOUND BY THE OPINIONS IN THE REPORT THAT

03:43 25  WAS TIMELY DISCLOSED.  THE REPORT THAT WAS TIMELY DISCLOSED SAID

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:43 1  THE GROSS PROFIT MARGIN IS $500,000 OR SOMEWHERE IN THAT REGION.

03:43 2  THAT IS WHAT HE IS BOUND BY NOW.  HE CANNOT NOW SAY ON CROSS,

03:43 3  ACTUALLY, MY OPINION IS NOW THAT THE GROSS MARGIN IS $200,000.

03:43 4       THE COURT:  IF YOU WANT TO PUT HIM ON AS YOUR EXPERT

03:43 5  THAT'S FINE, BUT HE CAN CROSS-EXAMINE.

03:43 6       MR. DONIGER:  YOUR HONOR, THERE IS ONE POINT OF

03:43 7  CLARIFICATION I WOULD LIKE TO MAKE IF I MAY.  THEY WILL BE

03:43 8  PROFFERING HIM AS AN EXPERT.  HE RENDERED A DAMAGE ANALYSIS FOR

03:44 9  BOTH MS. BUBBLES AND AEROPOSTALE.  THEY WILL BE PUTTING HIM ON AS

03:44 10 AN EXPERT FOR MS. BUBBLES.  AND NOT TO PUT WORDS IN MY COLLEAGUE'S

03:44 11 MOUTH, BUT I BELIEVE WHAT HE IS SAYING IS LOOK, WE'LL PUT HIM ON,

03:44 12 BUT WE'LL LIMIT HIS TESTIMONY TO MS. BUBBLES RATHER THAN HAVE --

03:44 13 IF HE CAN'T GIVE THESE NEW OPINIONS ON AEROPOSTALE.

03:44 14      THE COURT:  IT'S TOO LATE FOR THE SUPPLEMENTAL REPORT.

03:44 15 SUPPLEMENTAL REPORT IS NOT GOING TO COME IN.  HE CAN TESTIFY.  HE

03:44 16 CAN PUT HIM ON, WHO WANTS TO PUT HIM ON.  HE CAN BE

03:44 17 CROSS-EXAMINED.  HIS DIRECT TESTIMONY WILL HAVE TO BE BASED ON THE

03:44 18 REPORT THAT HE ORIGINALLY FILED AND THEN YOU GUYS CAN TEAR HIM

03:44 19 APART AS YOU WISH.

03:44 20      MR. DONIGER:  FAIR ENOUGH.  MAY I RESPOND TO ONE OTHER

03:44 21 THING?

03:44 22      THE COURT:  UM-HMM.

03:44 23      MR. DONIGER:  THANK YOU.  WE HAVE PREPARED THIS CASE

03:44 24 FROM THE TIME OF DESIGNATING EXPERTS THROUGH NOW ON THE

03:44 25 UNDERSTANDING THAT THERE WAS NO DULY DESIGNATED EXPERT ON

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:44  1  APPORTIONMENT.  I HAVE REMAINED A BIT UNCLEAR AS TO THE LIMITS

03:45  2  THAT MS. SWORD WILL BE ALLOWED TO TESTIFY, AND I AM CONCERNED THAT

03:45  3  WE WERE EFFECTIVELY DEPRIVED OF THE OPPORTUNITY TO DESIGNATE OUR

03:45  4  OWN WITNESS ON THE QUESTION OF WHY CONSUMERS BUY PRODUCTS.

03:45  5          IN LIGHT OF WHAT HAS TRANSPIRED HERE TODAY, I WOULD ASK

03:45  6  THE COURT TO GIVE US AT LEAST UNTIL 9:00 A.M. ON TUESDAY MORNING,

03:45  7  GIVEN THAT MONDAY IS A HOLIDAY, TO PROVIDE A REPORT TO THE OTHER

03:45  8  SIDE ON THIS LIMITED QUESTION OF WHY CONSUMERS BUY PRODUCTS SO

03:45  9  THAT WE ARE NOT PREJUDICED BY WHAT HAS TRANSPIRED.

03:45 10          THE COURT:  YOU WANT TO PUT IN AN EXPERT?

03:45 11          MR. DONIGER:  YES.  WELL, SOMEONE WHO CAN ADDRESS THE

03:45 12  LAY QUESTION OF WHY CONSUMERS BUY PRODUCTS.  WE'RE IN THE --

03:45 13          THE COURT:  DID YOU HEAR MY QUESTION?

03:45 14          MR. DONIGER:  YES.  IT WOULD HAVE TO BE AN EXPERT

03:45 15  BECAUSE IT'S NOT A PERCIPIENT WITNESS.  YES.

03:46 16          THE COURT:  I DON'T HAVE A PROBLEM WITH DOING THAT.  IF

03:46 17  YOU DO THAT, WE'LL HAVE TO RECONSIDER WHETHER WE DESIGNATE

03:46 18  MS. SWORD AS AN EXPERT.  IF YOU WANT AN EXPERT, THEN THEY GET AN

03:46 19  EXPERT, TOO.

03:46 20          MR. DONIGER:  IF I HAD ANY CLARITY OVER WHERE THE LINE

03:46 21  WAS BETWEEN HER TESTIMONY SHE COULD GIVE AS A PERCIPIENT --

03:46 22  MS. SWORD I'M TALKING ABOUT --

03:46 23          THE COURT:  THIS IS NOT ROCKET SCIENCE.  IT'S TRIAL.

03:46 24  STUFF HAPPENS IN TRIAL AND IT'S UNPREDICTABLE.  IT'S LIKE WAR.  SO

03:46 25  TRY TO MANAGE IT.  BUT I THINK ESSENTIALLY IF IT'S IN THAT

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:46  1  DECLARATION, THEN IT'S FAIR GAME FOR THEM TO TESTIFY TO.  WHERE

03:46  2  THE LINE IS GOING TO BE DRAWN, I CAN'T TELL YOU.  IT'S LIKE TO

03:46  3  PREDICT WATERLOO BEFORE THE BATTLE.  I DON'T KNOW.

03:47  4        MR. DONIGER:  WILL YOU GIVE ME A QUICK MOMENT TO CONFER

03:47  5  WITH MY COLLEAGUE?

03:47  6        THE COURT:  SURE.  NO PROBLEM.

03:47  7           (COUNSEL CONFER)

03:47  8        MR. DONIGER:  BASED ON THE STRONG OPINION OF MY

03:47  9  COLLEAGUE, I'LL WITHDRAW THE REQUEST AND JUST MOVE FORWARD AS IS.

03:48 10  WE CERTAINLY DON'T WANT TO COMPLICATE THIS MORE THAN NEED BE.

03:48 11        THE COURT:  OKAY.

03:48 12        MR. BASKIN:  THE ISSUE OF DISCLOSURES EARLIER, MY

03:48 13  COLLEAGUE ROBERT COLLINS SPOKE TO IT WITH RESPECT TO --

03:48 14        THE COURT:  YOU ARE MR. BASKIN?

03:48 15        MR. BASKIN:  YES.

03:48 16        THE COURT:  I'M TRYING TO GET THE FACES AND THE NAMES.

03:48 17        MR. BASKIN:  THERE HAS BEEN A LOT OF DISCUSSION TODAY

03:48 18  ABOUT DISCLOSURES AFTER THE CLOSE OF DISCOVERY, AFTER EXPERT

03:48 19  DISCOVERY CUTOFF IN VIOLATION OF JUDGE WALTER'S ORDER.  I THINK

03:48 20  IT'S IMPORTANT FOR THE COURT TO KNOW, AND FOR US ALL TO BE AWARE

03:48 21  OF AS WE PROCEED WITH THIS CASE, THAT THE REGISTRATION AT ISSUE IN

03:48 22  THIS CASE WAS WITHDRAWN BY THE PLAINTIFFS AFTER THE CLOSE OF

03:48 23  DISCOVERY IN THIS CASE.  AND THAT IF THE DISCOVERY -- IF EVERYBODY

03:48 24  IS BOUND TO THE -- BASICALLY THE STATE OF AFFAIRS AT THE CLOSE OF

03:49 25  DISCOVERY, THERE WAS, AT THAT TIME, AN UNPUBLISHED DESIGN WHICH

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:49  1   WAS SWITCHED OVER TO A PUBLISHED DESIGN THAT INCLUDED A SERIES OF

03:49  2   DESIGNS, SOME OF WHICH WERE PUBLISHED AND SOME OF WHICH WERE

03:49  3   UNPUBLISHED.

03:49  4            AND WHAT HAPPENED WAS THAT WHEN JUDGE PREGERSON IN THE

03:49  5   OTHER CASE RULED ON SUMMARY JUDGMENT -- AND THE OTHER CASE THAT'S

03:49  6   BEFORE JUDGE PREGERSON CONCERNS A PUBLISHED COLLECTION AS OPPOSED

03:49  7   TO UNPUBLISHED COLLECTION IN THIS CASE -- WHEN JUDGE PREGERSON

03:49  8   RULED ON MAY 5 THAT SINGLE-UNIT PUBLICATION WAS GROUNDS TO

03:49  9   INVALIDATE A REGISTRATION AND GRANTED SUMMARY JUDGMENT TO THE

03:49 10   DEFENDANTS, L.A. PRINTEX, THROUGH ITS COUNSEL MR. BURROUGHS -- ONE

03:49 11   OF THE REASONS WHY WE BROUGHT THE -- SERVED THOSE SUBPOENAS --

03:49 12   ENGAGED IN A SERIES OF POST-DISCOVERY COMMUNICATIONS WITH THE

03:50 13   COPYRIGHT OFFICE, SOME OF WHICH WERE REDACTED DESPITE THE FACT

03:50 14   THAT THEY WERE COMMUNICATIONS TO THE COPYRIGHT OFFICE.  WE

03:50 15   REQUESTED TO SEE THOSE COMMUNICATIONS AGAIN AFTER CLOSE OF

03:50 16   DISCOVERY, BUT CLEARLY PERTINENT TO THE DESIGN, THE REGISTRATION

03:50 17   AT ISSUE HERE.  THEY WERE ONLY PROVIDED WITH THE REDACTIONS.

03:50 18            THE PURPOSE OF THE SUBPOENA TO HAVE MR. BURROUGHS

03:50 19   TESTIFY -- MR. BURROUGHS WAS CC'D ON SOME OF THESE E-MAILS.  SOME

03:50 20   OF THESE CONVERSATIONS HE ACTUALLY HAD ON THE PHONE BASED ON

03:50 21   DECLARATIONS IN THE SUMMARY JUDGMENT RECORD IN THIS CASE WERE NOT

03:50 22   BY HIS CLIENT WITH THE COPYRIGHT OFFICE.  IN FACT, HIS CLIENT,

03:50 23   WHEN HE WAS DEPOSED, SAID THE COUNSEL HANDLED IT.  AND HE WAS

03:50 24   INSTRUCTED NOT TO ANSWER ON THESE POST-DISCOVERY, IN A SENSE,

03:50 25   COMMUNICATIONS WITH THE COPYRIGHT OFFICE.

03:50  1          AND THE IMPORT OF THAT IS AT THE TIME DISCOVERY CLOSED,

03:50  2   THE REGISTRATION HAD BEEN ALTERED FROM THE ORIGINAL FROM AN

03:51  3   UNPUBLISHED REGISTRATION TO A PUBLISHED REGISTRATION.  AND IF THEY

03:51  4   WOULD LIKE TO PROCEED WITH THE PUBLISHED REGISTRATION, THAT IS ALL

03:51  5   RIGHT.

03:51  6          BUT THE ISSUES HERE ARE SO IMPORTANT WITH RESPECT TO

03:51  7   THAT INFORMATION, THAT WE WOULD LIKE TO MAKE AN ORAL MOTION RIGHT

03:51  8   NOW, RIGHT HERE, TO ALLOW THOSE WITNESSES TO TESTIFY; ALLOW THE

03:51  9   SUBPOENAED WITNESSES, WHETHER IT BE MR. BURROUGHS OR MS. YEH AND

03:51 10   MR. ISAACS, AND THE REASON FOR MR. ISAACS AGAIN, WE UNDERSTAND IT

03:51 11   WAS AFTER THE CLOSE OF DISCOVERY, BUT THIS OTHER CONDUCT OCCURRED

03:51 12   THAT E-MAILS -- SOME OF THE E-MAILS, REDACTED E-MAILS ARE FROM

03:51 13   LATE JUNE, 2010.  AND THE CHANGING OF THE PATTERN FROM A PUBLISHED

03:51 14   DESIGN TO AN UNPUBLISHED DESIGN OCCURRED WHILE THEY WERE IN

03:52 15   NEGOTIATION FOR A SETTLEMENT AGREEMENT.

03:52 16          MR. ISAACS WAS OPPOSING COUNSEL ON THOSE NEGOTIATIONS

03:52 17   FOR THE COMPANY THAT THEY HAD BEEN SUING.  AND THEY OBTAINED A

03:52 18   SETTLEMENT ON MAY 18, 2010, FIVE DAYS AFTER THEY WITHDREW THE

03:52 19   REGISTRATION CONTAINING THE DESIGN THAT THEY SUPPOSEDLY HAD JUST

03:52 20   SETTLED ON AND THAT THEY HAD SUED ON IN THE FIRST PLACE.

03:52 21          SO, WHAT WE BELIEVE IS THIS CONDUCT IS TANTAMOUNT TO

03:52 22   FRAUD ON THE COPYRIGHT OFFICE, TO UNCLEAN HANDS.  AND THAT IS A

03:52 23   DEFENSE THAT'S BEEN ASSERTED IN THIS CASE.  IT WAS AN ISSUE THAT

03:52 24   WAS BRIEFED IN THE SUMMARY JUDGMENT RECORD AT LENGTH.  AND IT IS

03:52 25   AN ISSUE THAT WAS NOT RULED UPON TO A GREAT DEAL BY JUDGE WALTER,

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:52  1    BECAUSE JUDGE WALTER FOUND HIS HOLDING PRIMARILY TURNED ON

03:52  2    SUBSTANTIAL SIMILARITY ISSUES.

03:52  3        SO, IT'S NOT -- THESE ARE NOT SURPRISING ISSUES, YET,

03:53  4    THEY WERE ON THE WITNESS LIST.  BUT THESE ARE ISSUES THAT ARE

03:53  5    WELL-KNOWN TO COUNSEL AND COUNSEL IS THE ONE WHO IS INVOLVED IN

03:53  6    IT.

03:53  7        THE COURT:  WHEN WAS THE WITNESS LIST DISCLOSED?

03:53  8        MR. BASKIN:  THE WITNESSES IN THIS CASE, I BELIEVE THE

03:53  9    DISCLOSURES, THE FILINGS WAS WERE MADE ON OCTOBER 18, 2012.

03:53 10        THE COURT:  AND IF I HAVE MY CHRONOLOGY RIGHT, 2012 CAME

03:53 11    AFTER 2010.

03:53 12        MR. BASKIN:  YES, YOUR HONOR.

03:53 13        THE COURT:  TWO YEARS MAYBE?

03:53 14        MR. BASKIN:  YES.

03:53 15        THE COURT:  SO WHAT KEPT YOU FROM DESIGNATING THEM IN

03:53 16    2012?  YOU KNEW ALL THIS.  YOU KNEW MR. ISAACS' PARTICIPATION IN

03:53 17    THE SETTLEMENT.  YOU KNEW ABOUT MR. BURROUGHS.  YOU KNEW ABOUT

03:53 18    MS. YEH.  WE'RE NOW TALKING ABOUT THREE MONTHS AGO MAYBE.  YOU

03:54 19    KNEW ABOUT THIS FOR A YEAR, YEAR AND A HALF BEFORE THAT AND YOU --

03:54 20    I MEAN, IT'S NOT A QUESTION OF SIMPLY REOPENING DISCOVERY.  THERE

03:54 21    IS THAT QUESTION.  BUT THERE IS ALSO THE WITNESS LIST, AND THE

03:54 22    WITNESS LIST YOU PUT IN THREE MONTHS AGO.

03:54 23        SO WHAT SEEMED TO BE PERFECTLY CLEAR TO YOU TODAY WAS

03:54 24    NOT SO CLEAR TO YOU THREE MONTHS AGO; RIGHT?

03:54 25        MR. BASKIN:  THE ANSWER IS YES AND NO TO THAT.  THE

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:54 1  ISSUE WITH RESPECT TO MR. ISAACS AND THE SETTLEMENT AGREEMENT AT

03:54 2  ISSUE THERE WAS SOMETHING THAT WAS RAISED BEFORE.  WE DID NOT

03:54 3  BELIEVE THAT -- SINCE DISCOVERY HAD CLOSED, WE THOUGHT WE WERE

03:54 4  PRECLUDED.  THERE WERE LOTS OF THINGS WE WERE PRECLUDED FROM DOING

03:54 5  BECAUSE DISCOVERY HAD CLOSED, SUCH AS PUSHING TO OBTAIN THE TERMS

03:54 6  OF THE CONFIDENTIAL SETTLEMENT AGREEMENT THAT MR. ISAACS IS HAPPY

03:54 7  TO DISCLOSE, BUT L.A. PRINTEX OR MR. BURROUGHS ARE NOT WILLING TO

03:55 8  MAKE PUBLIC, OR AT LEAST FOR PURPOSES OF THIS LITIGATION.

03:55 9       THE COURT:  YOU CAN ALWAYS MOVE TO REOPEN DISCOVERY IN

03:55 10  LIGHT OF INTERVENING EVENTS.  IF I HEAR ABOUT IT THREE MONTHS

03:55 11  BEFORE TRIAL, THERE IS LOTS OF STUFF YOU CAN DO.  BUT A LONG

03:55 12  THREE-DAY WEEKEND BEFORE TRIAL IS VERY LATE TO BE DOING THIS.  I

03:55 13  MEAN, IF YOU HAD RAISED THIS ISSUE WHEN YOU FILED YOUR WITNESS

03:55 14  LIST, I DON'T KNOW, WE COULD HAVE REOPENED DISCOVERY.  ALL SORTS

03:55 15  OF THINGS COULD HAVE HAPPENED AT THAT POINT.

03:55 16       MR. BASKIN:  WITH JUDGE WALTER WE HAD MOVED TO REOPEN

03:55 17  DISCOVERY ON A RELATED ISSUE AND IT WAS DENIED.  BUT THE ISSUE

03:55 18  WITH RESPECT TO THE AUTHENTICATION OF THESE E-MAILS, MR. BURROUGHS

03:55 19  WILL BE IN COURT TO AUTHENTICATE THOSE E-MAILS.

03:55 20       THE COURT:  THESE ARE E-MAILS BETWEEN WHOM AND WHOM?

03:55 21       MR. BASKIN:  MR. BURROUGHS -- MS. YEH AND MR. BURROUGHS

03:55 22  AND THE COPYRIGHT OFFICE.

03:56 23       THE COURT:  LET ME MAKE SURE I UNDERSTAND.  MR.

03:56 24  BURROUGHS, YOU NEED MR. BURROUGHS TO AUTHENTICATE CERTAIN E-MAILS

03:56 25  BETWEEN THEIR LAWYERS AND THE COPYRIGHT OFFICE?

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:56  1          MR. BASKIN:  YES.  THAT WERE PRODUCED TO US.  THEY WERE

03:56  2  DISCLOSED AFTER THE CLOSE OF DISCOVERY, BUT WERE BATES STAMPED AND

03:56  3  PRODUCED AND SAID THIS IS THE BACKUP ON OUR CHANGING OF THE

03:56  4  REGISTRATION.  AND YOUR HONOR HAS ALREADY RULED THAT, IN THE

03:56  5  RECENT RULING AFTER SUPPLEMENTAL BRIEFING ON THE ITERATION OF THE

03:56  6  DESIGN, THAT THE VARIOUS ITERATION OF THE DESIGN AND THE EVIDENCE

03:56  7  COME IN FROM BOTH SIDES ON THAT.

03:56  8          THE COURT:  WHAT ELSE?  WHAT DO YOU NEED MR. ISAACS FOR?

03:56  9          MR. BASKIN:  MR. ISAACS IS RELATED TO THE STONY APPAREL

03:56 10  SETTLEMENT ISSUE.  AND JUST TO BE CLEAR, THE COMPLAINT IN THAT

03:56 11  MATTER IS ON THE WITNESS LIST -- IS ON THE EXHIBIT LIST.  SO STONY

03:57 12  APPAREL ISSUES WERE ON THE ORIGINAL EXHIBIT LIST THAT WAS FILED ON

03:57 13  OCTOBER 18.  THE FACT THAT WE WOULD BE SEEKING TO RAISE THAT ISSUE

03:57 14  WAS KNOWN BOTH DURING THE TIME OF SUMMARY JUDGMENT AND DURING THE

03:57 15  FILINGS BACK ON OCTOBER 18.

03:57 16          ALL THAT WE'RE SEEKING TO DO NOW IN ADDITION TO THE

03:57 17  COMPLAINT WHICH DISCUSSES THE FACT THAT THE REGISTRATION AT ISSUE

03:57 18  IN THIS CASE -- ALBEIT A DIFFERENT DESIGN -- BUT THAT THE

03:57 19  REGISTRATION AT ISSUE WAS AT ISSUE IN THAT CASE, WERE VERY WELL

03:57 20  KNOWN.

03:57 21          THE ONLY NEW MATTER IS WANTING TO SEE THE TERMS OF A

03:57 22  CONFIDENTIAL SETTLEMENT AGREEMENT WHICH IS PERTINENT TO THE

03:57 23  DEFENSE THAT WE HAVE OF FRAUD ON THE COPYRIGHT OFFICE, UNCLEAN

03:57 24  HANDS, BECAUSE IT IMPLICATES -- THE TIMING IS HIGHLY SUSPICIOUS

03:57 25  BASED UPON THE JUDGE PREGERSON ORDER AND THE UNPUBLISHED VERSUS

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

03:57  1  PUBLISHED ISSUE.  AND IT ALSO IMPLICATES THE FACT THAT THERE WAS

03:58  2  NOTHING IN THOSE E-MAILS THAT WE SAW WITH THE COPYRIGHT OFFICE,

03:58  3  WHEN THEY WERE WITHDRAWING THIS DESIGN, THAT IN ANY WAY EXPLAINED,

03:58  4  BY THE WAY, WE ALSO ARE SUING ON THE SAME REGISTRATION WE ARE

03:58  5  WITHDRAWING, IS THAT OKAY.  IF WE WITHDRAW IT NOW, IS IT STILL

03:58  6  PROPER TO PROCEED, BECAUSE IN ORDER TO PROCEED ON A LAWSUIT ON A

03:58  7  REGISTERED DESIGN THERE NEEDS TO BE --

03:58  8         MR. COLLINS:  YOUR HONOR, COULD WE HAVE A COUPLE MINUTES

03:58  9  TO CONVENE ABOUT THIS ISSUE?

03:58 10         THE COURT:  SURE.

03:58 11             (COUNSEL CONFER)

03:58 12         MR. BURROUGHS:  MAY I ADDRESS ANOTHER REAL BRIEF ISSUE?

03:59 13         MR. COLLINS:  YOUR HONOR, I JUST WANT TO ADDRESS A

03:59 14  COUPLE OF ISSUES RAISED BY MR. BURROUGHS AND MR. BASKIN.

03:59 15         THE ISSUE IS THIS:  THE STONY APPAREL MATTER INVOLVED A

03:59 16  DESIGN THAT WAS PART OF THE ORIGINAL REGISTRATION THAT'S AT ISSUE

03:59 17  IN THIS CASE.  THE DESIGN AT ISSUE WAS DESIGN C30011.  IT TURNED

03:59 18  OUT IN DISCOVERY IN OUR MATTER THAT THAT DESIGN HAD BEEN

03:59 19  PUBLISHED, E.G., SOLD PRIOR TO THE REGISTRATION DATE.  SO THE '306

03:59 20  REGISTRATION INCLUDING A COLLECTION OF PUBLISHED AND UNPUBLISHED

03:59 21  DESIGNS.

03:59 22         WHAT MR. BASKIN WAS REFERRING TO WAS THEIR INITIAL

03:59 23  EFFORT TO AMEND THE REGISTRATION WHEN THEY FOUND OUT IT WAS

04:00 24  PUBLISHED BY CHANGING THE PUBLICATION DATE, AND ALSO NOT RELEVANT

04:00 25  FOR PURPOSES OF OUR DISCUSSION, IDENTIFYING AS A WORK MADE FOR

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

04:00  1    HIRE.

04:00  2           WHEN WE WERE VICTORIOUS IN OUR MATTER BEFORE JUDGE

04:00  3    PREGERSON, THEY REALIZED THAT THEY COULDN'T CHANGE IT TO A

04:00  4    PUBLISHED WORK BECAUSE THEY HAD NOT PUBLISHED THEM ALL IN A SINGLE

04:00  5    UNIT AS IS REQUIRED IN THE CFR.  SO THEY INSTEAD RETAINED THEM AS

04:00  6    A NON-PUBLISHED WORK, BUT SET OUT TO REMOVE THE TWO DESIGNS THAT

04:00  7    HAD BEEN PREVIOUSLY PUBLISHED, OUR 1154 AND C30011.

04:00  8           THE TIME FRAME THAT MR. BASKIN WAS REFERRING TO IS THE

04:00  9    DAY THAT THEY SUBMITTED -- THE THURSDAY, MAY 13, 2010, THEY

04:00 10    SUBMITTED A REQUEST FOR SPECIAL HANDLING OF THE COPYRIGHT OFFICE

04:00 11    AND SAY C30011 AND OUR 1154 NEED TO BE REMOVED FROM THE

04:00 12    REGISTRATION BECAUSE THEY WERE ERRONEOUSLY INCLUDED IN THIS GROUP.

04:00 13    THE SUBSEQUENT TUESDAY, THEY SETTLED THE MATTER WITH THE STONY

04:01 14    APPAREL DEFENDANTS WHO WERE REPRESENTED BY MR. ISAACS SUGGESTING

04:01 15    AND, IN FACT, ENFORCING THE REGISTRATION THAT THAT INCLUDED.

04:01 16           SO ON THE ONE HAND THEY'RE REPRESENTING TO THE COPYRIGHT

04:01 17    OFFICE WE HAVE ERRONEOUSLY-INCLUDED DESIGNS, PLEASE ALLOW THEM TO

04:01 18    REMOVE THEM BECAUSE 37 CFR 201.5 ALLOWS THEM TO CORRECT

04:01 19    INADVERTENT MISTAKES IN THEIR REGISTRATION.  SO THAT'S WHAT

04:01 20    THEY'RE SETTING OUT TO DO.

04:01 21           BUT AT THE SAME TIME, WHAT THEY'VE NEGLECTED TO TELL THE

04:01 22    COPYRIGHT OFFICE, WE WOULD SUBMIT WHAT THEY PURPOSELY DON'T TELL

04:01 23    THE COPYRIGHT OFFICE, IS THAT THEY'RE IN THE MIDST OF ENFORCING

04:01 24    THE REGISTRATION, WITH THAT DESIGN INCLUDED IN IT, LITERALLY FIVE

04:01 25    DAYS APART.

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

04:01  1          AND SO YOUR HONOR ASKED WHY DO WE NEED MR. ISAACS.

04:01  2   MR. ISAACS, AS IS SET FORTH IN OUR PAPERS, IS GOING TO

04:01  3   AUTHENTICATE DOCUMENTS.  PERHAPS HE'LL SERVE AS A REBUTTAL WITNESS

04:02  4   WHO IS NOT REQUIRED TO BE DISCLOSED ON THE WITNESS LIST FOR OTHER

04:02  5   ISSUES, WE'RE NOT SURE.

04:02  6          BUT THAT'S THE EXTENT OF HIS TESTIMONY, TO AUTHENTICATE

04:02  7   THE SETTLEMENT AGREEMENT THAT WAS ENTERED INTO WHICH WE UNDERSTOOD

04:02  8   INCLUDED A MONETARY COMPONENT, ALTHOUGH WE CAN'T BE SURE BECAUSE

04:02  9   WE HAVE ASKED FOR IT FROM DEFENDANT, EX PARTE PLAINTIFF, AND IT'S

04:02 10   NOT BEEN PRODUCED ON THE GROUNDS OF CONFIDENTIALITY I BELIEVE.

04:02 11   AND MR. ISAACS IS COOPERATIVE AND PREPARED TO SHOW UP WITH IT AND

04:02 12   TO AUTHENTICATE DOCUMENTS AS NECESSARY AND TO ALLOW US TO USE THE

04:02 13   DOCUMENT IF YOUR HONOR WILL SO ALLOW.

04:02 14          BUT I THINK THAT'S THE TIME FRAME THAT --

04:02 15          THE COURT:  WHAT BEARING DOES THE SETTLEMENT AGREEMENT

04:02 16   HAVE ON THE APPLICATION?  WHAT IS THE CONNECTION THERE?

04:02 17          MR. COLLINS:  WELL, L.A. PRINTEX IS TAKING SIMULTANEOUS

04:02 18   CONTRADICTORY POSITIONS ON THE VALIDITY OF ITS REGISTRATION.  IT'S

04:02 19   TELLING THE STONY APPAREL DEFENDANTS, WE HAVE A VALID

04:02 20   REGISTRATION; WE WANT YOU TO PAY US; YOU INFRINGED OUR C30011

04:03 21   DESIGN WHILE LITERALLY SIMULTANEOUSLY INFORMING THE COPYRIGHT

04:03 22   OFFICE ALL WITHIN A FIVE-DAY PERIOD.

04:03 23          OBVIOUSLY, THEY WERE IN SETTLEMENT NEGOTIATIONS WITH THE

04:03 24   STONY APPAREL DEFENDANTS WHEN THEY MADE THEIR REPRESENTATION TO

04:03 25   THE COPYRIGHT OFFICE.  SETTLEMENT AGREEMENTS DON'T HAPPEN IN THE

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

04:03 1  COURSE OF A DAY, BUT THEY'RE SIMULTANEOUSLY TELLING THE COPYRIGHT

04:03 2  OFFICE, THIS WAS ERRONEOUSLY INCLUDED.  WE DON'T WANT IT IN THERE.

04:03 3  WE WANT IT TAKEN OUT.

04:03 4       AND THEY NEED TO MAKE THAT REPRESENTATION BECAUSE 201.5

04:03 5  OF THE CODE OF FEDERAL REGULATIONS TITLE 37 PERMITS CHANGES TO

04:03 6  REGISTRATIONS WHEN THEY'RE INADVERTENT MISTAKES.  WHAT THEY DON'T

04:03 7  ALLOW IS FOR YOU TO MISREPRESENT TO THE COPYRIGHT OFFICE THAT YOU

04:03 8  ARE IN THE MIDST OF ENFORCING THAT REGISTRATION AGAINST SOMEBODY

04:03 9  ELSE.  IT'S AN INCONSISTENT STATEMENT.  THEY SHOULD BE ESTOPPED

04:03 10  FROM TAKING CONTRADICTORY POSITIONS ON THE VALIDITY OF THE

04:03 11  REGISTRATION IN ORDER TO ADVANCE LITIGATION GOALS IN TWO DIFFERENT

04:03 12  LAWSUITS.

04:03 13       THE COURT:  I CAN SEE WHERE STONY APPAREL PEOPLE MIGHT

04:04 14  HAVE A BEEF.  WHAT GOOD DOES THIS DO YOU?

04:04 15       MR. COLLINS:  WELL, YOUR HONOR, THERE IS NO PROVISION

04:04 16  FOR REGISTRATION OF A COLLECTION OF UNPUBLISHED AND PUBLISHED

04:04 17  DESIGNS.  THAT'S WHAT THEY HAD.  THAT'S WHY THEY SET OUT TO SUBMIT

04:04 18  THE FORM C.A., TO CORRECT THE REGISTRATION.

04:04 19       THE COURT:  WELL, THEY WITHDREW IT.  FINE.  SO THEY GOT

04:04 20  A SETTLEMENT WITH ANOTHER PARTY.  WHAT BEARING DOES THAT HAVE?

04:04 21       MR. COLLINS:  BECAUSE THEY WERE ONLY ABLE TO PRESERVE

04:04 22  THE VALIDITY OF THEIR REGISTRATION THROUGH A FRAUDULENT

04:04 23  MISREPRESENTATION, WE WOULD SUBMIT, TO THE COPYRIGHT OFFICE.

04:04 24       THE COURT:  WHERE IS THE FRAUD?

04:04 25       MR. COLLINS:  THE FRAUD IS THIS IS ERRONEOUSLY INCLUDED

                    CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

04:04  1    WHEN WE ARE AT THE SAME TIME ENFORCING IT AGAINST A THIRD PARTY.

04:04  2            THE COURT:  I DON'T SEE ANY INCONSISTENCY OR EVEN WHERE

04:04  3    THERE IS FRAUD THERE.

04:04  4            MR. COLLINS:  WELL, CERTAINLY, YOUR HONOR, IT'S A

04:04  5    MATERIAL FACT THAT THE COPYRIGHT OFFICE SHOULD BE APPRISED OF.  IS

04:04  6    IT TRULY ERRONEOUSLY INCLUDED IF THERE IS NO ONE ENFORCING IT AND

04:04  7    IT'S A VALID REGISTRATION AGAINST A THIRD PARTY?  WOULD THE

04:05  8    COPYRIGHT OFFICE HAVE ALLOWED THEM TO REMOVE SOMETHING -- WOULD

04:05  9    THEY HAVE CLASSIFIED SOMETHING AS AN INADVERTENT MISTAKE AND

04:05 10    REMOVED IT?

04:05 11            THE COURT:  DO YOU HAVE ANY AUTHORITY SAYING THAT YOU

04:05 12    HAVE TO DISCLOSE TO THE COPYRIGHT OFFICE ANY ENFORCEMENT ACTION

04:05 13    YOU HAVE GOT GOING?

04:05 14            MR. COLLINS:  THE AUTHORITY IS SECTION 37 CFR 201.5

04:05 15    WHICH ALLOWS FOR CORRECTION OF INADVERTENT MISTAKES.

04:05 16            THE COURT:  SO YOU SAY THIS IS PROOF THAT THIS WAS NOT

04:05 17    INADVERTENT?

04:05 18            MR. COLLINS:  THAT'S CORRECT.  WE THINK THAT THE

04:05 19    EVIDENCE SO SHOWS.

04:05 20            THE COURT:  YOU ARE FISHING.  YOU ARE FISHING.  THIS IS

04:05 21    POSSIBLY SOMETHING THAT YOU MIGHT HAVE TAKEN UP DURING DISCOVERY,

04:05 22    AND HAD YOU MOVED TO REOPEN DISCOVERY, YOU MIGHT HAVE HAD A

04:05 23    QUESTION ABOUT POSSIBLE INCONSISTENCY.  BUT I DON'T SEE IT.

04:05 24            MR. COLLINS:  THE ISSUE IS THIS, YOUR HONOR:  THIS WAS

04:05 25    NOT DISCLOSED TO US UNTIL VERY, VERY LATE IN MAY.  AND AS MR.

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

04:05  1    BASKIN REFERRED TO THE COMMUNICATION --

04:05  2             THE COURT:  MAY?

04:05  3             MR. COLLINS:  MAY OF 2010.

04:05  4             THE COURT:  YOU MEAN TWO YEARS AGO?

04:05  5             MR. COLLINS:  BUT THE COMMUNICATIONS WITH THE COPYRIGHT

04:06  6    OFFICE, WHICH ARE HEAVILY REDACTED FOR WHICH THEY PRECLUDED THEIR

04:06  7    CLIENT FROM ANSWERING ANY QUESTIONS, WERE PRODUCED AFTER THE CLOSE

04:06  8    OF DISCOVERY.  AND WE UNDERTOOK EFFORTS, YOUR HONOR --

04:06  9             THE COURT:  THE WAY THINGS WORK IS IF STUFF COMES IN

04:06 10    AFTER THE DISCOVERY PERIOD CLOSES, YOU MOVE TO REOPEN DISCOVERY

04:06 11    AND YOU SAY, HEY, LOOK, HERE IS THE STUFF I THINK IS RELEVANT THAT

04:06 12    HAPPENED SINCE THEN.  WE WOULD LIKE TO REOPEN DISCOVERY.

04:06 13             THIS HAPPENED TWO YEARS AGO, CLOSE TO TWO YEARS AGO.

04:06 14    YOU DIDN'T REOPEN IT.  POSSIBLY IF YOU HAD REOPENED DISCOVERY YOU

04:06 15    COULD HAVE BEEN ABLE TO FISH SOMETHING OUT OF THIS THAT'S USEFUL.

04:06 16             MR. COLLINS:  YOUR HONOR, I WOULD SUBMIT THERE IS

04:06 17    NOTHING TO FISH OUT.  THE DOCUMENTS THAT WE HAVE, HAVE BEEN

04:06 18    PRODUCED IN DISCOVERY.  SAME FOR THE SETTLEMENT AGREEMENT IN THE

04:06 19    STONY APPAREL MATTER ARE BEFORE THE COURT.  WE NEED MR. BURROUGHS

04:06 20    TO AUTHENTICATE THE DOCUMENTS AS YOUR HONOR INDICATED BECAUSE HE

04:06 21    IS PRECLUDED AS A CLIENT.

04:06 22             THE COURT:  I'M NOT EVEN SURE THEY'RE RELEVANT.  YOU

04:07 23    HAVEN'T PROVIDED ME ANY AUTHORITY THAT SUGGESTS WHAT THEY DID IS

04:07 24    IN ANY SENSE A MISREPRESENTATION OR A FRAUD ON THE COPYRIGHT

04:07 25    OFFICE.  IT DOESN'T SEEM SELF-EVIDENT TO ME.

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

04:07  1          THEY HAVE AN APPLICATION.  THEY MOVED TO AMEND IT AND

04:07  2   THEY ARE ENFORCING IT.  MAYBE THEY'RE NOT ENTITLED TO ENFORCE IT.

04:07  3   I DON'T KNOW.  I KNOW YOU HAVEN'T PRESENTED ANYTHING THAT'S, PER

04:07  4   SE, FRAUD ON THE COPYRIGHT OFFICE.

04:07  5          MR. COLLINS:  TO MAKE A SIMULTANEOUS -- TO TAKE

04:07  6   SIMULTANEOUS CONTRADICTORY POSITIONS ON THE VALIDITY OF THE

04:07  7   REGISTRATION WE THINK SPEAKS FOR ITSELF, YOUR HONOR.

04:07  8          AND WE BASICALLY -- THE INTENT OF OUR EXAMINATION IS TO

04:07  9   ASK L.A. PRINTEX, HOW CAN YOU TAKE A CONTRADICTORY POSITION LIKE

04:07  10  THAT TO MAINTAIN THE VALIDITY OF YOUR REGISTRATION IN THIS MATTER?

04:07  11         THE COURT:  I'M GOING TO DENY IT.  I'M GOING TO STRIKE

04:08  12  THE SUBPOENA.  THIS IS AN ENTIRELY COLLATERAL FISHING EXPEDITION.

04:08  13  UNLESS YOU HAD DEVELOPED IT DURING DISCOVERY, MAYBE YOU WOULD HAVE

04:08  14  GOTTEN SOMETHING, BUT THIS IS TRIAL.

04:08  15         MR. COLLINS:  IF I MAY, ONE OTHER THING, YOUR HONOR.

04:08  16  AGAIN, THIS INFORMATION WAS DISCLOSED TO US TOWARDS THE VERY, VERY

04:08  17  END OF DISCOVERY.  THESE LAST-MINUTE ALTERATIONS OF THEIR

04:08  18  REGISTRATION WERE TAKEN AT THE CLOSE OF DISCOVERY.  THE MATTER

04:08  19  WENT UP ON APPEAL.

04:08  20         THE COURT:  AND WHEN DID THAT HAPPEN?

04:08  21         MR. COLLINS:  MAY OF 2010.  WE UNDERTOOK EFFORTS TO

04:08  22  CONTACT MR. ISAACS TO GET MORE INFORMATION ABOUT THE EXTENT OF THE

04:08  23  SETTLEMENT WITH THE STONY APPAREL DEFENDANTS.  WE COULD NOT

04:08  24  CONTACT MR. ISAACS INITIALLY.  WE COULD NOT CONTACT, I BELIEVE HIS

04:08  25  NAME IS MR. BRUCE COHEN, WHO WAS ALSO SERVING ON THE MATTER.  IT

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

04:08  1  WASN'T UNTIL VERY RECENTLY AFTER THE IDENTIFICATION OF WITNESSES

04:08  2  THAT WE WERE ABLE TO SUCCESSFULLY REACH MR. ISAACS.

04:08  3         THE COURT:  WHEN WAS THAT?

04:08  4         MR. COLLINS:  I THINK WE INDICATED THAT WE DISCLOSED, OR

04:09  5  DISCLOSED WITNESSES ON OCTOBER 18, 2012.  WE WERE ONLY SUCCESSFUL

04:09  6  IN CONTACTING MR. ISAACS IN JANUARY.  AND WE IMMEDIATELY

04:09  7  SUBPOENAED HIM AND --

04:09  8         THE COURT:  WAS HE IN ZANZIBAR?

04:09  9         MR. COLLINS:  WE MADE MULTIPLE PHONE CALLS TO HIM, YOUR

04:09 10  HONOR.  I'M NOT SURE WHERE HE WAS.  I DIDN'T TAKE HIM TO TASK ON

04:09 11  WHERE HE HAD BEEN OR WHY HE HADN'T RETURNED MY PHONE CALLS, BUT

04:09 12  NONETHELESS, WE WERE UNABLE TO REACH HIM.

04:09 13         THE COURT:  WHEN YOU SAY YOU WERE UNABLE TO REACH HIM,

04:09 14  YOU MADE A BUNCH OF PHONE CALLS AND THAT WAS IT?

04:09 15         MR. COLLINS:  WELL --

04:09 16         THE COURT:  HAVE YOU HEARD OF INVESTIGATORS?  HAVE YOU

04:09 17  HEARD OF --

04:09 18         MR. COLLINS:  HE IS A LICENSED ATTORNEY IN CALIFORNIA.

04:09 19  WE WERE --

04:09 20         THE COURT:  DID YOU GO DOWN TO HIS OFFICE?

04:09 21         MR. COLLINS:  NO, YOUR HONOR.  NO WE DID NOT.

04:09 22         THE COURT:  DID YOU SEND SOMEONE DOWN TO HIS OFFICE?

04:09 23         MR. COLLINS:  WE WERE ULTIMATELY SUCCESSFUL IN DOING SO

04:09 24  AND WHICH IS WHY WE SUBPOENAED HIM.  UNFORTUNATELY, AFTER THE

04:09 25  WITNESS DISCLOSURE DATE.

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

04:09 1        THE COURT:  IF I WERE THAT LATE AND I WAS TRYING TO

04:09 2  REOPEN DISCOVERY, I WOULD BE DOWN IN HIS OFFICE PERSONALLY.

04:10 3  THAT'S WHAT I WOULD HAVE DONE.  AT LEAST SEND A TRUSTEE ASSOCIATE

04:10 4  OR HIRED AN INVESTIGATOR.  THAT'S HOW YOU TRACK HIM DOWN.  I

04:10 5  COULDN'T FIND SOMEONE WHO IS A LAWYER IN CALIFORNIA?  THAT'S

04:10 6  PRETTY POOR.  THIS IS REALLY -- YOU KNOW, YOU MUST BE DESPERATE TO

04:10 7  BE MAKING ARGUMENTS LIKE THAT.

04:10 8        MR. COLLINS:  IT'S WHAT OCCURRED, YOUR HONOR.  WE TRIED

04:10 9  TO REACH MR. ISAACS.

04:10 10        THE COURT:  I KNOW THIS IS WHAT OCCURRED.  IT DOESN'T

04:10 11  REFLECT TOO WELL ON YOUR DILIGENCE.  BUT YOU KNEW ABOUT THIS ISSUE

04:10 12  HOW FAR BACK?

04:10 13        MR. COLLINS:  AGAIN, THESE WERE --

04:10 14        THE COURT:  HOW FAR BACK?

04:10 15        MR. COLLINS:  WELL, I'D LIKE TO PUT IT IN CONTEXT, YOUR

04:10 16  HONOR.  THESE WERE COMMUNICATIONS WHICH WERE POST-DISCOVERY CUTOFF

04:10 17  AND DISCLOSED POST DISCOVERY.  AND THIS WAS I THINK -- EARLY JULY

04:10 18  OF 2010.

04:10 19        THE COURT:  OKAY.

04:10 20        MR. COLLINS:  SHORTLY BEFORE THE --

04:10 21        THE COURT:  LET'S SKIP OVER THE TIME THE CASE WAS BEFORE

04:11 22  THE COURT OF APPEALS WHEN WE KNEW WHAT WOULD HAPPEN.  WHEN DID THE

04:11 23  CASE COME BACK TO THE DISTRICT COURT?

04:11 24        MR. COLLINS:  I CAN'T PLACE THE EXACT DATE.  BUT AS MR.

04:11 25  BASKIN REFERENCED, WE DID UNDERTAKE EFFORTS TO REOPEN DISCOVERY ON

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

04:11 1   RELATED ISSUES, AND JUDGE WALTER DENIED THE REQUEST.  AND IT WAS

04:11 2   IN OR AROUND THAT TIME THAT WE TRIED TO MAKE -- ACTUALLY, I

04:11 3   BELIEVE THE -- I CAN'T REMEMBER THE PRECISE DATES THAT WE WERE

04:11 4   TRYING TO MAKE INITIAL CONTACT WITH MR. ISAACS, BUT IT WAS IN OR

04:11 5   AROUND THOSE DATES.

04:11 6          THE COURT:  TOO LITTLE TOO LATE.  I'M GOING TO STRIKE

04:11 7   THE SUBPOENA FOR MR. ISAACS.  IF YOU CAN GET HIM IN HERE, I'M NOT

04:11 8   LETTING HIM TESTIFY.  HE IS NOT ON THE WITNESS LIST.

04:11 9          MR. DONIGER:  MAY WE REQUEST AS PART OF YOUR ORDER THAT

04:11 10  THE DEFENDANT BE ORDERED BY THE CLOSE OF BUSINESS TO ADVISE THOSE

04:12 11  INDIVIDUALS THAT THE SUBPOENAS HAVE BEEN QUASHED SO THEY DON'T

04:12 12  NEED TO BE INCONVENIENCED ANY FURTHER?

04:12 13         THE COURT:  YOU CAN'T CALL THEM YOURSELF?

04:12 14         MR. DONIGER:  WE CAN.

04:12 15         MR. BURROUGHS:  YOUR HONOR, A SUBPOENA HAS THE FORCE OF

04:12 16  A COURT ORDER.  IF WE COULD GET AN ORDER QUASHING THE SUBPOENAS

04:12 17  TODAY SO WE CAN PROVIDE THAT TO THE THREE DEFENDANTS, THAT WOULD

04:12 18  BE VERY HELPFUL SO THEY WOULDN'T HAVE TO BE IN VIOLATION OF

04:12 19  POTENTIAL SUBPOENAS.

04:12 20         THE CLERK:  I CAN'T GET THEM AN ORDER TODAY.

04:12 21         MS. HOLLAND:  IF YOU ORDER -- IF THE SUBPOENAS ARE

04:12 22  INVALID, WE'LL CALL THE WITNESSES AND TELL THEM THEY DON'T HAVE TO

04:12 23  APPEAR AND WE'LL WITHDRAW THEM.

04:12 24         AND I WANT TO CLARIFY, I'D LIKE TO MAKE A MOTION FOR

04:12 25  RECONSIDERATION OF JUDGE WALTER'S DENIAL OF THE MOTION TO REOPEN

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

04:12 1    DISCOVERY.  IS YOUR RULING YOU WOULD DENY THAT MOTION?

04:12 2              THE COURT:  I MIGHT WELL HAVE GRANTED IT IN OCTOBER, BUT

04:12 3    I'M CERTAINLY GOING TO DENY IT TODAY.

04:12 4              MS. HOLLAND:  WE WOULD ALSO LIKE TO MAKE A MOTION TO

04:12 5    REOPEN DISCOVERY TODAY AS TO MR. ISAACS, MR. BURROUGHS, THE ISSUE

04:12 6    OF FRAUD ON THE COPYRIGHT OFFICE ASSOCIATED WITH THE SETTLEMENT

04:13 7    AGREEMENT, AND THE NEW REGISTRATION THAT WAS BACKDATED BUT THAT

04:13 8    WAS GIVEN TO US AFTER THE CLOSE OF DISCOVERY IN THE UNDERLYING

04:13 9    ACTION IN THIS CASE.

04:13 10             WOULD THAT MOTION ALSO BE DENIED?  JUST AS YOU ARE

04:13 11   FAMILIAR WITH -- FOR THE RECORD, THAT'S ALL.

04:13 12             THE COURT:  NO, I UNDERSTAND.  BUT I'M TRYING TO

04:13 13   UNDERSTAND, WHAT WAS THE FIRST THING I SAID?

04:13 14             MS. HOLLAND:  THE MOTION FOR RECONSIDERATION OF JUDGE

04:13 15   WALTER'S RULING DENYING NEW DISCOVERY IN THE CASE.

04:13 16             THE COURT:  I'M SORRY, LET ME JUST STATE I DON'T KNOW

04:13 17   WHAT HE RULED ON AND WHAT ARE THOSE MATTERS THAT JUDGE WALTER --

04:13 18   IF YOU WANT ME TO CONSIDER THOSE MATTERS, YOU ARE GOING TO HAVE TO

04:13 19   TELL ME WHAT THEY ARE.  I'M NOT GOING TO RECONSIDER OR DENY

04:13 20   RECONSIDERATION ON A MATTER THAT I HAVE ABSOLUTELY NO IDEA.

04:13 21             I THOUGHT WHAT YOU WERE SAYING IS YOU ARE ASKING ME TO

04:13 22   REOPEN DISCOVERY AS TO THE MATTER WE DISCUSSED TODAY.  I CAN SPEAK

04:14 23   KNOWLEDGEABLY AS TO THOSE, AND THOSE THINGS I DENY YOUR

04:14 24   CONSIDERATION.

04:14 25             IF YOU WANT TO MAKE A MOTION AS TO THE MATTERS THAT

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

04:14  1    JUDGE WALTER RULED ON, I'M NOT GOING TO ENTERTAIN AN ORAL MOTION

04:14  2    ON THAT BECAUSE I'M NOT FAMILIAR.  I HAVE NO IDEA.  I'M NOT GOING

04:14  3    TO GET INTO A PIG IN A POKE.

04:14  4              MS. HOLLAND:  I UNDERSTAND.

04:14  5              THE COURT:  SO YOUR FIRST MOTION, I'M NOT CONSIDERING

04:14  6    THE FIRST THING YOU SAID.  I'M REFUSING TO CONSIDER ENTERTAINING

04:14  7    AN ORAL MOTION.

04:14  8              THE SECOND MOTION, I'M DENYING YOUR REOPENING AS BEING

04:14  9    VASTLY TOO LATE.

04:14 10              MS. HOLLAND:  AND THEN YOU'RE QUASHING THE SUBPOENAS AS

04:14 11    TO MR. ISAACS, MR. BURROUGHS, AND MS. YEH?

04:14 12              THE COURT:  I HAVE SAID AS TO MR. ISAACS AND I HAVE SAID

04:14 13    TO MS. YEH, ALTHOUGH THERE WAS AN ATTEMPT TO GET -- MR. BURROUGHS,

04:15 14    I THINK, MADE A MOTION, AN ORAL MOTION TO AMEND THE WITNESS LIST

04:15 15    AS TO THE TWO OF THEM.  HE SPOKE ONLY AS TO ISAAC.  HE SAID

04:15 16    NOTHING AS TO YEH.  IF YOU WANT TO SPEAK TO IT, FINE.  IF NOT, I'M

04:15 17    GOING TO DENY IT FOR LACK OF ANY SUPPORTING ARGUMENT.

04:15 18              MS. HOLLAND:  NO, I'LL SPEAK TO IT.  AND I WILL, INSTEAD

04:15 19    OF BURDENING THE COURT AND EVERYONE HERE WITH REPEATING WHAT MR.

04:15 20    COLLINS SAID, I THINK MR. COLLINS ADDRESSED --

04:15 21              THE COURT:  THIS GOES TO THE SAME ISSUE?

04:15 22              MS. HOLLAND:  SAME ISSUE.

04:15 23              THE COURT:  THIS GOES TO THE STONY APPAREL SETTLEMENT?

04:15 24              MS. HOLLAND:  YES, IT DOES.  AND ALSO THEN TO THE

04:15 25    COMMUNICATIONS MODIFYING THE REGISTRATION AT ISSUE IN THIS CASE

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

04:15 1   WHICH AFFECTED THE STONY APPAREL CASE BECAUSE THERE WERE FIVE

04:15 2   DESIGNS UNDER THE ORIGINAL REGISTRATION.

04:16 3        THE COURT:  THIS ALL DEALS WITH THE QUESTION OF WHETHER

04:16 4   THERE WAS INCONSISTENCY OF FRAUD ON THE COPYRIGHT OFFICE BECAUSE

04:16 5   OF THE STONY APPAREL ISSUE.

04:16 6        MS. HOLLAND:  THAT'S CORRECT.

04:16 7        THE COURT:  THAT'S WHAT MS. SWORD'S TESTIMONY WOULD

04:16 8   INVOLVE ON THAT ISSUE.

04:16 9        MS. HOLLAND:  NOT MS. SWORD.  MS. YEH AND MR. BURROUGHS.

04:16 10  I'M SORRY THAT WE'RE BURDENING YOU WITH SO MANY NAMES TODAY.

04:16 11       THE COURT:  THAT'S FINE.  SO ESSENTIALLY, IN THAT SENSE,

04:16 12  ISAACS AND YEH, THE THINGS YOU WANT THEM TO TESTIFY WERE THE SAME

04:16 13  KIND OF ISSUES?

04:16 14       MS. HOLLAND:  SLIGHTLY DIFFERENT, BUT THEY RELATE TO

04:16 15  FRAUD ON THE COPYRIGHT OFFICE ASSOCIATED WITH MODIFICATION OF THE

04:16 16  REGISTRATION IN THIS CASE.

04:16 17       THE COURT:  I'M DENYING THAT.  I STILL AM NOT CLEAR

04:16 18  ABOUT THE BURROUGHS AND THE E-MAILS.  MR. BURROUGHS AND THE

04:16 19  E-MAILS, YOU CAN SPEAK TO THAT IF YOU WISH.

04:16 20       MS. HOLLAND:  SO FOR MR. BURROUGHS, SINCE HE'LL ALREADY

04:16 21  BE IN COURT, IF WE WOULD LIKE TO BRING THOSE E-MAILS IN, IN ORDER

04:16 22  TO HAVE EVIDENCE IN SUPPORT OF OUR AFFIRMATIVE DEFENSES, MAY WE

04:17 23  CALL HIM AND HAVE HIM AUTHENTICATE THE E-MAILS WHICH WERE THE

04:17 24  COMMUNICATIONS WITH THE COPYRIGHT OFFICE THAT SHOW THE TIMING OF

04:17 25  THE MODIFICATION AND WHAT WAS SAID AT LEAST IN THE UNREDACTED

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

04:17 1   PORTION TO THE COPYRIGHT OFFICE IN ORDER TO OBTAIN THE MODIFIED

04:17 2   REGISTRATION WHICH WAS, IN FACT, GIVEN TO US AFTER THE DISCOVERY

04:17 3   CUTOFF?

04:17 4          THE COURT:  LET ME SEE WHAT HE HAS TO SAY.

04:17 5          MR. BURROUGHS:  A FEW THINGS I WANT TO BE CLEAR ON.

04:17 6   FIRST, THE E-MAILS AREN'T ON THE EXHIBIT LIST AND ANOTHER THING

04:17 7   WE'RE HEARING ABOUT THE FIRST TIME TODAY.

04:17 8          AND TWO, I BELIEVE THE E-MAILS THEY'RE REFERRING TO,

04:17 9   THEY WEREN'T BETWEEN ME AND THE COPYRIGHT OFFICE.  THEY WERE

04:17 10  BETWEEN MS. YEH AND THE COPYRIGHT OFFICE.  I WAS ONLY COPIED.

04:17 11  IT'S NOT COMMUNICATION BETWEEN ME AND THE COPYRIGHT OFFICE.  I'M

04:17 12  NOT SURE ABOUT WHICH E-MAIL THEY'RE TALKING ABOUT.

04:17 13         MS. HOLLAND:  I BELIEVE WE HAVE COPIES OF THE E-MAILS

04:17 14  HERE IN COURT.  MR. BURROUGHS OVERSAW MS. YEH.  SHE WAS UNDER HIS

04:17 15  DIRECTION AT THE TIME.  I THINK THERE'S ALSO BRIEFS.  I WON'T GO

04:17 16  OVER IT NOW.  WE ASKED TO QUESTION ON THIS TOPIC.  MR. BURROUGHS

04:18 17  SAID THAT -- MAYBE ONE OF MY COLLEAGUES CAN HELP ME WITH THE

04:18 18  DETAILS, BUT BASICALLY MR. BURROUGHS INJECTED HIMSELF INTO THE

04:18 19  DEBATE BY SAYING, "I'M THE ONE WHO DID THOSE COMMUNICATIONS."

04:18 20         SO WE REALIZE IT'S UNUSUAL TO CALL TRIAL COUNSEL.  WE

04:18 21  DON'T WANT TO DO IT AND PREJUDICE THE CASE.

04:18 22         THE COURT:  LET ME FIND OUT.  IS THERE OBJECTION TO

04:18 23  THIS?  ARE YOU DISPUTING THE AUTHENTICITY OF THE E-MAILS?

04:18 24         MR. DONIGER:  YES, YOUR HONOR.  WE HAVE TWO ISSUES.  THE

04:18 25  AUTHENTICITY OF THE E-MAILS, NO.  THE PROBLEM IS THAT COUNSEL

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

04:18 1 WANTS TO AUTHENTICATE E-MAILS THAT THEY WERE GIVEN IN 2010 THAT

04:18 2 WERE NOT ON THEIR EXHIBIT LIST AND THAT ARE, AT BEST, RELEVANT TO

04:18 3 SOME --

04:18 4      THE COURT:  YOU CAN OBJECT TO THEIR ADMISSION.  WE'RE

04:18 5 TALKING AUTHENTICATION HERE.  ARE YOU DISPUTING THE AUTHENTICITY

04:18 6 OF THE E-MAILS?

04:19 7      MR. BURROUGHS:  BECAUSE THE E-MAILS WEREN'T ON THE

04:19 8 EXHIBIT LIST, I DON'T KNOW WHICH E-MAILS THEY'RE TALKING ABOUT.

04:19 9 AGAIN, THESE WERE BETWEEN MS. YEH AND THE COPYRIGHT OFFICE.  I'M

04:19 10 NOT EVEN SURE HOW YOU CAN AUTHENTICATE THE E-MAIL BETWEEN MS. YEH

04:19 11 AND THE COPYRIGHT OFFICE.

04:19 12      MS. HOLLAND:  WE HAVE BRIEFED THEM.  WE COULD GIVE THEM

04:19 13 BATES NUMBERS.  UNFORTUNATELY, IT APPEARS TODAY THAT WE HAVEN'T

04:19 14 DONE ANYTHING ON TIME.  WE DID EVERYTHING AFTER THE FACT AND

04:19 15 BELATEDLY AND ALL THAT.  THE TRUTH IS THAT BECAUSE OF THE UNIQUE

04:19 16 TIMING OF THIS CASE, BECAUSE WE WON SUMMARY JUDGMENT, THERE WAS A

04:19 17 LONG LAG ON APPEAL.  THEN WE ASKED TO REOPEN DISCOVERY.  IT WAS

04:19 18 DENIED.  AND THEN AN ACCELERATED TRIAL DATE WAS SET.  EVERYTHING

04:19 19 WAS A LITTLE BIT PUT IT ALL DOWN AND GATHER DUST AND THEN TAKE IT

04:19 20 ALL OUT AND TRY AND PUT IT BACK TOGETHER FOR A QUICK TRIAL.

04:19 21      SO WE REALIZE THESE THINGS ARE LATE, YOUR HONOR.  WE'RE

04:19 22 ASKING FOR LEAVE TO EITHER SUPPLEMENT OUR LIST, REOPEN DISCOVERY.

04:19 23 IF IT AFFECTS THE TRIAL -- WHATEVER IT TAKES TO MAKE SURE WE GET

04:19 24 IT RIGHT BECAUSE THIS CASE IS ONE OF THE FEW OF THESE TYPES OF

04:19 25 CASES THAT ARE GOING TO TRIAL.  IT'S IMPORTANT, ESPECIALLY ON

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

04:20  1    ISSUES OF FRAUD ON THE COPYRIGHT OFFICE -- AND I DO HAVE ONE OTHER

04:20  2    POINT ON THAT -- AND POSSIBLY ON THE COURT, ET CETERA, TO GET IT

04:20  3    RIGHT.

04:20  4        IT'S IMPORTANT TO FIND OUT SOME PARAMETERS ABOUT HOW TO

04:20  5    USE COPYRIGHT REGISTRATIONS FOR REGISTERING FABRIC PATTERNS

04:20  6    BECAUSE IT COST MANY, MANY, MANY COMPANIES A LOT OF MONEY TO

04:20  7    LITIGATE THESE THINGS.  WE WOULD LIKE TO GET IT RIGHT.  AND IF

04:20  8    THAT MEANS THINGS HAVE TO BE MOVED A LITTLE BIT BECAUSE WE DIDN'T

04:20  9    DO THINGS ON THE RIGHT TIMELINE, I WOULD SUBMIT WE WOULD LIKE THAT

04:20 10    NOT TO AFFECT OUR CLIENTS OR THE OUTCOME OF THIS CASE WHICH COULD

04:20 11    AFFECT SO MANY OTHERS.

04:20 12        YOU SAID EARLIER -- I THINK THE ARGUMENT IS, WHY ARE WE

04:20 13    SAYING THAT WE'RE INJURED BY ANOTHER PARTY'S SETTLEMENT.  AND

04:20 14    THAT'S A VERY FAIR QUESTION.  WHY DO WE HAVE STANDING TO COME

04:20 15    BEFORE YOU IN THIS CASE AND SAY THEY HARMED SOMEONE WHO IS NOT IN

04:20 16    THIS CASE?  THAT'S PERFECTLY REASONABLE.  IT'S A GOOD QUESTION.

04:20 17        THE REASON IS BECAUSE THEY WERE STATEMENTS MADE IN

04:20 18    CONNECTION WITH THE REGISTRATION AT ISSUE IN THIS CASE.  THEY WERE

04:21 19    OMISSIONS DURING NEGOTIATIONS WITH THE COPYRIGHT OFFICE WHICH, AS

04:21 20    YOU PROBABLY KNOW, PROCESSES SO MANY APPLICATIONS IT CAN'T

04:21 21    POSSIBLY DO THE DILIGENCE.  IT RELIES ON THE VERACITY OF

04:21 22    STATEMENTS FROM COUNSEL, ESPECIALLY COUNSEL THAT'S FAMILIAR WITH

04:21 23    ITS DEALINGS.

04:21 24        ALSO, THAT SETTLEMENT IN THE STONY BROOK CASE WAS

04:21 25    SUBMITTED TO THE JUDGE IN THAT CASE AND THE CASE WAS DISMISSED.

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

04:21  1  THE JUDICIAL ACTIONS WERE TAKEN BASED ON THE SETTLEMENT, AND WE

04:21  2  DON'T SEE ANY EVIDENCE THAT THE COURT WAS TOLD THAT THOSE PATTERNS

04:21  3  WERE NO LONGER PART OF A FEDERAL COPYRIGHT REGISTRATION.

04:21  4       AND YOU ARE FAMILIAR PERHAPS WITH THE CENTRAL DISTRICT'S

04:21  5  REQUIREMENT THAT WHEN YOU INITIATE A CASE THAT INVOLVES A

04:21  6  COPYRIGHT, TRADEMARK, OR PATENT, YOU HAVE TO NOTIFY THE COPYRIGHT

04:21  7  OFFICE, THE TRADEMARK OFFICE, AND THE PATENT OFFICE WHICH

04:21  8  REGISTRATIONS ARE AT ISSUE, AND THAT THEY ARE THE SUBJECT OF

04:21  9  LITIGATION.

04:21 10       SO THERE ARE LAYERS -- THERE ARE LOTS OF ADMINISTRATIVE

04:21 11  AGENCIES INVOLVED.  THERE IS THE COURT, THERE ARE OTHER PARTIES.

04:21 12  THERE IS THE OVERARCHING FACT THAT IF WE WANTED TO TRY AND CLAIM

04:22 13  THAT, IF WE WERE INFRINGING THESE DESIGNS, THERE IS NO WAY TO

04:22 14  SEARCH A DATABASE OF THESE THINGS.  SO THE INTEGRITY OF THE

04:22 15  PROCESS OF THESE DETAILS IS VERY IMPORTANT.

04:22 16       TO THE EXTENT WE DIDN'T DO THINGS TIMELY, DIDN'T COMPLY

04:22 17  WITH DEADLINES, DIDN'T FOLLOW THEM AS WE SHOULD, I WOULD JUST

04:22 18  REQUEST THAT THE COURT GRANT US RELIEF TO FIX THAT SO THAT WE

04:22 19  DON'T PREJUDICE OUR CLIENT WITH THESE ISSUES AND WE DON'T CREATE A

04:22 20  RECORD THAT CREATES FURTHER PROBLEMS FOR THE CIRCUIT.

04:22 21       THE COURT:  WHY DID YOU WAIT SO LATE?

04:22 22       MS. HOLLAND:  WHY DID WE WAIT?  I THINK IT'S BECAUSE WE

04:22 23  DIDN'T, FRANKLY, WANT TO PURSUE SOMETHING OF THIS LEVEL OF

04:22 24  SEVERITY WITHOUT KNOWING WHAT MR. ISAACS WOULD SAY, AND PERHAPS WE

04:22 25  WEREN'T DILIGENT ENOUGH IN TRACKING HIM DOWN.  PERHAPS HE DIDN'T

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

04:22 1  CALL US BACK.  WE JUST DIDN'T KNOW THAT THIS HAD ANY LEGS, AND WE

04:22 2  DIDN'T WANT TO RAISE IT UNTIL WE KNEW.  TALKING TO HIM WAS KEY TO

04:22 3  FIGURING THAT OUT.  THAT'S WHY.

04:22 4      SO IF YOU STILL THINK IT'S A GOOSE CHASE ON THE MERITS,

04:22 5  IF THAT'S THE REASON, I DON'T WANT TO WASTE TIME ANYMORE ARGUING

04:22 6  IT.  BUT IF IT'S BECAUSE OF ISSUES OF TIMING OR THEY'RE SAYING "WE

04:23 7  DIDN'T KNOW," THEY KNEW.  THIS IS ONE OF THOSE THINGS THEY

04:23 8  DESPERATELY DON'T WANT IT IN BECAUSE IT'S DAMAGING TO THEIR CASE.

04:23 9  AND THAT'S MY POSITION.  THEY'RE SAYING NO, IT'S DAMAGING TO OUR

04:23 10  CASE BECAUSE YOU KNEW AND YOU REALLY THOUGHT YOU WEREN'T GOING TO

04:23 11  PURSUE IT.

04:23 12      I DON'T THINK THEY CAN LEGITIMATELY CLAIM THEY KNEW WE

04:23 13  WEREN'T -- THEY WERE REALLY RELYING ON THE FACT THAT WE WEREN'T

04:23 14  LEGITIMATELY GOING TO PURSUE IT.  I THINK THEY WERE HOPING THAT WE

04:23 15  BLEW THE DEADLINE.  AND MAYBE WE DID.  MAYBE WE DID.  PERHAPS WE

04:23 16  DID AND THAT'S OUR FAULT.  BUT IT SHOULDN'T IMPACT OUR CLIENTS AND

04:23 17  WE HAVE BEEN BURDENED WITH A REALLY DIFFICULT TIMELINE IN THIS

04:23 18  CASE.

04:23 19      THE COURT:  LET ME TELL YOU WHAT MY BASIC PROBLEM IS.

04:23 20  AND I THINK EVERYTHING IS POSSIBLE INCLUDING DELAYING THE TRIAL,

04:23 21  ALTHOUGH IT WOULD TAKE A LOT BECAUSE A LOT OF THINGS OBVIOUSLY GO

04:23 22  INTO IT.  BUT YOU HAVEN'T CONVINCED ME THAT THERE IS ANY

04:23 23  INCONSISTENCY OF FRAUD.  IT SEEMS SO SLIMY, IT SEEMS A LITTLE ODD,

04:24 24  BUT I DON'T KNOW.  I HAVE NO IDEA.  I DON'T KNOW THAT IF YOU HAVE

04:24 25  A REGISTRATION, YOU CANCEL IT, THAT YOU ARE REQUIRED TO ADVISE THE

04:24  1  COURT.  AND EVEN IF YOU ARE, MAYBE THEY HAVE A VIOLATION IN THAT

04:24  2  CASE.  AND MAYBE THAT JUDGE, WHOEVER THE JUDGE WAS OR THE PARTY IN

04:24  3  THAT CASE, MAY HAVE A BEEF WITH THEM.

04:24  4        BUT I DON'T SEE HOW THAT IS A FRAUD ON THE COPYRIGHT

04:24  5  OFFICE.  I JUST AM NOT SEEING IT.  THEY CANCEL, THEY WITHDRAW A

04:24  6  COUPLE OF DESIGNS, HOW HAVE THEY LIED TO THE COPYRIGHT OFFICE?

04:24  7  HOW IS THE FACT THAT THEY'RE OUT THERE SETTLING THINGS THAT MIGHT

04:24  8  BE IN THAT REGISTRATION -- SEE, THAT'S THE PROBLEM.  THAT'S THE

04:24  9  PART I DON'T UNDERSTAND.

04:24 10        TO ME, IT SOUNDS LIKE THIS IS AN ATTEMPT TO MAKE THEM

04:25 11  LOOK LIKE SLIMY GUYS AT TRIAL WITHOUT A THEORY.  AS I SAID, MAYBE

04:25 12  IF YOU HAD DONE DISCOVERY EARLY ENOUGH, YOU WOULD HAVE BEEN ABLE

04:25 13  TO COME UP WITH SOMETHING CONCRETE.  BUT THIS FAR, I DON'T SEE

04:25 14  ANYTHING.  TO ME, IT LOOKS LIKE A FISHING EXPEDITION.  THIS IS

04:25 15  VERY LATE TO GO FISHING.

04:25 16        IF YOU HAVE SOMETHING REALLY CONCRETE, WHICH, LOOK, WE

04:25 17  DID DISCOVERY ON THIS ONE POINT, IT'S REALLY CONCRETE, HERE IS

04:25 18  WHERE THE FAULT IS, I MIGHT -- I'D CERTAINLY TAKE A CLOSE LOOK AT

04:25 19  IT.

04:25 20        BUT YOU AND MR. COLLINS AND MR. BASKIN, NONE OF YOU HAVE

04:25 21  CONVINCED ME THAT THERE IS ANYTHING THERE.  I'M SORRY.  AND I'M

04:25 22  NOT GOING TO DELAY THE TRIAL THAT PEOPLE HAVE PUT A LOT OF

04:25 23  RESOURCES IN ON THEIR FLIMSY POSSIBILITY.  SO I THINK IT'S

04:25 24  FISHING.  I THINK IT'S FISHING.  IN OCTOBER I MIGHT HAVE ALLOWED

04:26 25  YOU TO FISH.

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

04:26 1          MS. HOLLAND:  THANK YOU, YOUR HONOR.

04:26 2          THE COURT:  ON JANUARY 18, I'M NOT.

04:26 3          MS. HOLLAND:  THANK YOU, YOUR HONOR.

04:26 4          MR. BURROUGHS:  NOTHING FURTHER.

04:26 5          THE COURT:  ANYTHING FURTHER?

04:26 6          MR. BASKIN:  NO, YOUR HONOR.

04:26 7          THE COURT:  HERE, I'M GOING TO USE THE VOIR DIRE

04:26 8  QUESTIONS FROM THE EARLIER CASE.  DO YOU HAVE COPY OF THOSE?

04:26 9          MR. DONIGER:  THAT'S AN EXTRA FOR US?  THANK YOU.

04:26 10         THE COURT:  GIVE ONE TO OPPOSING COUNSEL.

04:26 11         MR. DONIGER:  OF COURSE.

04:26 12         THE COURT:  ALSO INCLUDED IN THE PACKET ARE INSTRUCTIONS

04:26 13 FOR COMING INTO THE PARKING LOT.

04:26 14         ARE YOU GOING TO TAKE A FEW MINUTES AND DO IT NOW?  OR

04:26 15 WE CAN TALK ABOUT IT TUESDAY MORNING.

04:27 16         MS. SIRIAS:  I DIDN'T HEAR YOU, YOUR HONOR.

04:27 17         THE COURT:  YOU CAN LOOK AT IT NOW IF YOU WISH OR WE CAN

04:27 18 TALK ABOUT IT TUESDAY MORNING.  I DON'T EXPECT YOU TO GO OVER IT

04:27 19 RIGHT NOW, BUT IF YOU WANT TO TAKE A QUICK LOOK, YOU CAN TAKE A

04:27 20 COUPLE MINUTES AND LOOK IT OVER.

04:27 21         WE'RE GOING TO PICK A JURY STARTING AT 10:00 O'CLOCK.

04:27 22 WE'RE GOING TO USE JUDGE WALTER'S COURTROOM.  AND DEPENDING ON

04:27 23 WHERE WE ARE AT THAT POINT -- I FORGOT WHAT WE DECIDED.  WE'RE

04:27 24 GOING TO START WITH OPENING STATEMENTS?

04:27 25         MR. DONIGER:  I THOUGHT WE WERE GOING TO DO DAY ONE IN

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

04:27  1  THAT COURTROOM.

04:27  2          THE COURT:  THERE WAS SOME DISCUSSION ABOUT WHETHER WE

04:27  3  WOULD PICK THE JURY AND QUIT FOR THE DAY OR PICK THE JURY AND

04:27  4  START THE TRIAL.  I FORGOT.

04:27  5          MR. DONIGER:  I BELIEVE WE DISCUSSED WE WERE GOING TO

04:27  6  PICK A JURY AND THEN GO THROUGH WITH THE TRIAL.  I REMIND THE

04:27  7  COURT THE MATTER HAS BEEN BIFURCATED.  I BELIEVE WE MAY BE ABLE TO

04:28  8  FINISH THE FIRST PHASE ON DAY ONE.  BUT TAKE THAT FOR WHATEVER

04:28  9  IT'S WORTH.

04:28 10          THE COURT:  OKAY.  INCLUDING JURY INSTRUCTIONS AND ALL

04:28 11  THAT?

04:28 12          MR. DONIGER:  I WOULD EXPECT.

04:28 13          THE COURT:  I DON'T HAVE JURY INSTRUCTIONS, DO I?

04:28 14          MR. BURROUGHS:  WE CAN SUBMIT THEM PRIOR TO MONDAY IF

04:28 15  THEY --

04:28 16          MS. SIRIAS:  WE FILED THOSE ON THE 18TH OF OCTOBER.  SO

04:28 17  YOU SHOULD HAVE THEM.  WE JUST DIDN'T ARGUE THEM WHEN WE HAD --

04:28 18          THE COURT:  I USUALLY LEAVE THOSE FOR TRIAL, BUT IN ANY

04:28 19  EVENT, WE'LL DO THE FIRST DAY AND GET AS FAR AS WE GET AND THEN

04:28 20  BRING THE TRIAL TO PASADENA FOR THE REST OF THE TRIAL.

04:28 21          MR. DONIGER:  AGAIN, AND I OFFER THIS JUST TO ASSIST THE

04:28 22  COURT WITH ITS SCHEDULING, I WAS IN THE SOUTHERN DISTRICT OF NEW

04:28 23  YORK ON AN L.A. PRINTEX CASE IN JUNE.  WE DID THE ENTIRE THING

04:28 24  FROM PICKING A JURY TO VERDICT IN ONE DAY.  I HAD ANOTHER MATTER A

04:29 25  COUPLE YEARS AGO FOR ANOTHER CLIENT IN A COPYRIGHT INFRINGEMENT

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

04:29  1    CASE, LIABILITY PLUS DAMAGES.  WE DID THE ENTIRE THING IN ONE DAY.

04:29  2    I DON'T THINK I HAVE EVER HAD ONE OF THESE GO MORE THAN THREE.  I

04:29  3    STRONGLY BELIEVE WE'LL BE ABLE TO FINISH --

04:29  4         THE COURT:  WE COULD ALSO START THE TRIAL ON TUESDAY.

04:29  5    JUST PICK THE JURY IF YOU ARE THAT CONFIDENT OF THE TIMING.  WE

04:29  6    WERE STARTING WITH A TRIAL ON -- START THE TRIAL ON WEDNESDAY

04:29  7    MORNING.  I WAS GOING TO USE THE AFTERNOON JUST BECAUSE I WASN'T

04:29  8    SURE WE WOULD GET DONE.  BUT IF YOU ARE CONFIDENT ABOUT THE TIME,

04:29  9    MAYBE WE OUGHT TO PICK A JURY, DISMISS, AND START THE TRIAL HERE

04:29 10    ON WEDNESDAY MORNING AND WE CAN SPEND TIME THAT AFTERNOON WORKING

04:29 11    ON INSTRUCTIONS.

04:30 12         MS. SIRIAS:  THAT WOULD BE MY PREFERENCE, YOUR HONOR.

04:30 13    PICK THE JURY, WORK ON INSTRUCTIONS, AND THEN START TESTIMONY AND

04:30 14    OPENING HERE ON WEDNESDAY.

04:30 15         MR. BURROUGHS:  PLAINTIFF WOULD BE AMENABLE TO THAT.

04:30 16         THE COURT:  LET'S DO THAT.  I THINK I HAVE EXPLAINED

04:30 17    THIS BEFORE, BUT I DON'T KNOW HOW MANY OF YOU LAWYERS WERE HERE

04:30 18    THE LAST TIME.  WHAT HAPPENS WHEN I HOLD A TRIAL, I HOLD IT IN

04:30 19    THIS COURTROOM.  I SIT IN THAT CHAIR, THE WITNESS IS OVER THERE,

04:30 20    AND THE JURY SITS HERE.  WHAT, EIGHT?

04:30 21         MR. DONIGER:  I BELIEVE EIGHT.

04:30 22         THE COURT:  EIGHT.  I FORGET HOW THIS WORKS.

04:30 23         THE CLERK:  WE HAD FOUR HERE AND FOUR IN THE SECOND ROW.

04:30 24         THE COURT:  IT'S FOUR.  AND IF ANYBODY DROPS OUT, IT

04:30 25    GOES DOWN TO SIX.  IS THAT OKAY?

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

04:30  1           MR. BURROUGHS:  RIGHT.

04:30  2           THE COURT:  SO THEY SIT FOUR AND THEN FOUR.  SEEMS TO

04:30  3  WORK VERY WELL.  THERE IS PLENTY OF VISIBILITY.  IF THE LECTERN IS

04:31  4  IN THE WAY, WE CAN MOVE IT BACK AND FORTH BECAUSE I THINK THE

04:31  5  LAWYERS OVER THERE HAVE TROUBLE SEEING THE WITNESS.  SO WE'LL MOVE

04:31  6  IT BACK DURING TRIAL SO THEY'RE NOT IN THE LINE OF SIGHT.  I THINK

04:31  7  THE COURT REPORTER TENDS TO BE UP HERE.

04:31  8           BUT DO YOU HAVE ANY --

04:31  9           MR. DONIGER:  DEMONSTRATIVES?

04:31 10           THE COURT:  DO YOU HAVE ANY BIG THINGS?

04:31 11           MR. BURROUGHS:  YES, YOUR HONOR.  BUT IT'S AUDIO-VISUAL.

04:32 12  SO WE'RE WORKING WITH THE TECHNICAL TEAM TO USE THE SCREEN.  SO IT

04:32 13  WILL BE ON THE SCREEN.

04:32 14           THE COURT:  SO YOU ARE USING A PROJECTOR OR SOMETHING?

04:32 15           MR. BURROUGHS:  IT WILL BE A COMPUTER ATTACHED TO THE

04:32 16  SCREEN SO WE CAN USE KIND OF LIKE A POWERPOINT PRESENTATION ON THE

04:32 17  SCREEN.

04:32 18           THE COURT:  YOU ARE USING A FLAT SCREEN, NOT A

04:32 19  PROJECTOR?

04:32 20           MR. BURROUGHS:  NO, YOUR HONOR.

04:32 21           MR. DONIGER:  CORRECT.

04:32 22           THE COURT:  THAT'S AN AWFUL LONG WAYS FOR THE JURY.

04:32 23           MR. BURROUGHS:  WE CAN PUT THE SCREEN ON THAT SIDE.

04:32 24           THE COURT:  WE CAN DO TWO SCREENS.  MAYBE WE SHOULD HAVE

04:32 25  ONE SCREEN OVER HERE FOR THE WITNESS.  MAYBE A SCREEN ON THIS SIDE

CV 09-2449-AK (FMOX) - 01/18/2013 - ITEM NO. 1

04:33  1   FOR THE WITNESSES AND A SCREEN OVER THERE FOR THE JURORS TO SEE.

04:33  2   WE CAN DO TWO SCREENS.

04:33  3              ANY OTHER PHYSICAL ISSUES?  ANY OTHER -- OKAY.  ALL

04:33  4   RIGHT.  WE'LL SEE YOU TUESDAY MORNING, 10:00 A.M. IN JUDGE

04:33  5   WALTER'S COURTROOM.

04:33  6              THE CLERK:  COURTROOM 16 ON SPRING STREET LEVEL.

04:33  7              THE COURT:  THANK YOU VERY MUCH.  SEE YOU ON TUESDAY.

04:33  8              *(WHEREUPON THE PROCEEDINGS WERE ADJOURNED AT 4:33.)*

04:33  9

04:33 10                              *-OOO-*

04:33 11

04:33 12                           *CERTIFICATE*

04:33 13

04:33 14        *I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28,*

04:33 15   *UNITED STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT*

04:33 16   *OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE*

04:33 17   *ABOVE-ENTITLED MATTER.*

04:33 18

04:33 19   *DATE:  FEBRUARY 14, 2013*

04:33 20

04:33 21   */S/*
04:33
04:33 22   _____
04:33       *OFFICIAL COURT REPORTER*
04:33 23

      24

      25